UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| EVERETT J. PRESCOTT, INC., et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:25-cv-00071-JAW |
| | ) | |
| TIMOTHY J. BEALL, | ) | |
| | ) | |
| Defendant. | ) | |

**OMNIBUS ORDER AND ORDER STAYING CASE**

In an employer's civil action against a former employee for defamation, tortious interference, and intentional infliction of emotional distress, both parties have inundated the docket with filings in the past month. To resolve the parties' numerous disagreements, the court issues an omnibus order resolving all pending motions, including, inter alia, setting aside the entry of default against the defendant, holding in abeyance the defendant's motion for leave to file counterclaims and dismissing without prejudice plaintiffs' motion to dismiss counterclaims pending submission of the defendant's proposed amended counterclaims, dismissing both parties' respective motions for sanctions against the other, dismissing plaintiffs' request for a court-imposed filing restriction but warning the defendant that such restriction may be in the offing if he continues to act as an abusive litigant, dismissing the defendant's motions to strike and seal unspecified filings but granting the plaintiffs' motion to redact personal identifiers, and granting the defendant's motion for a status conference. Finally, in view of the extraordinary proliferation of filings in this case, now totaling 136 docket entries

since the complaint was filed four and a half months ago, the court is ordering a stay of the proceedings until it has held the status conference.

## I.    OVERVIEW

On May 29, 2025, the Court held a hearing on a motion for default judgment. Since then, the parties have submitted nearly over eighty filings, including more than twenty-five motions requesting court-ordered relief. The Court issues this order to assume control over the docket by resolving the pending motions and clarifying the case's status. The Court does not reach the merits of either the complaint or the defendant's counterclaims. Rather, this order is designed to proceed in an orderly fashion.

## II.    PROCEDURAL HISTORY

On March 3, 2025, Everett J. Prescott, Inc. (EJP or the Company) filed a civil complaint against former employee Timothy J. Beall, alleging harassment of the Company and its employees by Mr. Beall through threatening messages and defamatory statements on social media. *Verified Compl. for TRO and Other Relief* ¶¶ 1-3 (ECF No. 1) (*Compl.*). The complaint asserted claims of defamation per se, tortious interference with advantageous economic relationships, and intentional infliction of emotional distress (IIED), and requested the Court issue a temporary restraining order (TRO) and preliminary injunction. *Id.* at 12-13, 16. In compliance with Federal Rule of Civil Procedure 65, EJP filed a notice on March 4, 2025, informing the Court of its efforts to serve Mr. Beall and its argument for why it should not be required to effect service prior to the Court's issuance of a TRO. *Rule 65(b)(1)(B) Notice Certification* (ECF No. 6).

2

On March 5, 2025, the Court issued an order granting in part and denying in part EJP's requested TRO. *Order on TRO* (ECF No. 7). The Court concluded EJP had demonstrated a likelihood of success as to its defamation claim for public remarks and granted the requested TRO with regard to posting of defamatory content on public social media sites but dismissed the TRO request as to Mr. Beall's private messages to EJP employees. *Id.* at 32-33. The Court further concluded EJP had failed to establish a likelihood of success on its claims of tortious interference with advantageous economic relationships and IIED, respectively, because it presented no evidence of economic harm and because a corporation cannot suffer emotional distress under the law. *Id.* at 33.

On March 10, 2025, EJP filed an amended complaint, adding Paul Van Savage as a co-plaintiff, adding factual allegations addressing events post-dating the filing of the original complaint, and reiterating its request for preliminary injunctive relief. *Verified Am. Compl.* (ECF No. 12) (*Am. Compl.*).

The Court held a hearing on the Plaintiffs' requested preliminary injunction on March 11, 2025. *Min. Entry* (ECF No. 15). Mr. Beall did not appear at that hearing, but the record reflected he had not yet been served. *Id.*; *Proof of Serv.* (ECF No. 14) (service returned unexecuted). The Court expressed its skepticism over whether it had jurisdiction to issue a preliminary injunction over a defendant who had received informal notice via email but before formal service of process and directed EJP and Mr. Van Savage (together, the Plaintiffs) to return when service had been effected. *Min. Entry*.

3

Mr. Beall was subsequently served with the summons and complaint on March 12, 2025. *Proof of Serv.* (ECF No. 17) (service returned executed). On March 18, 2025, the Court held another hearing on the Plaintiffs' request for a preliminary injunction. *Min. Entry* (ECF No. 20). At the hearing, counsel for the Plaintiffs stated that Mr. Beall had been served and that they had additionally emailed Mr. Beall with information regarding the date, time, and place of the hearing. Mr. Beall did not appear. Having confirmed its jurisdiction, on March 27, 2025, the Court entered an order granting in part and dismissing in part EJP's request for a preliminary injunction and issued an order preliminarily enjoining Mr. Beall from:

1. Posting any defamatory content on public social media sites about either of the Plaintiffs;

2. Communicating with Plaintiff Van Savage through any means;

3. Making defamatory statements to current customers of EJP through any means about EJP's business and operations; and

4. Entering or being within 500 yards of Plaintiff Van Savage's personal property or premises.

*Prelim. Inj.* at 2 (ECF No. 24); *see also Order on Mot. for Prelim. Inj.* (ECF No. 23).

On April 14, 2025, the Plaintiffs moved for an entry of default against Mr. Beall, who had yet to make an appearance or filing in this case, which the Clerk of Court granted that same day. *Pls.' Mot. for Entry of Default Against Def. Timothy J. Beall* (ECF No. 25); *Order* (ECF No. 26) (*Entry of Default*). The Plaintiffs then moved for default judgment against Mr. Beall on April 24, 2025. *Pls.' Mot. for*

*Default J.* (ECF No. 27) (*Pls.' Default J. Mot.*).  Separately, the Plaintiffs moved on April 28, 2025 for the Court to hold Mr. Beall in civil contempt, based on their allegation that the Defendant was acting in contravention of the preliminary injunction.  *Pls.' Mot. for Civ. Contempt* (ECF No. 28) (*Pls.' First Contempt Mot.*).

The Court scheduled a hearing on the motions for default judgment and civil contempt for May 29, 2025, *Notice* (ECF No. 29), and the Plaintiffs filed a status update on May 21, 2025, informing the Court that the Defendant continued to violate the preliminary injunction and, further, that he had increased his level of communication with Plaintiffs' counsel.  *Pls.' Status Update in Advance of Damages Hr'g* (ECF No. 30).  However, shortly before the hearing on May 29, 2025, Mr. Beall filed a motion to vacate the default, *Mot. to Vacate Default J.* (ECF No. 31) (*Def.'s Mot. to Vacate Default*), and then entered an appearance at the hearing held on the same day.  *Min. Entry* (ECF No. 34).  Mr. Beall appeared without counsel but stated that he had retained counsel, and the Court thus directed Mr. Beall to have his counsel enter an appearance within seven days, for the Plaintiffs to respond to his motion to vacate default in the same timeframe, and for Mr. Beall or his counsel to file a reply within seven days thereafter.  *Id.*; *Tr. of Proceedings* (ECF No. 35).  The Court further reiterated the terms of the preliminary injunction, to ensure Mr. Beall understood the Court's order.  *Tr. of Proceedings* at 13:8-14:5.  In accordance with the Court's instruction at oral argument, Plaintiffs responded to the motion to vacate default judgment on June 4, 2025.  *Pls.' Resp. in Opp'n to Def.'s Mot. to Vacate Default J.* (ECF No. 37) (*Pls.' Vacate Default Opp'n*).  As of the date of this

order, no counsel has entered an appearance on Mr. Beall's behalf, nor has Mr. Beall replied to the Plaintiffs' opposition to his motion to vacate default.

Separately, on June 2, 2025, Plaintiffs filed a motion asking the Court to issue an order restricting Mr. Beall's communications with Plaintiffs' counsel and requiring him to seek the Court's permission prior to making any further filings in this case pursuant to *Cok v. Family Court of Rhode Island*, 985 F.2d 32 (1st Cir. 1993). *Pls.' Emergency Mot. for* Cok *Order Barring Def. Beall's Commc'ns Without Prior Ct. Approval* (ECF No. 36) (*Pls.'* Cok *Mot.*).

Then, on June 12, 2025, Mr. Beall filed numerous documents with the Court in rapid succession, including a declaration, a copy of a complaint he filed with the Maine Board of Bar Overseers (BBO), a notice of alleged misconduct and intent to seek sanctions under Federal Rule of Civil Procedure 11 against Plaintiffs' counsel, an answer to the complaint, a draft of a civil lawsuit, an affidavit in support of his motion to vacate default, and a timeline of events leading up to and including this case. *Decl. of Timothy J. Beall* (ECF No. 38) (*Def.'s Decl.*); *Compl. to Me. Bd. of Overseers of the Bar* (ECF No. 39) (*BBO Compl.*); *Notice of Litigation Misconduct and Intent to Seek Rule 11 Sanctions* (ECF No. 40) (*Rule 11 Notice*); *Def.'s Answer to Compl. and Countercls.* (ECF No. 41) (*Answer and Countercls.*); *Compl. and Jury Demand* (ECF No. 42) (*Civ. Compl. Draft*); *Suppl. Aff. in Support of Mot. to Vacate Default J.* (ECF No. 43); *Timeline of Key Events* (ECF No. 44) (*Key Events*).

On June 25, 2025, Plaintiffs moved to strike these June 12, 2025 filings, with the exceptions of Mr. Beall's answer and his affidavit in support of his motion to

vacate default. *Pls.' Mot. to Strike Docket Nos. 38, 29, 40, 42, and 44* (ECF No. 46) (*Pls.' Mot. to Strike*). Mr. Beall responded in opposition to the Plaintiffs' motion to strike that same day. *Def.'s Opp'n to Pls.' Mot to Strike [Doc. 46]* (ECF No. 47) (*Def.'s Strike Opp'n*). Plaintiffs replied on July 8, 2025, *Pls.' Reply in Support of Their Mot. to Strike Docket Nos. 38, 39, 40, 42, and 44* (ECF No. 81) (*Pls.' Strike Reply*), and, also on July 8, 2025, Mr. Beall filed a motion for leave to file a sur-reply, which included his proposed sur-reply. *Def.'s Mot. for Leave to File a Limited Sur-reply and Proposed Sur-reply to Pls.' Reply in Support of Their Motion to Strike Docket Nos. 38, 39, 40, 42 & 44 (ECF 81)* (ECF No. 82) (*Def.'s Strike Sur-reply*). The Court granted Mr. Beall leave to file a sur-reply on July 8, 2025. *Order* (ECF No. 84).

Meanwhile, on June 24, 2025, Mr. Beall filed a dismissal and notice of rights addressed to him from the United States Equal Employment Opportunity Commission (EEOC), *Dismissal and Notice of Rights* (ECF No. 45), and, on June 26, 2025, an Incident Report written by the Shrewsbury, Massachusetts Police Department. *Incident Rep.* (ECF No. 48).

Mr. Beall next filed another series of documents in rapid succession on June 27, 2025, including a notice of evidence preservation and intent to refer for criminal review, a motion for judicial notice of preservation of records, a motion for leave to file counterclaims, additional attachments duplicating his request to file counterclaims, a supplement to amend the record, an emergency motion for

sanctions, and a notice regarding judicial efficiency and continuing harms.[1] *Notice of Evid. Preservation and Intent to Refer for Crim. Review* (ECF No. 50); *Mot. for Jud. Notice and Preservation of Rec.* (ECF No. 51) (*Def.'s Jud. Notice Mot.*); *Mot. for Leave to File Countercls. and Request for Scheduling Order* (ECF No. 52) (*Def.'s Countercls. Mot.*); *Mot. for Leave to File Countercls. and Request for Scheduling Order* (ECF No. 53); *Suppl. to Mot. to Amend – Evid. of Coordinated Retaliation Across Jurisdictions* (ECF No. 54) (*Def.'s Suppl. to Mot. to Amend*); *Emergency Mot. for Sanctions* (ECF No. 55) (*Def.'s Sanctions Mot.*); *Notice Regarding Jud. Efficiency and Continuing Harms* (ECF No. 57).

Two days later, on June 29, 2025, Mr. Beall filed a notice to proceed to discovery, notice of relevant judicial history, supplemental clarification regarding alleged harm and actual damages, and motion to strike references to a third-party. *Notice to Proceed to Disc.* (ECF No. 58); *Notice of Relevant Jud. History* (ECF No. 59); *Suppl. Clarification Regarding Alleged Harm and Actual Damages Suffered* (ECF No. 60); *Mot. to Strike Reference to Non-Party Fam. Member from the Rec.* (ECF No. 61) (*Def.'s Mot. to Strike*).  He further filed a notice of supplemental factual statement on June 30, 2025, *Notice of Suppl. Factual Statement and Preservation of Rec.* (ECF No. 62), and a notice of ongoing pattern of retaliatory conduct and request for clarification regarding concurrent civil rights litigation deadline on July 1, 2025.  *Notice of Ongoing Pattern of Retaliatory Conduct* (ECF

---

[1]    On June 27, 2025, the Court issued a line order explaining that it had reviewed Mr. Beall's emergency motion for sanctions and determined that his allegations "do not meet the definition of an emergency under the law," such that "[t]he Court will address Mr. Beall's motion for sanctions in the ordinary course, not as an emergency."  *Order* (ECF No. 56).

No. 63) (*Def.'s Ongoing Notice*); *Pro Se Def.'s Notice and Req. for Clarification Regarding Concurrent Civ. Rights Litigation Deadline* (ECF No. 64) (*Def.'s Clarification Req.*).

Mr. Beall then filed another slew of documents on July 2, 2025, including supplemental notices regarding, respectively, service location and observed conduct, competitive bidding practices and public contract influence, and corporate scale and retaliatory response, *Suppl. Notice Regarding Service Location and Observed Conduct* (ECF No. 65); *Suppl. Notice Regarding Competitive Bidding Practices and Public Contract Influence* (ECF No. 66); *Notice Regarding Corporate Scale and Retaliatory Resp.* (ECF No. 67), a motion for in camera review of evidence, *Mot. for In Camera Review of Evid.* (ECF No. 68) (*Def.'s In Camera Mot.*), a notice of preserved conduct potentially relevant under Racketeer Influenced and Corrupt Organization Act (RICO) statutes, *Notice of Preserved Conduct Potentially Relevant Under RICO Statutes* (ECF No. 69), and a supplemental declaration regarding economic harm. *Suppl. Decl. Regarding Economic Harm and Business Collapse* (ECF No. 70).

On the next day, July 3, 2025, although the Court had yet to address Mr. Beall's motion seeking leave to file counterclaims, Plaintiffs moved to dismiss Mr. Beall's counterclaims. *Pls.' Mot. to Dismiss Def.'s Countercls.* (ECF No. 71) (*Pls.' Mot. to Dismiss Countercls.*). Mr. Beall opposed the Plaintiffs' motion to dismiss his counterclaims that same day, *Def.'s Opp'n to Pls.' Mot to Dismiss Countercls.* (ECF No. 73) (*Def.'s Dismiss Countercls. Opp'n*), and Plaintiffs replied in support of their

9

motion on July 11, 2025. *Pls.' Reply in Support of Mot. to Dismiss Def.'s Countercls.* (ECF No. 88) (*Pls.' Dismiss Countercls. Reply*).

Also on July 3, 2025, Mr. Beall filed a notice of public statements by Plaintiffs' counsel regarding mental health and obligations under the Americans with Disabilities Act (ADA), *Notice of Public Statements by Opposing Counsel's Firm Regarding Mental Health and ADA Obligations* (ECF No. 72), and a notice regarding communications and compliance with court rules. *Notice Regarding Commc'n and Compliance with Rules of Ct.* (ECF No. 74) (*Def.'s Commc'n Notice*).

Next, on July 7, 2025, Plaintiffs filed a second motion for civil contempt based on Mr. Beall's conduct purportedly in violation of the preliminary injunction, *Pls.' Second Mot. for Civ. Contempt* (ECF No. 75) (*Pls.' Second Contempt Mot.*), and a motion to seal the Shrewsbury Police Department report as containing personally identifiable information (PII) in violation of Federal Rule of Civil Procedure 5.2. *Pls.' Mot to Seal ECF 48 Due to Personally Identifiable Info. that Def. Failed to Redact* (ECF No. 76) (*Pls.' Seal Mot.*). That same day, Mr. Beall responded in opposition to, respectively, the motion to seal and to the second motion for civil contempt, *Def.'s Resp. in Opp'n to Pls.' Mot. to Seal and Notice of Misrepresentation Regarding Shrewsbury Police Rep.* (ECF No. 77) (*Def.'s Seal Opp'n*); *Def.'s Resp. in Opp'n to Pls.' Mot. for Civ. Contempt* (ECF No. 78) (*Def.'s Contempt Opp'n*), and filed additional attachments regarding the motion to seal and a supplemental declaration regarding his resources, employment intentions, and allegations of retaliation. *Def.'s Suppl. Notice Regarding Pls.' Mot. to Seal and Misrepresentation*

*of Shrewsbury Police Rep.* (ECF No. 79) (*Def.'s Seal Suppl.*); *Def.'s Suppl. Decl. Regarding Resources, Employment Intentions, and Retaliation* (ECF No. 80) (*Def.'s Suppl. Decl.*).

Mr. Beall's next filing came on the following day.  On July 8, 2025, he filed a notice of material misrepresentations and request for status conference.  *Notice of Material Misrepresentations and Req. for Status Conf.* (ECF No. 83) (*Def.'s First Status Conf. Mot.*).  Plaintiffs responded to this motion on July 11, 2025, stating no objection to a status conference but opposing specific factual allegations made in Mr. Beall's motion.  *Pls.' Resp. to Def.'s Req. for Status Conf.* (ECF No. 86) (*Pls.' Status Conf. Resp.*).  Also on July 11, 2025, Mr. Beall submitted a declaration addressing statements made in the Defendant's response.  *See Decl. of Timothy J. Beall* (ECF No. 87) (*Def.'s Status Conf. Decl.*).

Separately, on July 10, 2025, Plaintiffs filed a motion for sanctions on the ground that Mr. Beall had allegedly included fictious case citations in recent filings.  *Pls.' Mot. for Sanctions Due to Def.'s Use of Fictitious Case Citations* (ECF No. 85) (*Pls.' Sanctions Mot.*).  Mr. Beall opposed the Plaintiffs' motion on July 11, 2025.  *See Def.'s Resp. to Pls.' Mot. for Sanctions* (ECF No. 89) (*Def.'s Sanctions Opp'n*).  Shortly thereafter, the Court issued an order to show cause to Mr. Beall, informing him that the Court's independent review had identified numerous incorrect and fabricated citations in his recent filings and directing him to respond to explain the basis for his citation errors and any reliance on Artificial Intelligence (AI) software within seven days.  *Order to Show Cause* (ECF No. 90).  Mr. Beall responded to the

11

order to show cause on July 12, 2025, acknowledging the use of AI and promising to check his authorities more carefully in future.  *Def.'s Resp. to Order to Show Cause* (ECF No. 91) (*Def.'s Show Cause Resp.*).

Next, on July 16, 2025, Plaintiffs replied in support of their second motion for civil contempt.  *Pls.' Rep[l]y in Support of Second Mot. for Civ. Contempt* (ECF No. 92) (*Pls.' Second Contempt Mot. Reply*).  That same day, Mr. Beall submitted a supplemental response to Plaintiffs' reply to the second civil contempt motion. *Def.s' Suppl. Resp. to Pls.' Reply in Support of Second Mot. for Civil Contempt (ECF 92)* (ECF No. 93) (*Def.'s Second Contempt Mot. Suppl. Resp.*).  Also on July 16, 2025, Mr. Beall submitted a notice regarding police report misrepresentations and basis for prior statements.  *Def.'s Notice Regarding Police Rep. Misrepresentations and Basis for Prior Statements* (ECF No. 94) (*Def.'s Police Rep. Notice*).

Next, on July 18, 2025, parties submitted an additional eight filings between them.  Plaintiffs filed numerous responses in opposition to, respectively, Mr. Beall's motion to file counterclaims, *Pls.' Resp. in Opp'n to Def.'s Mot. for Leave to File Countercls. and Req. for Scheduling Order* (ECF No. 95) (*Pls.' Countercls. Opp'n*), his motion for judicial notice and preservation of the record, *Pls.' Resp. in Opp'n to Def.'s Mot. for Jud. Notice and Preservation of Rec.* (ECF No. 96) (*Pls.' Jud. Notice Opp'n*), his motion to supplement a motion to amend, *Pls.' Resp. in Opp'n to Def.'s Suppl. to Mot. to Amend* (ECF No. 97) (*Pls.' Suppl. to Mot. to Amend Opp'n*), and his motion for sanctions.  *Pls.' Resp. in Opp'n to Def.'s Emergency Mot. for Sanctions* (ECF No. 98) (*Pls.' Sanctions Opp'n*).

That same day, Mr. Beall replied in support of, respectively, his motion for
leave to file counterclaims, *Def.'s Reply to Pls.' Opp'n to Mot. for Leave to File
Countercls. and Req. for Scheduling Order* (ECF No. 99) (*Def.'s Countercls. Reply*),
his motion for judicial notice and preservation of record, *Def.'s Reply in Support of
Mot. for Jud. Notice and Preservation of Rec.* (ECF No. 100) (*Def.'s Jud. Notice
Reply*), his emergency motion for sanctions, *Def.'s Reply in Support of Mot. for
Sanctions* (ECF No. 101) (*Def.'s Sanctions Reply*), and to his motion to supplement a
motion to amend—though this last filing is mistitled. *Def.'s Reply in Opp'n to Pls'
Reply in Support of Second Mot. for Contempt (ECF 97)* (ECF No. 102) (*Def.'s Suppl.
to Mot. to Amend Reply*). Mr. Beall also filed a verified supplemental statement and
timeline of events, *Verified Suppl. Statement and Timeline of Events* (ECF No. 103)
(*Def.'s Verified Suppl.*), and a reply to Plaintiffs' opposition to his emergency motion
for sanctions. *Def.'s Reply to Pls.' Opp'n to Emergency Mot. for Sanctions* (ECF No.
104) (*Def.'s Sanctions Second Reply*).

Then, on July 19, 2025, Mr. Beall filed a supplemental statement comparing
Plaintiffs' counsel's publications to his posture in this litigation, *Def.'s Suppl.
Statement Regarding Pls.' Counsel's Pub. Commentary and Contradictory Litig.
Posture* (ECF No. 105), and a notice regarding his anticipated civil rights filing in
Massachusetts. *Def.'s Notice Regarding Anticipated Civ. Rights Filing In Mass.*
(ECF No. 106) (*Def.'s Mass. Case Notice*). The next day, July 20, 2025, Mr. Beall
submitted a supplemental statement alleging unaddressed misconduct by Plaintiffs

and their counsel. *Suppl. Statement of Def. Regarding Unaddressed Misconduct by Pl. and Counsel* (ECF No. 107) (*Def.'s Show Cause Suppl.*).

On July 21, 2025, Mr. Beall moved to compel discovery of communications and electronic records. *Def.'s Mot. to Compel Discovery of Commc'ns and Elec. Recs.* (ECF No. 108) (*Def.'s First Compel Mot.*). That same day, Plaintiffs filed a reply in support of their motion to seal, *Pls.' Reply in Support of Mot. to Seal ECF 48 Due to Personally Identifiable Info. that Def. Failed to Redact* (ECF No. 109) (*Pls.' Seal Reply*), and an opposition to Mr. Beall's motion to strike reference to a non-party family member. *Pls.' Resp. In Opp'n to Def.'s "Mot. to Strike Reference to Non-Party Fam. Member from the Rec."* (ECF No. 110) (*Pls.' Strike Opp'n*).

Also on July 21, 2025, Mr. Beall filed a motion to seal references to a non-party family member, *Def.'s Mot. to Seal References to Non-Party Fam. Member (Sgt. James Murray)* (ECF No. 111) (*Def.'s Seal Mot.*), a motion to unseal Plaintiffs' filing at ECF No. 109, *Def.'s Mot. to Unseal Doc. 109 and Clarify Misrepresentation of Consent* (ECF No. 112) (*Def.'s Unseal Mot.*), a reply in support of his motion to unseal, *Def.'s Reply in Support of Mot. to Unseal Doc. 109* (ECF No. 113) (*Def.'s Unseal Reply*), a supplemental statement regarding Plaintiffs' counsel's tone and litigation conduct, *Def.'s Suppl. Statement Regarding Opposing Counsel's Tone, Posture and Litig. Conduct* (ECF No. 114), a supplemental filing regarding a mocking response from Plaintiffs' counsel, *Def.'s Suppl. Filing – Ex. C: Mocking Resp. from Pls.' Counsel* (ECF No. 115), and a second request for a status

14

conference. *Def.'s Req. for Status Conf. or Hr'g on Pls.' Conduct and Case Progression* (ECF No. 116) (*Def.'s Second Status Conf. Mot.*)

Also on July 21, 2025, Plaintiffs responded in opposition to Mr. Beall's request for clarification regarding his concurrent civil rights litigation. *See Pls.' Resp. to Def.'s "Notice and Req. for Clarification Regarding Concurrent Div. Rights Litig. Deadline"* (ECF No. 117) (*Def.'s Clarification Opp'n*). Mr. Beall then replied in support of his request for clarification that same day. *Def.'s Reply in Support of Notice and Req. for Clarification Regarding Concurrent Civ. Rights Litig. Deadline* (ECF No. 118) (*Def.'s Clarification Reply*).

Next, on July 22, 2025, Mr. Beall filed a motion to compel production of his entire personnel record and termination documentation, *Def.'s Mot. to Compel Release and Filing of Full Personnel Rec. and Termination Documentation* (ECF No. 119) (*Def.'s Second Compel Mot.*), a reply in support of his motion for in camera review, *Def.'s Reply in Support of Mot. for In Camera Review* (ECF No. 121) (*Def.'s In Camera Reply*), a supplemental declaration regarding new information he had learned about EJP employees, *Suppl. Decl. of Timothy J. Beall* (ECF No. 122), and a notice of anticipated civil rights claims and formal demand for evidence preservation. *Def.'s Notice of Anticipated Civ. Rights Cls. And Formal Demand for Evid. Preservation* (ECF No. 123) (*Def.'s Evid. Notice*). That same day, Plaintiffs responded in opposition to Mr. Beall's motion for in camera review of evidence. *Pls.' Resp. in Opp'n to Def.'s Mot. for In Camera Review of Evid.* (ECF No. 120) (*Pls.' In Camera Opp'n*).

15

Then, on July 23, 2025, unconnected to any motion, Mr. Beall filed a supplemental notice regarding preservation of a personal device used by a key witness, *Def.'s Suppl. Notice Regarding Preservation of Personal Device Used by Key Witness* (ECF No. 124) (*Def.'s Suppl. Preservation Notice*), a supplemental declaration relaying new evidence provided to him by a third party, *Def.'s Suppl. Decl.* (ECF No. 125) (*Def.'s Evid. Suppl. Decl.*), a notice of clarification regarding the same, *Def.'s Notice of Clarification Regarding Suppl. Evid. Submission* (ECF No. 126) (*Def.'s Evid. Clarification*), and a supplemental notice alleging retaliation and workplace misconduct at EJP. *Def.'s Suppl. Notice Regarding Selective Retaliation, Workplace Threats, and HR Misconduct* (ECF No. 128) (*Def.'s Suppl. Notice*).

Finally, the next day, Mr. Beall filed further notices regarding, respectively, retaliatory terminations and discrimination at EJP, *Def.'s Suppl. Notice Regarding Retaliatory Terminations and Workplace Discrimination* (ECF No. 130), jurisdictional conflict and an anticipated class action, *Def.'s Notice Regarding Jurisdictional Conflict and Anticipated Class Action Litig.* (ECF No. 131), sealing the references to family members on the docket, *Def.'s Notice Regarding Selective Sealing, Pub. Safety, and Exposure of Fam. Members* (ECF No. 132), and the procedural status, timeline, and evidence of this case. *Def.'s Suppl. Notice Regarding Procedural Status, Evidentiary Filings, and Hardship Timeline* (ECF No. 133). Also on July 24, 2025, Mr. Beall filed motions for, respectively, the court to issue an order to show cause against the Plaintiffs, *Def.'s Mot. to Order Pls. to Show Cause* (ECF No. 134) (*Def.'s Mot. for Order to Show Cause*), and for an in-person

16

hearing on the same. *Def.'s Req. for In-Person Hr'g on Mot .to Show Cause and Pls.' Conduct* (ECF No. 135) (*Def.'s Hr'g Mot.*).

All told, since the Court held a default judgment hearing on May 29, 2025, the parties in this case have submitted over eighty filings and counting, including at least twenty-five motions requesting court-ordered relief.

## III.    AN INITIAL NOTE ON THE COURT'S APPROACH

In light of the substantial number of filings and pending motions, including many predicated on the same facts and making duplicative arguments, the Court in this order groups the filings into sections to resolve pending motions implicating similar issues. Thus, this order contains subsections on: 1) competing motions for default judgment and to vacate default, 2) competing motions for counterclaims and to dismiss counterclaims, 3) motions for judicial notice, 4) motions to strike, 5) motions for sanctions and *Cok* order, 6) motions for civil contempt, 7) request for clarification, 8) motions to compel, 9) motion for in camera review, 10) motions to seal, 11) request for status conference, and 12) motion for an order to show cause and hearing on the same.

The Court recognizes that the periods for responses and replies to some of the more recent motions have not yet run. However, in light of the duplicative purposes and interrelated arguments of these recent motions, as well as the urgent need for the Court to reassert control over this case and streamline its docket, the Court in its discretion takes these motions under advisement and resolves them in this order.

## IV.    MOTIONS FOR DEFAULT JUDGMENT AND TO VACATE DEFAULT

In this section, the Court addresses the Plaintiffs' motion for default judgment, *Pls.' Default J. Mot.*, and Mr. Beall's motion to vacate the entry of default against him, *Def.'s Mot. to Vacate Default*, as well as the opposition and supplemental affidavits submitted with these two motions.

### A.    The Parties' Positions

#### 1.    Plaintiffs' Motion for Default Judgment (ECF No. 27)

EJP moves for the Court to enter default judgment, asserting that Mr. Beall failed to respond to the amended complaint in the time afforded to him by the Federal Rules of Civil Procedure and the Court Clerk properly entered default against him on April 14, 2025. *Pls.' Default J. Mot.* at 1-2 (citing *Entry of Default*). Plaintiffs submit that, once default is entered under Federal Rule of Civil Procedure 55(a), "the Court presumes that all well-ple[aded] factual allegations in the complaint are true." *Id.* at 4 (quoting *Strike 3 Holdings, LLC v. Doe*, 757 F. Supp. 3d 99, 102 (D. Mass. 2024) (citation corrected)).

Turning to the calculation of damages, Plaintiffs submit "the damages here are not mere rote practices of arithmetic given that it is difficult to quantify how many potential customers EJP lost due to Beall's conduct as well as the emotional distress Beall's harassment caused Mr. Van Savage." *Id.* The Plaintiffs first explain that defamation per se does not require proof of special damages, arguing that for such a claim, "a plaintiff need not prove special damages or malice in order to recover a substantial award." *Id.* at 5 (quoting *Marston v. Newavom*, 629 A.2d 587, 593 (Me. 1993) (in turn citing *Saunders v. VanPelt*, 497 A.2d 1121, 1126 (Me.

18

1985)). Instead, in defamation per se cases, "[i]njury to reputation and injury to feelings may be presumed from the publication of the defamatory statement." *Id.* (quoting *Marston*, 629 A.2d at 593). Plaintiffs contend that such reputational injury may be presumed here and compare this case to *Laddawn, Inc. v. Bolduc*, No. 17-cv-11044-TSH, 2018 U.S. Dist. LEXIS 223019 (D. Mass. Dec. 27, 2018) (citation corrected), an analogous defamation case against a former employee in which the District Court for the District of Massachusetts awarded the plaintiff $100,000 in damages. *Id.* at 5-7.

Plaintiffs next seeks damages for tortious interference with business relations, conceding "the difficulty, if not impossibility, of calculating the damages of the loss of prospective customers" and submitting "the Court has discretion to award reasonable damages." *Id.* at 7-8 (for the latter, citing *Innovative Sports Mgmt., Inc. v. Serna*, 495 F. Supp. 3d 36, 43 (D. Mass. 2020)). Turning next to damages for its IIED against Mr. Van Savage, Plaintiffs aver "[t]he Court has significant discretion in awarding damages for emotional distress" and collect caselaw to support their position that "an award in the $50,000 to $100,000 range (if not more) is fair and reasonable." *Id.* at 8-10 (collecting IIED cases and their respective damage awards).

Lastly, Plaintiffs request the Court convert its preliminary injunction into a permanent injunction, asserting permanent injunctive relief will further deter Mr. Beall's unlawful conduct and arguing that other federal district courts "have granted permanent injunctions in the default judgment context by accepting the

facts alleged in plaintiffs' complaints, including facts establishing irreparable injury." *Id.* at 10 (collecting cases). Plaintiffs aver the Court must accept the allegations of the amended complaint as true in light of Mr. Beall's failure to appear, and argue their pleaded facts establish their likelihood of success on the merits and the need for a permanent injunction to prevent future harm. *Id.* at 11.

### 2. Mr. Beall's Motion to Vacate Default (ECF No. 31)

Mr. Beall moves to vacate default against him, arguing that "(1) service was improper; (2) the failure to respond was the result of excusable neglect; and (3) Defendant has a meritorious defense." *Def.'s Mot. to Vacate Default* at 1. Addressing his first argument, Mr. Beall asserts "Plaintiffs' service was not valid under Rule 4" because he "was approached in public during a court-ordered custody exchange" and that "[t]he envelope was placed on the bed cover of Defendant's truck and later deposited in a City Hall mailbox." *Id.* He continues that "[n]o explanation was given . . .. [and] [n]o signature or formal delivery occurred," insisting "[t]his conduct failed to meet the standards of due process and constitutes improper service under FRCP Rule 4 and 60(b)(4)." *Id.*

Turning to excusable neglect, Mr. Beall argues that, at the time of his alleged service, he was "engaged in multiple overlapping legal matters including divorce, custody hearings, and unemployment appeals" and had filed various complaints with state and federal agencies. *Id.* at 2. He insists his "[f]ailure to respond in [this] court was not willful . . . [but] resulted from excusable neglect during extreme personal hardship and ongoing efforts to resolve the matter legally." *Id.*

Third, Mr. Beall asserts "strong factual and legal defense[s] to the underlying claims," including, inter alia, wrongful termination, retaliation, ADA discrimination and harassment, and misconduct by Plaintiffs' counsel. *Id.* at 2.

### 3. Plaintiffs' Opposition to Motion to Vacate Default (ECF No. 37)

Plaintiffs assert the Court should enter an order of default judgment in this matter because the Defendant violated the terms of the preliminary injunction, failed to answer the amended complaint, and waited more than six weeks to respond to the motion for default judgment. *Pls.' Vacate Default Opp'n* at 1-2.

Plaintiffs begin by highlighting that Mr. Beall, less than one hour after the conclusion of the default judgment hearing, posted on Facebook "Damn, it feels good to be a gangsta #TeamTJB," which Plaintiffs construe as "a not-so-subtle jab at Plaintiff EJP's trademarked slogan, 'Team EJP.'" *Id.* at 2. Plaintiffs continue that, following the hearing, Mr. Beall "sent Plaintiffs' counsel 48 emails that contained unfounded accusations of misconduct, threats to file for Rule 11 sanctions, threats to file assorted motions to vacate, threats to file a civil lawsuit against Plaintiffs and their counsel and employees, emails impugning counsel and their firm's character, and various other forms of harassment." *Id.* at 2-3 (citing *id.*, Attach 2., *Ex. 2 – Beall Emails*). These include emails on June 1, 2025 denigrating Plaintiffs' counsel's professionalism, on June 2, 2025 informing Plaintiffs' counsel of complaints he intended to file against them, and on June 2 and 3, 2025 threatening Plaintiffs' counsel with professional consequences. *Id.* at 3-5.

Next, Plaintiffs contend that Mr. Beall has provided no legitimate reason to set aside the entry of default, pointing out that he labels his motion as one to vacate default judgment, even though default judgment has not yet been entered. *Id.* at 5-6. Urging the Court to apply the "good cause" standard provided in Federal Rule of Civil Procedure 55(c), Plaintiffs insist that Mr. Beall has failed to establish a basis for the Court to set aside the entry of default. *Id.*

First, Plaintiffs respond to Mr. Beall's contention that his service was improper, maintaining Massachusetts Constable Richard L. Mattioli personally served Mr. Beall in the Shrewsbury Police Department parking lot on March 12, 2025 and that Mr. Beall himself admits to being "(1) 'approached in public by a process server'; (2) the 'process server said his name'; and (3) Beall was provided an envelope that (as Plaintiffs have already stated on the record) contained the summons, Verified Amended Complaint and Temporary Restraining Order that was placed on his truck." *Id.* at 6 (quoting *Def.'s Mot. to Vacate Default*). Plaintiffs argue that this constitutes proper service under the federal, Maine, and Massachusetts rules of civil procedure, and collects federal caselaw which has not required "in hand" service but has rather deemed service of process by leaving the summons in close proximity to the defendant proper when the defendant refuses to physically accept service. *Id.* at 6-7 (citing *Slaieh v. Zeineh*, 539 F. Supp. 2d 864, 868-69 (S.D. Miss. 2008) (collecting cases); *Blandino v. Federico*, No. 2:21-cv-1262-JAD-EJY, 2022 U.S. Dist. LEXIS 197425 (D. Nev. Oct. 31, 2022) (citation corrected)). Further, Plaintiffs say, there is nothing improper about service being

made in public.  *Id.* at 7.  Plaintiffs remind the Court of Mr. Beall's March 3, 2025
email to Mr. Van Savage in which he bragged about evading service, *id.* at 6-7
(citing *Am Compl.* ¶ 38), and explain their attempts to serve Mr. Beall at addresses
associated with his recently registered Massachusetts corporation and named as his
residence in a November 12, 2024 proceeding in Massachusetts Probate and Family
Court.  *Id.* at 8.  At bottom, Plaintiffs aver Mr. Beall was properly and validly
served on March 12, 2025 and that his failure to participate in this lawsuit until
May 29, 2025 is not justified by insufficient service.  *Id.*

Plaintiffs next contend Mr. Beall has failed to demonstrate good cause for the
Court to set aside entry of default against him, arguing Mr. Beall's assertion that he
was "engaged in multiple overlapping legal matters" does not validate his failure to
participate in this lawsuit for nearly three months and collecting caselaw from this
District rejecting motions to set aside default after a period of months.  *Id.* at 8-9
(collecting cases).  Further, Plaintiffs emphasize that, after acknowledging receipt of
these proceedings, Mr. Beall "had plenty of time to go skiing, dine out at
restaurants, send dozens of emails to EJP employees and counsel, and post
prolifically on social media."  *Id.* at 10-12.  In addition, in this same period, Mr.
Beall filed numerous complaints and administrative charges against Plaintiffs and
their counsel, and sent emails to Plaintiffs' counsel directly, without responding to
Plaintiffs' motion for default judgment.  *Id.* at 12.  Plaintiffs continue that Mr.
Beall's conduct has caused them severe harm and emotional distress and that they

23

are entitled to the swift resolution of this matter, which setting aside the default
would fail to accomplish. *Id.*

Finally, Plaintiffs respond to Mr. Beall's assertion that he holds meritorious
defenses to their claims against him, arguing that a "party seeking to set aside a
default or default judgment 'need not establish his [or her] defense conclusively, but
he [or she] must present evidence of facts that, if proven at trial, would constitute a
complete defense.'" *Id.* at 13 (quoting *Sostak v. DaPrato*, No. 2:23-cv-00376-JCN,
2024 U.S. Dist. LEXIS 173954, at *11 (D. Me. Sep. 26, 2024) (citation corrected) (in
turn quoting *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998))).   Plaintiffs
submit Mr. Beall's motion to vacate mentions no defenses to the claims brought
against him and instead raises allegations of workplace retaliation, discrimination,
and harassment unrelated to the claims before the Court. *Id.* Plaintiffs insist these
allegations do not constitute defenses to the defamation, tortious interference with
advantageous economic relationships, or IIED claims, and thus provide no basis to
vacate the entry of default. *Id.* at 13-14.

### 4.    Mr. Beall's Supplemental Affidavit in Support of Motion to Vacate Default (ECF No. 43)

Mr. Beall supplements his motion to vacate by first highlighting a
contradiction between the publications of Plaintiffs' counsel Attorney Steven Silver
and his purported conduct in this case. *Suppl. Aff. in Support of Mot. to Vacate
Default J.* at 1. Mr. Beall alleges Attorney Silver's article "advises employers to
proactively support individuals in recovery and avoid discriminatory behavior,"
while in this case "he has defended an employer accused of mocking an employee's

sobriety, retaliating after a court-ordered absence, and terminating said employee during a period of protected hardship." *Id.* He next submits that Attorney Silver has not responded to his attempts at dialogue and has blocked Mr. Beall on LinkedIn. *Id.* Mr. Beall informs the Court he has copied the BBO on recent communications "to ensure transparency and accountability." *Id.* at 2. Finally, he asserts he was not properly notified of the TRO and accuses Plaintiffs' counsel of "attempt[ing] to manipulate the Court into ruling unfairly against [him] by withholding proper notice." *Id.* He asks the Court to overturn all rulings against him for lack of service and due process. *Id.*

### B.    Legal Standard

Federal Rule of Civil Procedure 55(c) allows courts to set aside an entry of default for "good cause." As the First Circuit has explained, good cause is a "liberal" standard. *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989). In determining good cause, "courts may consider a host of relevant factors," which most commonly include "(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; and (3) whether a meritorious defense is presented." *Indigo Am., Inc. v. Big Impressions, LLC*, 597 F.3d 1, 3 (1st Cir. 2010). Other factors considered by courts include "(4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; [and] (7) the timing of the motion [to set aside the entry of default]." *Id.* (second alteration in original) (quoting *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003)).

25

### C.    Discussion

As an initial matter, and as noted by the Plaintiffs, *Pls.' Vacate Default Opp'n* at 5-6, the Court recognizes that Mr. Beall titles his filing as a "motion to vacate default judgment," despite the fact that no default judgment has been entered in this case.  However, in light of the First Circuit's directive to construe pro se filings liberally, *see Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997) ("Our judicial system zealously guards the attempts of pro se litigants on their own behalf"), the Court interprets Mr. Beall to be seeking to set aside the entry of default against him pursuant to Federal Rule of Civil Procedure 55(c).

### 1.    Service of Process

The Court turns first to Mr. Beall's allegations of deficient service of process, as this argument implicates the Court's authority to consider the merits of this case. Mr. Beall claims service was inadequate because he "was approached in public during a court-ordered custody exchange.  The process server said his name, to which Defendant responded, 'Huh? I'm dropping my f***ing daughter off man – piss off.'  The envelope was placed on the bed cover of Defendant's truck and later deposited in a City Hall mailbox."  *Def.'s Mot. to Vacate Default* at 1.  These allegations do not, however, address the actual mechanism of his service, which was made personally by Massachusetts Constable Richard L. Mattioli in the Shrewsbury, Massachusetts Police Department parking lot on March 12, 2025.  *See Serv. Returned Executed* (ECF No. 17).  He argues "[n]o explanation was given . . . . [and] [n]o signature or formal delivery occurred, such that this service of process was legally insufficient.  *Id.* at 1-2.

26

Federal service of process is governed by Federal Rule of Civil Procedure 4, which provides, in relevant part:

> **(e) Serving an Individual Within a Judicial District of the United States**. Unless federal law provides otherwise, an individual— other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:
>
> > **(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> >
> > **(2)** doing any of the following:
> >
> > > **(A)** delivering a copy of the summons and of the complaint to the individual personally;
> > >
> > > **(B)** leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> > >
> > > **(C)** delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(c). Relevant Maine state law, Maine Rule of Civil Procedure 4, permits personal service of an individual "by delivering a copy of the summons, complaint, and notice regarding Electronic Service to the individual personally." ME. R. CIV. P. 4(d)(1); *see also* ME. R. CIV. P. 4(e) (personal service outside the state of Maine may be made "in the same manner as if such service were made within the state, by any person authorized to serve civil process by the laws of the place of service or by a person specially appointed to serve it. An affidavit of the person making service shall be filed with the court stating the time, manner, and place of service. Such service has the same force and effect as personal service within the state").

27

Interpreting the Maine service of process rules, the Maine Supreme Judicial Court has clearly explained "[w]e have never equated personal service with in-hand service, however, and would be loath to do so where, as here, a defendant was attempting to evade service." *TD Banknorth, N.A. v. Hawkins*, 2010 ME 104, ¶ 15, 5 A.3d 1042 (collecting cases in which courts have determined service of process sufficient where the server is in close proximity to the defendant, communicates his clear intent to serve court documents, and makes reasonable efforts to leave the documents with the defendant). In *Hawkins*, the Law Court affirmed the trial court's decision that the defendant had been properly served, explaining "[t]he record shows that [defendant] was aware of the lawsuit, was aware that the deputy was attempting to serve him, [and] deliberately avoided such service even when he was home to accept it . . .." *Id.* ¶ 17.

Based on the record before it, the Court concludes Plaintiffs properly served Mr. Beal and the Court has jurisdiction over his case. By Mr. Beall's own telling, he was approached by the server who, upon Mr. Beall's refusal to physically accept the documents, left them on the bed of his truck. *Def.'s Mot. to Vacate Default* at 1. Further, the record reveals Mr. Beall had responded to emails indicating his awareness of the lawsuit against him and his intent to avoid service. *See Ex. List*, Attach. 7, *Email From Beall dated 3/3/2025* (ECF No. 21) (in response to attempted service of process, stating in email to Mr. Van Savage at 8:01 p.m. on March 3, 2025, "I'm assuming this is from you? . . . I can't wait to see you in court," and stating, in a follow-up email at 8:06 p.m., "Gonna have a harder time finding

me than the courts DID to serve Dave the wrongful death paperwork u guys have been hiding him from, I know everything") (Defendant's capitalization).  While Mr. Beall objects that service was made in public during a custody exchange and that no signature or formal delivery was made, he cites no Maine or federal law, statutory or judge-made, that indicates these factors make service insufficient.  Further, the Maine Supreme Judicial Court has explicitly denied a defendant's attempt to claim deficient service based on the defendant's efforts to thwart it.  *See Hawkins*, 2010 ME 104, ¶ 16, 5 A.3d 1042.  The Court thus concludes that Plaintiffs' service was permissible under Maine law and Federal Rule of Civil Procedure 4, such that the Court has lawful jurisdiction to hear this case.

## 2.  Vacating Entry of Default

As a threshold matter, the First Circuit discussed the liberal nature of the "good cause" standard in the context of a Rule 55(c) motion to set aside at length in *Coon v. Grenier*, 867 F.2d 73 (1st Cir. 1989), explaining:

> Allowing an entry of default to be set aside on a showing of reasonable justification is in keeping both with the philosophy that actions should ordinarily be resolved on their merits, [*United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir. 1985).]; [*Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981)]; *American & Foreign Ins. Ass'n v. Commercial Ins. Co.*, 575 F.2d 980, 982 (1st Cir. 1978); [*United States v. 147 Division St., Located in Woonsocket, R.I.*, 682 F. Supp. 694, 697 (D.R.I. 1988)], and with the command of the Civil Rules themselves. *See* FED. R. CIV. P. 1 (rules "shall be construed to secure the just . . . determination of every action").  These policy considerations, we suggest, are at their zenith in the Rule 55(c) milieu.  Early in the case, as when a default has been entered but no judgment proven, a liberal approach is least likely to cause unfair prejudice to the nonmovant or to discommode the court's calendar. *Cf.* [*Phillips v. Weiner*, 103 F.R.D. 177, 179 (D. Me. 1984)] (liberality justified under Rule 55(c) because entry of default a clerical act and not a final judgment).  In these

> circumstances, a district court should resolve doubts in favor of a party seeking relief from the entry of a default. *Gross v. Stereo Component Systems*, 700 F.2d 120, 122 (3d Cir. 1983); *147 Division St.*, 682 F. Supp. at 697.

*Coon*, 867 F.2d at 75.

With this movant-friendly framing in mind, the Court concludes that several of the factors enumerated by the First Circuit in *Indigo America, Inc. v. Big Impressions, LLC*, 597 F.3d 1, weigh in favor of setting aside the entry of default against Mr. Beall. First, setting aside the entry of default does not prejudice the Plaintiffs. The Court has already issued a preliminary injunction in their favor to ameliorate their alleged harms during the pendency of this lawsuit and, in light of Mr. Beall's clearly evidenced intent to defend the case, proceeding to default judgment would require a hearing. *See* FED. R. CIV. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing"). In addition to a hearing to "determine the amount of damages" and "establish the truth of any allegation by evidence," FED. R. CIV. P. 55(b)(2)(B-C), in order to issue a permanent injunction a plaintiff "must show actual success on the merits of the claim, rather than a mere likelihood of success." *Caroline T. v. Hudson Sch. Dist.*, 915 F.2d 752, 755 (1st Cir. 1990) (internal quotation marks omitted). In light of the Plaintiffs' need to prove their case at a hearing and the Defendant's right to present evidence at the same, the Court concludes setting aside the entry of default and allowing the case to proceed in ordinary course does not prejudice the Plaintiffs.

Second, while Plaintiffs insist Mr. Beall presents no meritorious defenses to the claims brought against him, if the Court takes Mr. Beall's allegations as true for the purposes of the current motion, several of his arguments would indeed defeat the claims against him. For example, his allegation that he was fired as a result of reporting workplace racism, *Def.'s Mot. to Vacate Default* at 2, is directly relevant to the social media postings that Plaintiffs assert were defamatory. *See Am. Compl.* ¶¶ 59-64. First Circuit caselaw is unequivocal that truth is an absolute defense to defamation. *See, e.g.*, *Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 504 F.3d 189 (1st Cir. 2007) ("To prove defamation under Maine law, a plaintiff must establish that the defendant made a false statement that lowered her in the estimation of the community. Accordingly, truth is an absolute defense to a charge of defamation") (internal citations, alterations, and quotation marks omitted). Similarly, tortious interference with advantageous economic relationships requires a plaintiff to prove that the defendant "ma[de] a false representation." *See Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 34, 150 A.3d 793. Should Mr. Beall prove that his statements made to EJP customers were not false, Plaintiffs' claim for tortious interference with advantageous economic relationships would fail. To be clear, the Court takes no position on whether Mr. Beall will be able to prove such defenses; rather, the Court merely concludes that his motion, liberally construed, presents arguments that plausibly constitute defenses to the claims against him, and as such the Court determines this factor weighs in favor of setting aside the entry of default.

31

In light of the foregoing, the Court concludes that granting Mr. Beall's motion to set aside entry of default and to permit this case to proceed in the ordinary course is the most appropriate outcome based on the First Circuit's directive that "a district court should resolve doubts in favor of a party seeking relief from the entry of a default." *Coon*, 867 F.2d at 75.

## V.    MR. BEALL'S MOTION FOR LEAVE TO FILE COUNTERCLAIMS AND PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

In this section, the Court addresses the Mr. Beall's answer and counterclaims, *Answer and Countercls.*, his motion for leave to file counterclaims, *Def.'s Countercls. Mot.*, and Plaintiffs' motion to dismiss counterclaims, *Pls.' Mot. to Dismiss Countercls.,* as well as the oppositions and supplemental affidavits submitted with regard to these two motions.

### A.    The Parties' Positions

#### 1.    Mr. Beall's Answer and Counterclaims (ECF No. 41)

In his answer, Mr. Beall admits that he was formerly employed by EJP but denies every other allegation in the complaint. *Answer and Countercls.* at 1. He specifically denies that he was properly served, objects to jurisdiction due to improper service, and denies all claims of wrongdoing or liability. *Id.*

Mr. Beall next asserts affirmative defenses to the Plaintiffs' claims against him. He first argues he was improperly served, claiming Plaintiffs attempted to serve him at a location he was legally barred from and at his sister's home, where he does not reside. *Id.* at 1-2. Next, Mr. Beall reiterates his position that his failure to respond was due to extraordinary life circumstances, including housing

instability, family court proceedings, and health issues, which together he claims amount to excusable neglect. *Id.* at 2. Mr. Beall continues by asserting that he possesses meritorious defenses under the ADA, the federal Paid Family Medical Leave Act (PMFLA) and its state equivalent, and "other federal and state statutes protecting against workplace discrimination and retaliation." *Id.* Next, he argues Plaintiffs and their counsel engaged in bad faith litigation tactics, thus abusing legal process and violating the doctrine of unclean hands. *Id.* Mr. Beall claims that Plaintiffs retaliated against him for exercising his legal rights. *Id.* Next, he asserts failure to mitigate, estoppel, and waiver, arguing that Plaintiffs' own actions materially contributed to their alleged damages. *Id.* Finally, Mr. Beall asserts that Plaintiffs' counsel has a history of litigation misconduct, collecting cases in which other federal District Courts have sanctioned Littler Mendelson, P.C. to argue such unlawful tactics have been applied against him. *Id.*

Mr. Beall asserts five counterclaims against EJP. Count I, wrongful termination, alleges he was terminated on November 6, 2024 after disclosing a court-ordered absence. *Id.* at 3. Mr. Beall claims EJP provided no warning or opportunity to contest his termination and cited attendance issues as mere pretext for his termination, and that his "termination violated Massachusetts labor law and policy." *Id.*

Count II, retaliation under state and federal law, alleges EJP retaliated against Mr. Beall for taking time to attend family court, which he asserts is a protected right. *Id.* Defendant continues that he was retaliated against while in

recovery from alcoholism, a protected status under the ADA, a condition EJP was aware of. *Id.* Mr. Beall alleges that his termination was "a coordinated effort to remove Defendant, who had become aware of and outspoken about internal misconduct." *Id.* He continues that EJP terminated other employees "under suspicious or retaliatory circumstances linked to Defendant's protected activity and/or association," alleging that EJP terminated employee Justin Newman after he spoke with Mr. Beall and employee Ryan Theis after he obtained a restraining order against the abusive boyfriend of another EJP employee. *Id.* Mr. Beall claims that he disclosed his concerns about the misconduct of EJP employee James Peterson to the Human Resources department, after which EJP demoted Mr. Peterson, which he maintains "suggest[s] acknowledgement of misconduct and internal accountability issues" and supports Defendant's assertion that his own termination was retaliatory and part of a larger effort to silence whistleblowers. *Id.* at 3-4.

In Count III, disability discrimination under the ADA, Mr. Beall alleges he disclosed his recovery from alcoholism, which constitutes a disability under the ADA, and that EJP subjected him to a hostile work environment and terminated him based on that protected status. *Id.* at 4. He submits that after disclosing his status as a recovering alcoholic, he "was repeatedly mocked and referred to as 'Timmy Beers.'" *Id.*

Mr. Beall brings Count IV for hostile work environment and racial discrimination, claiming that he is a white man with a Black daughter and that he

was subjected to racially charged jokes and symbols, "including a 'Burger King Crown' passed around as a 'prize' for racist comments." *Id.* He asserts he objected and that after he disclosed his divorce, was mocked with the statement "[s]o we can bring back the crown?" *Id.*

Count V alleges abuse of process and malicious prosecution, arguing that Plaintiffs' counsel "manipulated the litigation process by engaging in deceptive service practices, strategic silence, and retaliation" and that EJP filed its lawsuit "in bad faith with the intention to silence, punish, and destabilize Defendant during a vulnerable time." *Id.*

Mr. Beall concludes by requesting the Court to dismiss the Plaintiffs' complaint, enter judgment in his favor on all counterclaims, award compensatory and punitive damages in an amount to be determined at trial, award costs, interest, and attorney's fees should he later retain an attorney, and grant any other relief the Court deems just and proper. *Id.* at 5.

### 2.     Mr. Beall's Motion for Leave to File Counterclaims (ECF No. 52)

After filing his answer, which includes the counterclaims addressed above, Mr. Beall moved for leave to file counterclaims against EJP and for a scheduling order to guide the course of this proceeding. *Def.'s Countercls. Mot.* at 1. He explains that this case began with a civil filing against him and that in response he "brought forward evidence of retaliation, misrepresentation, procedural misconduct, and potential abuse of process by both the Plaintiff and its legal counsel." *Id.* He further informs the Court that he has received a Right to Sue letter from the EEOC

and filed complaints with multiple agencies for alleged civil rights violations and retaliation. *Id.* He thus "seeks leave of the Court to file counterclaims under applicable federal and state law, including but not limited to the Americans with Disabilities Act, Title VII, 42 U.S.C. §1983, and other applicable causes of action related to retaliation, malicious prosecution, and abuse of legal process." *Id.* at 2. He requests the Court grant him leave to file counterclaims, set a scheduling order for amended pleadings and motion practice, and "acknowledge that the scope of this matter has broadened significantly since initial filings and warrants continued judicial review." *Id.*

### 3.    Plaintiffs' Motion to Dismiss Counterclaims (ECF No. 71)

Plaintiffs' move to dismiss Mr. Beall's counterclaims on multiple procedural and substantive grounds. *Pls.' Mot. to Dismiss Countercls.*

First, Plaintiffs argue that, at the time of filing his counterclaims, Mr. Beall was a defaulted party and a "a defaulted party cannot file pleadings without first vacating or opening the default and then seeking leave of Court to file counterclaims." *Id.* at 3. Plaintiffs report that, in accordance with First Circuit precedent, "when a defendant is defaulted for failure to file a pleading, the default applies to whatever the party should have pleaded," *id.* at 3-4 (quoting *Carteret Sav. & Loan Ass'n v. Jackson*, 812 F.2d 36, 38 (1st Cir. 1987)), and that this extends to counterclaims that should have been included in the initial responsive pleading. *Id.* at 4 (collecting cases from other federal and state court which have not allowed counterclaims based on default). Here, Plaintiffs say, "[t]he Clerk never should have accepted Beall's pleadings with a valid default in place" because his entry of

36

default had not been set aside. *Id.* (collecting caselaw from other federal district courts in support).

Second, should the Court accept Mr. Beall's filing of counterclaims, Plaintiffs' contend in the alternative that Mr. Beall's counterclaims should be dismissed. Regarding Counts I-IV, Plaintiffs submit Mr. Beall has neither alleged nor established that he exhausted his federal and state administrative remedies prior to bringing his counterclaims, which they argue is a necessary predicate to bringing employment discrimination claims in court. *Id.* at 5 (citing *Posada v. ACP Facility Servs., Inc.*, 389 F. Supp. 3d 149, 158 (D. Mass. 2019); *Williams v. Interstate Brand Cos.*, 304 F. Supp. 2d 74, 77 (D. Me. 2004)). Further, Plaintiffs say, Count I fails to meet the pleading standard established by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), because this counterclaim does not specify what law Plaintiffs purportedly violated. *Id.* at 5-6. Continuing to Count V, Plaintiffs argue Mr. Beall's counterclaim is premature because no final judgment has been entered in his favor, which is a necessary element under Maine law to prove a malicious prosecution claim. *Id.* at 6 (citing *Fleet Nat. Bank v. Hamilton Trowbridge Realty Corp.*, 2001 Me. Super. LEXIS, at *19-20 (Me. Super. May 8, 2001) (citation corrected) (in turn citing *Pepperell Trust Co. v. Mountain Heir Fin. Corp.*, 1998 ME 46, ¶ 15, 708 A.2d 651, 656)).

At bottom, Plaintiffs request the Court dismiss Mr. Beall's counterclaims as impermissibly filed by a defaulted party and premature for lack of administrative exhaustion and in the absence of a judgment in his favor. *Id.*

### 4. Mr. Beall's Opposition to Motion to Dismiss Counterclaims (ECF No. 73)

Mr. Beall opposes the Plaintiffs' motion to dismiss counterclaims, arguing that the motion is prematurely brought, procedurally inappropriate, and inconsistent with principles of fairness and due process. *Def.'s Dismiss Countercls. Opp'n* at 1.

Beginning with procedural posture and timeliness, Mr. Beall submits that he has moved to vacate the entry of default and, as of the time of filing, the Court has not resolved that motion. *Id.* Thus, he contends dismissing his counterclaims based on the unresolved default "would unjustly prejudice Defendant before the Court has ruled on his substantive and meritorious arguments challenging that default." *Id.* Next addressing the merits of his counterclaims, Mr. Beall argues his counterclaims "are rooted in documented statutory and constitutional violations, as well as intentional and ongoing retaliatory conduct" and insists "dismissing the counterclaims outright — rather than holding them in abeyance pending resolution of the Motion to Vacate — would improperly deny Defendant his right to be heard." *Id.* at 1-2. He further asserts that Plaintiffs' arguments regarding his failure to exhaust administrative remedies are inaccurate, as he "has filed and received Right-to-Sue letters from both the Massachusetts Attorney General's Office and the U.S. Equal Employment Opportunity Commission." *Id.* at 2.

Next, Mr. Beall argues Plaintiffs' motion is procedurally improper, alleging that, by filing a motion to dismiss before the motion to vacate default is resolved, "Plaintiffs are attempting to secure a substantive ruling before this Court has even determined whether Defendant is properly before it as a fully-participating litigant." *Id.*

Mr. Beall adds that, upon direction from the Court, he is prepared to submit the Right-to-Sue letters and other documentation as supporting evidence. *Id.* He concludes by asking the Court to deny the Plaintiffs' motion to dismiss counterclaims or, in the alternative, hold its ruling on the motion in abeyance until it enters a decision on the motion to vacate default. *Id.*

### 5.    Plaintiffs' Reply to Motion to Vacate Default (ECF No. 88)

Plaintiffs reiterate that Mr. Beall remains a defaulted party, such that he is not permitted to file any pleadings, including counterclaims, unless and until the Court vacates the default. *Pl.'s Dismiss Countercls. Reply* at 1. Plaintiffs submit that by filings his counterclaims, Mr. Beall "is attempting to escape the effects of the default." *Id.* at 1-2.

Plaintiffs next emphasize that Mr. Beall's asserted counterclaims rely on fictitious citations, as detailed in their July 10, 2025 motion for sanctions. *Id.* at 2 (citing *Pls.' Sanctions Mot.*). Finally, Plaintiffs point out that Mr. Beall "has alleged only receiving [right-to-sue] letters from the Massachusetts Attorney General's Office and the EEOC." *Id.* Plaintiffs aver Mr. Beall's counterclaims "assert a variety of state claims that would necessitate exhausting state administrative remedies," and that Mr. Beall has failed to do so. *Id.* at 2-3.

39

At bottom, Plaintiffs reassert their position that the only issues pending before the Court are the claims brought by Plaintiffs, for which Mr. Beall has been defaulted, and ask the Court to dismiss Mr. Beall's counterclaims in their entirety. *Id.* at 3.

### 6. Plaintiffs' Opposition to Motion for Leave to File Counterclaims (ECF No. 95)

Plaintiffs respond, first, that Mr. Beall is not authorized to file a motion for leave to file because of the entry of default against him, and, second, that Mr. Beall has already filed counterclaims in this case and should not be allowed to do so again. *Pls.' Countercls. Opp'n* at 1-2. On the first point, Plaintiffs explain they opposed his motion to vacate default and Mr. Beall failed to file a reply, such that default judgment should be ordered. *Id.* at 2. On the second point, Plaintiffs elaborate that "[a]llowing [Mr.] Beall to file additional counterclaims at this late stage would be duplicative, inefficient, and prejudicial to Plaintiffs" and ask the Court to deny his motion for leave to file counterclaims. *Id.* at 2-3.

### 7. Mr. Beall's Reply to Motion for Leave to File Counterclaims (ECF No. 99)

Mr. Beall replies that, though he did not file a reply in support of his motion to vacate default, "the substantial declarations and filings [he has] submitted in the weeks since — including my Show Cause Response, evidentiary clarifications, and timeline exhibits — address the same subject matter." *Def.'s Countercls. Reply* at 1. He continues that his motion for leave to file counterclaims was not an attempt to "double-dip," but rather is seeking "to consolidate and properly organize all claims related to this matter and the retaliation [he] experienced." *Id.* at 2. Mr. Beall also

reiterates his claims that Plaintiffs have misrepresented his position and participation in this lawsuit and asks the Court to grant his motion. *Id.*

## B.    Legal Standards

These motion sequences implicate the standard for asserting counterclaims as well as for dismissal of claims; the Court thus provides the legal standard for each doctrine in turn.

### 1.    Standard for Bringing Counterclaims

Federal Rule of Civil Procedure 13, which governs counterclaims, separates counterclaims into two types: compulsory and permissive. *See* FED. R. CIV. P. 13. First describing the process applicable to compulsory counterclaims, Rule 13 states:

> **(1)** *In General.* A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
>
> > **(A)** arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> >
> > **(B)** does not require adding another party over whom the court cannot acquire jurisdiction.

FED. R. CIV. P. 13(a).  Turning to permissive counterclaims, Rule 13 provides "[a] pleading may state as a counterclaim against an opposing party any claim that is not compulsory." FED. R. CIV. P. 13(b).

### 2.    Standard for a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  To state a claim, a complaint must contain, at minimum, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R.

41

CIV. P. 8(a)(2).  In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'"  *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).  Evaluating the plausibility of a claim is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'"  *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

The Court's review of a motion to dismiss for failure to state a claim is a "two-step analysis."  *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015).  "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'"  *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").  "Second, the court must determine whether the factual

allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

### C.    Discussion

#### 1.    Motion for Leave to File Counterclaims

As an initial matter, the Court is puzzled by Mr. Beall's motion for leave to file counterclaims because, as the Court understands the docket, he has already done so.  *See Answer and Countercls.* at 3-4 (asserting counterclaims for wrongful termination (Count I), retaliation under state and federal law (Count II), disability discrimination (Count III), hostile work environment and racial discrimination (Count IV), and abuse of process and malicious prosecution (Count V)).  In his motion for leave to file counterclaims, Mr. Beall describes his proposed counterclaims, some of which appear to be redundant to the counterclaims he has already filed.  *See Def.'s Countercls. Mot.* at 2 (requesting leave "to file counterclaims under applicable federal and state law, including but not limited to the [ADA], Title VII, 42 U.S.C. § 1983, and other applicable causes of action related to retaliation, malicious prosecution, and abuse of legal process").  Notably, however, there are certain differences between the counterclaims asserted in his answer and in his motion for the Court's permission to file counterclaims.  First, Mr. Beall's motion for leave to file contemplates filing a counterclaim pursuant to 42 U.S.C. § 1983, a statutory basis not contemplated among the counterclaims included with Mr. Beall's answer.  *Compare Def.'s Countercls. Mot.* at 2, *with Answer and Countercls.*  Second, Mr. Beall frames his motion for leave to file

43

counterclaims, which was filed fifteen days after his original answer and counterclaims, as being necessary "[g]iven the volume and nature of emerging facts," which he asserts includes that "Defendant has received a Right to Sue letter from the [EEOC]." *Def.'s Countercls. Mot.* at 1-2.

In light of the unclear nature of Mr. Beall's motion for leave to file counterclaims, the Court concludes the following. Insofar as Mr. Beall requests permission to file the counterclaims already included in his answer, the Court notes that Rule 13 requires a pleading to assert any counterclaim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and plainly permits a pleading to "state as a counterclaim against an opposing party any claim that is not compulsory." FED. R. CIV. P. 13(a), (b). As Mr. Beall's answer constitutes a responsive pleading, *see Easy Pay Sols., Inc. v. Turner*, No. 2:24-cv-00085-SDN, 2025 U.S. Dist. LEXIS 5594, at *11 (D. Me. Jan. 10, 2025) ("An answer is a responsive pleading . . . .") (quoting *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 110 (2d Cir. 2012)), Mr. Beall need not seek permission to assert counterclaims in his answer.

Further, as Mr. Beall asserts additional counterclaims separate from those included in his answer, his motion for leave to file counterclaims implicates Federal Rule of Civil Procedure 15, which governs amended and supplemental pleadings. *See* FED. R. CIV. P. 15. In his reply, he explains he wishes "to consolidate and properly organize all claims related to this matter and the retaliation [he] experienced." *Def.'s Countercls. Reply* at 2. The First Circuit's directive to district

44

courts to liberally construe the filings of pro se litigants is well established. *See, e.g.*, *Ahmed*, 118 F.3d at 890. In light of this directive and recognizing the distinct legal claims referenced in Mr. Beall's motion for leave to file counterclaims, as well as intervening factual and procedural developments, the Court in its discretion recharacterizes his motion for leave to file counterclaims as a motion to amend pleading pursuant to Rule 15. However, it is standard practice in this District for a party moving to amend a pleading to submit a copy of their proposed amended pleading along with their motion seeking permission to file, such that the Court may review the proposed amended pleading in determining whether to grant the motion. The Court thus holds Mr. Beall's motion to file amended counterclaims in abeyance and orders him to file his proposed amended counterclaims within seven days of the date of this order, at which time the Court will rule on his motion for leave to file counterclaims.

## 2. Motion to Dismiss Counterclaims

Turning to Plaintiffs' motion to dismiss Mr. Beall's counterclaims, the Court first addresses Plaintiffs' argument that counterclaims cannot be brought unless and until the entry of default against Mr. Beall is vacated. *See Pls.' Mot. to Dismiss Countercls.* at 3-4. In support of their position, Plaintiffs collect a robust body of caselaw from other federal and state courts that have not permitted a defaulted defendant to assert counterclaims. *Id.* Similarly, Plaintiffs collect caselaw from other federal district courts that a defaulted party is not permitted to appear or make filings unless and until the default is vacated. *Id.* However, as an initial

45

matter, none of these cases, which come from the Second and Eighth Circuit Courts of Appeal, the Kentucky Court of Appeals, and the federal District Courts for the District of Idaho, Eastern and Northern Districts of California, and District of Michigan, are binding on this Court.

The Court's review of First Circuit and District of Maine caselaw suggests that the rules regarding filings by defaulted parties are not applied as strictly in the District of Maine. In *US Bank Nat'l Ass'n v. Thomes*, No. 2:19-cv-00477-JAW, 2020 U.S. Dist. LEXIS 115791 (D. Me. July 2, 2020), a United States Magistrate Judge of the District of Maine previously noted that, even without a formal motion to set aside default, there is "considerable authority that could support construing Defendant's filing of his response to the complaint three days after the deadline, with his letter explaining the timing of his response, as the functional equivalent of a motion to set aside the entry of default." *Id.* at 6-7 (collecting federal caselaw permitting other filings to be construed as motions to vacate default). This reasoning suggests that it is within the discretion of the court to determine whether a defaulted parties may make filings on the docket, but a court can review such filings even without a formal motion to set aside default.

Third, as a practical matter, the Court in this order has granted Mr. Beall's motion to set aside the entry of default against him, such that dismissing all his filings while defaulted would merely cause administrative delay while Mr. Beall refiles his counterclaims and the statutory periods for responses and replies begin anew. As the Plaintiffs have already responded to the merits of his counterclaims

46

in their motion to dismiss counterclaims, the Court sees no reason to further delay this already delayed case and declines to dismiss Mr. Beall's counterclaims because they were filed by a defaulted party.

With regard to Plaintiffs' motion to dismiss Mr. Beall's counterclaims for failure to administratively exhaust, being deficiently pleaded, and being brought prematurely, *Pls.' Mot. to Dismiss Countercls.* at 5-6, the Court resolves that it is premature to adjudicate the motion's substantive arguments at this time, which may be mooted by Mr. Beall's amended counterclaims. First Circuit caselaw is clear that, once a pleading is amended, the earlier version of the pleading is considered "dead letter." *Cf. Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008) ("An amended complaint, once filed, normally supersedes the antecedent complaint. Thereafter, the earlier complaint is a dead letter and no longer performs any function in the case"); *see also PetEdge, Inc. v. Yahee Techs. Corp.*, Civil Action No. 1:15-cv-13171-ADB, 2017 U.S. Dist. LEXIS 66663, at *3 (D. Mass. May 2, 2017) ("Because [defendant] amended its counterclaim, its original counterclaim 'is no longer operative'") (quoting *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 751 F. Supp. 2d 277, 286 (D. Mass. 2010)).

In light of Mr. Beall's apparent request to amend his counterclaims, which the Court holds in abeyance pending submission of the amended counterclaims as explained above, the Court deems it, at best, inefficient and, at worst, advisory to rule on the merits of Plaintiffs' motion to dismiss counterclaims at this time. The Court accordingly dismisses Plaintiffs' motion without prejudice. The Plaintiffs

47

may bring another motion to dismiss counterclaims, should they wish to do so, if and when the Court grants Mr. Beall's request for leave to file amended counterclaims and Mr. Beall files his amended counterclaims.  Should Mr. Beall fail or decline to submit a copy of his amended counterclaims within seven days, as he has been instructed to do by the Court in this order, the Plaintiffs may refile their motion to dismiss counterclaims, to be resolved on the record before the Court at that time.

## VI.    MR. BEALL'S MOTIONS FOR JUDICIAL NOTICE

In this section, the Court reviews Mr. Beall's motion for judicial notice and preservation of the record, *Def.'s Jud. Notice Mot.*, his supplement to motion to amend, *Def.'s Suppl. to Mot. to Amend*, and his notice regarding police misrepresentations, *Def.'s Police Rep. Notice*, as well as Plaintiffs' respective oppositions, and Mr. Beall's replies.

### A.    The Parties' Positions

#### 1.    Mr. Beall's Motion for Judicial Notice of Preservation of Record (ECF No. 51)

Mr. Beall moves the Court to take judicial notice of two alleged facts: first, that "[o]n June 26, 2025, Plaintiff[s'] counsel submitted a communication through a designated court email address, in apparent violation of procedural restrictions regarding ex parte or informal filings," and, second, that "Defendant has submitted documentation identifying an individual named 'Scott Prescott' as a representative of Plaintiff, despite Plaintiff[s'] counsel previously stating in writing that they 'do not know who Scott Prescott is,'" which Mr. Beall submits as evidence of "either

material misrepresentation or submission of falsified documents in prior filings."
*Def.'s Jud. Notice Mot.* at 1-2.  As relief, Mr. Beall requests the Court "1. Take
judicial notice of the above-referenced contradictions and procedural conduct; 2.
Preserve all relevant emails and filings submitted to the clerk regarding this
matter; 3. Consider whether further clarification or sanctions are warranted to
protect the Court's integrity and Defendant's rights."  *Id.* at 2.

### 2.    Mr. Beall's Supplement to Motion to Amend (ECF No. 54)[2]

Mr. Beall "submits this supplement in connection with the previously filed
Motion to Amend and Supplement the Record," informing the Court that he "was
compelled to appear in Westborough District Court in relation to a criminal charge
filed in March 2025—brought forward by the same parties involved in this federal
matter."  *Def.'s Suppl. to Mot. to Amend* at 1.  He notes the "complaint was filed
under the name 'Scott Prescott,'" which Mr. Beall describes as "suspiciously similar"
to Steven Prescott, the CEO of EJP.  *Id.*  Mr. Beall characterizes this criminal filing
as "a coordinated effort to inflict reputational harm and create a parallel narrative
in state criminal court during the pendency of this federal matter."  *Id.*  He avers
neither Plaintiffs nor their counsel informed him of the criminal charge, "despite its
clear material relevance."  *Id.*

---

[2]    Plaintiff styles his filing a "supplement to motion to amend" and explains that he "submits
this supplement in connection with the previously filed Motion to Amend and Supplement the
Record."  *Def.'s Suppl. to Mot. to Amend* at 1 (capitalization altered).  On the Court's review, Mr.
Beall has not filed a motion to amend and supplement the record, such that his motion to
supplement is untethered to any prior filing.  However, liberally construing Mr. Beall's pro se filing,
*Ahmed*, 118 F.3d at 890, the Court associates this filing with Mr. Beall's motion for judicial notice
based on its related subject matter regarding the incident report from the Shrewsbury,
Massachusetts Police Department filed by a "Scott Prescott," which Mr. Beall contends is a
misnomer for EJP CEO Steven Prescott.

He next informs the Court that Plaintiffs' counsel "has engaged with the attorney in his ongoing divorce proceedings, allegedly providing false characterizations of Defendant's actions and legal position," which Mr. Beall submits is further retaliation and obstruction of his rights. *Id.* at 1-2. He "also acknowledges his public online activity, including humorous or satirical posts," insisting "[t]hese expressions are constitutionally protected and stem directly from the frustration, pain, and confusion caused by the Plaintiff[s'] litigation tactics." *Id.* at 2. Finally, he explains "[t]his supplement is submitted solely to maintain the integrity of the record, clarify the real-time timeline of retaliatory behavior, and request that this Court remain vigilant in the face of what appears to be a coordinated effort to silence, punish, and discredit a pro se defendant exercising his rights." *Id.*

### 3. Mr. Beall's Notice Regarding Police Report Misrepresentations and Basis for Prior Statements (ECF No. 94)

Mr. Beall concedes that the incident report, in addition to incorrectly identifying the EJP CEO as "Scott Prescott," later includes the correct name "Stephen Prescott (CEO)" and a disclaimer that report was prepared by a civil clerk and has not been reviewed for accuracy. *Def.'s Police Rep. Notice* at 1. Nonetheless, he asserts he "referenced this error in a social media post to express concern that someone would file a criminal complaint involving me under a misidentified name, particularly given the gravity of the allegations made and the reputational harm that could result." *Id.*

50

Further, he points out the police report states the alleged harassment of Mr.
Van Savage began in mid-January 2025, which he calls "demonstrably false
[because he] first contacted Mr. Van Savage by email in November 2026."[3]  *Id.* at 2.
He asserts Plaintiffs "misstate the timeline by over two months – while
simultaneously pursuing injunctive relief and police involvement – forms the core of
[his] concern."  *Id.*  He continues by reiterating his claim that the incident report
states Mr. Van Savage filed a police report on the advice of EJP's legal counsel,
which he submits "reasonably led [him] to believe this was not a routine filing but a
strategic act designed to silence or retaliate against [him]."  *Id.*

### 4.    Plaintiffs' Opposition to Defendant's Motion for Judicial Notice and Preservation of Record (ECF No. 96)

Plaintiffs oppose Mr. Beall's request for judicial notice, explaining judicial
notice is governed by Federal Rule of Evidence 201 and applies to facts "not subject
to reasonable dispute," which does not cover Mr. Beall's allegations.  *Pls.' Jud.
Notice Opp'n* at 1 (quoting FED. R. EVID. 201).   Plaintiffs further argue their
communication implicated by Mr. Beall was neither ex parte nor in violation of any
rule, pointing out that they merely alerted the Court Clerk to PII contained in Mr.
Beall's filing of the incident report, that the email was administrative only and did
not address the merits of the case or seek a substantive advantage, and that Mr.
Beall was copied on the email.  *Id.* at 2.  Plaintiffs also reiterate their position that a
typographical error in a police report drafted by a Shrewsbury, Massachusetts

---

[3]    The Court presumes the date of "November 2026" is a typographical error and Mr. Beall
intended to write "November 2024."

Police Department employee does not constate a falsified police report nor warrants any Rule 11 sanctions. *Id.* at 3.

### 5.    Plaintiffs' Opposition to Defendant's Motion to Supplement Motion to Amend (ECF No. 97)

Plaintiffs first point out "it is not clear under what rule or statute [Mr.] Beall seeks relief nor what he is even trying to amend," as Mr. Beall has not filed a motion to amend to be supplemented. *Pls.' Suppl. to Mot. to Amend Opp'n* at 1. Responding to Mr. Beall's factual allegations, Plaintiffs assert the criminal case against him should not be construed as a coordinated effort to inflict reputational harm, as Mr. Van Savage was entitled to report Mr. Beall's behavior to the Shrewsbury, Massachusetts Police Department and, further, that a typographical error in the incident report does not constitute filing a falsified police report or retaliation, as Mr. Beall alleges. *Id.* at 2. Plaintiffs do not deny they contacted counsel involved in Mr. Beall's ongoing divorce dispute but assert this was merely in an attempt to locate him for service. *Id.* at 3. Finally, Plaintiffs reiterate that Mr. Beall's social media posts are defamatory, that he has continued to make such public posts during the pendency of this lawsuit, and that Mr. Beall's motion to supplement motion to amend serves no purpose on the docket relevant to this case. *Id.* at 3-4.

### 6.    Mr. Beall's Reply in Support of Motion for Judicial Notice and Preservation of Record (ECF No. 100)

Mr. Beall replies that his motion for judicial notice "was never an attempt to convert contested facts into established ones. It was an effort to preserve contradictions and procedural concerns that may be relevant to the Court's

52

evaluation of credibility, candor, and conduct." *Def.'s Jud. Notice Reply* at 1. He
reiterates the allegedly contradictory facts regarding the misnomer "Scott Prescott"
in the incident report and that Mr. Van Savage was advised to file a criminal
complaint by EJP's counsel. *Id.* at 1-2. Turning to the alleged ex parte
communication, he emphasizes "Plaintiffs now admit that their counsel contacted
the clerk directly regarding my submission of the police report" and emphasizes
that he had previously asked Plaintiffs' counsel about the origins and their role in
the police report, was told Plaintiffs and their counsel were not involved, and that
the police report states it was filed by Mr. Van Savage on the advise of EJP's
counsel. *Id.* at 2. He asserts this presents "a serious credibility issue" and that
"even if the clerk email was not 'ex parte' in the strictest sense, it involved direct
communication with the Court about one of [his] filings, with procedural
consequences, without advance notice to [him]." *Id.* He again argues this
demonstrates a pattern of misrepresentation by Plaintiffs and their counsel, asserts
his desire for "the truth [to be] documented and preserved," and asks "the Court to
look closely at who has truly been upfront and who has tried to conceal their hand."
*Id.* at 3.

### 7.   Mr. Beall's Reply in Support of Motion to Supplement Motion to Amend (ECF No. 102)[4]

Mr. Beall replies that Plaintiffs have deliberately omitted the timestamp of his Facebook posts in an attempt to manipulate the record and asserts he has not contacted Mr. Van Savage since being informed of the restraining order against him. *Def.'s Suppl. to Mot. to Amend Reply* at 1-2.  He submits he has "complied entirely" with the terms of the protective order since being made aware of it.  *Id.* at 2.

He next reiterates his arguments for a pattern of obstruction and misrepresentation, point to "Plaintiffs manipulating the venue, manipulating the timeline of events, and filing a police report in Defendant's hometown using a knowingly false name."  *Id.*  He avers he has made all filings in good faith and Plaintiffs' opposition to his motion to supplement "is yet another example of Plaintiffs attempting to provoke judicial action by erasing nuance and chronology." *Id.*

### B.   Legal Standard

Mr. Beall's motions implicate two distinct legal doctrines—ex parte communications and judicial notice.

---

[4]     Mr. Beall titles this filing "Defendant's Reply in Opposition to Plaintiffs' Reply in Support of Second Motion for Contempt (ECF 97)"; however, the introductory paragraph explains the purpose of the filing is "to address mischaracterizations in Plaintiffs' Plaintiffs' July 18, 2025 filing (ECF 97), and to respectfully preserve the truth of the record."  *Def.'s Reply in Opp'n to Pls' Reply in Support of Second Mot. for Contempt (ECF 97)* (ECF No. 102) (*Def.'s Suppl. to Mot. to Amend Reply*).  The Court notes that ECF No. 97 is Plaintiffs' opposition to Mr. Beall's motion to supplement motion to amend and is unrelated to the second motion for civil contempt.  In light of this error, exacerbated by the myriad of filings being submitted on a daily basis, the Court thus retitles this motion to avoid confusion.

### 1.    Ex Parte Communications

Canon Three of the Code of Conduct for United States Judges prohibits, among other things, ex parte communications between a single party and a federal judge. *Code of Conduct for U.S. Judges*, Canon 3(A)(4). In full, this canon provides:

> (4) A judge should accord to every person who has a legal interest in a proceeding, and that person's lawyer, the full right to be heard according to law. Except as set out below, a judge should not initiate, permit, or consider ex parte communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested. A judge may:
>
> > (a) initiate, permit, or consider ex parte communications as authorized by law;
> >
> > (b) when circumstances require it, permit ex parte communication for scheduling, administrative, or emergency purposes, but only if the ex parte communication does not address substantive matters and the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication;
> >
> > (c) obtain the written advice of a disinterested expert on the law, but only after giving advance notice to the parties of the person to be consulted and the subject matter of the advice and affording the parties reasonable opportunity to object and respond to the notice and to the advice received; or
> >
> > (d) with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.

*Id.*

### 2.    Judicial Notice

Pursuant to Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). The Advisory Committee's note to Rule 201 explains "[t]he usual method of establishing adjudicative facts i[s] through the introduction of evidence, ordinarily consisting of the testimony of witnesses. If particular facts are outside of reasonable controversy, this process is dispensed with as unnecessary. A high degree of indisputability is the essential prerequisite." FED. R. EVID. 201 advisory committee's note (1972); *accord Lussier v. Runyon*, 50 F.3d 1103, 1114 (1st Cir. 1995) ("Courts have tended to apply Rule 201(b) stringently—and well they might, for accepting disputed evidence not tested in the crucible of trial is a sharp departure from standard practice").

### C.    Discussion

The Court first addresses Mr. Beall's allegation that "[o]n June 26, 2025, Plaintiff[s'] counsel submitted a communication through a designated court email address, in apparent violation of procedural restrictions regarding ex parte or informal filings." *Def.'s Jud. Notice Mot.* at 1. Upon information from the Clerk's Office, the Court understands Mr. Beall to be complaining of ex parte communication based on Plaintiffs' counsel's email to the Clerk on June 26, 2025, in which Plaintiffs' counsel informs the Clerk that Mr. Beall's filing of the Shrewsbury, Massachusetts incident report violates Federal Rule of Civil Procedure 5.2 by

including PII that should be redacted, and asks the Clerk to permit Plaintiffs five
days to file a brief explaining why the filing should be redacted.

On review, the Court concludes this information does not constitute an ex
parte communication because, first, Mr. Beall was included on the email, such that
the communication was decidedly not made "outside the presence of the parties."
*Code of Conduct for U.S. Judges*, Canon 3(A)(4). Second, the Plaintiffs' email was
sent, not to this presiding judge, but to the Court Clerk. The rules governing ex
parte communications prohibit "a judge" from "initiat[ing], permit[ting], or
consider[ing] ex parte communications or consider[ing] other communications
concerning a pending or impending matter that are made outside the presence of
the parties or their lawyers." *Id.* Here, the communication was not sent to a judge,
let alone this Judge, and thus the Judge was unaware any such communication
existed, or of its content, until Mr. Beall brought the issue to the Court's attention
in his motion.

Third, the rule permits ex parte communications "for scheduling,
administrative, or emergency purposes, but only if the ex parte communication does
not address substantive matters and the judge reasonably believes that no party
will gain a procedural, substantive, or tactical advantage as a result of the ex parte
communication." *Id.* Here, Plaintiffs' communication with the Court Clerk asked
for administrative relief of withholding docketing for a period to permit them to file
a brief seeking its redaction prior to docketing. Not only did the Clerk request
Plaintiffs' counsel refrain from such communications, but the Clerk further issued a

notice on the docket informing all parties of the personal identifiers in the incident report and directing them as to the necessary steps to remedy the violation of Rule 5.2. *See Notice* (ECF No. 49). The Court concludes that, not only was the communication non-substantive, but, further, "no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication." *Code of Conduct for U.S. Judges*, Canon 3(A)(4)(b). In sum, the Court declines to take judicial notice of Mr. Beall's allegations of improper ex parte communications, having concluded there has been no improper ex parte communication.

Turning next to Mr. Beall's assertions regarding the person named as "Scott Prescott" in the Shrewsbury, Massachusetts Police Department incident report, the Court concludes this matter is not one for which taking judicial notice is appropriate. First, Mr. Beall submits the incident report to highlight the alleged contradiction between the name in the report and "Plaintiffs' counsel previously stating in writing that they 'do not know who Scott Prescott is.'" *Def.'s Jud. Notice Mot.* at 1-2. The Court has no insight into what Plaintiffs' counsel has previously told Mr. Beall in direct communications. Second, Mr. Beall takes issue with the filing of this report with the Shrewsbury, Massachusetts police, alleging it is "a coordinated effort to inflict reputational harm and create a parallel narrative in state criminal court during the pendency of this federal matter." *Def.'s Suppl. to Mot. to Amend* at 1. Mr. Beall provides no support for his contention that Plaintiffs acted improperly by informing the Shrewsbury, Massachusetts Police Department of Mr. Beall's conduct; it is within the purview of the Shrewsbury Police

Department whether they determine his conduct gives rise to criminal charges, an entirely different proceeding than the civil case brought in federal court. His argument, untethered to any substantive motion and presented as fact, does not constitute a "fact" of which a court should take judicial notice.

Similarly, Mr. Beall alleges Plaintiffs' counsel "has engaged with the attorney in his ongoing divorce proceedings, allegedly providing false characterizations of Defendant's actions and legal position." *Id.* at 1-2. However, this bare-bones allegation provides no evidence of what statements were made, nor the basis for Mr. Beall's allegation of falsity. Judicial notice is limited to "facts," *see* FED. R. EVID. 201, and such facts must be either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Mr. Beall's allegations of false statement do not constitute a judicially noticeable fact.

At bottom, Mr. Beall's allegations of ex parte communications, his assertions of contradictory statements made by Plaintiffs' counsel, and his claims that Plaintiffs' counsel made false statements to counsel in his divorce proceeding do not constitute "facts" within the meaning of this rule. The Court dismisses Mr. Beall's motion for judicial notice of preservation of the record and his supplement to motion to amend.

## VII. PLAINTIFFS' MOTION TO STRIKE AND MR. BEALL'S EMERGENCY MOTION FOR SANCTIONS

In this section, the Court address Plaintiffs' motion to strike several of Mr. Beall's filings from the record, *Pls.' Mot. to Strike*, and Mr. Beall's emergency motion

for sanctions in response to the motion to strike, *Def.'s Sanctions Mot.*, as well as all
responses and replies to these two motions.

### A.    The Parties' Positions

#### 1.    Plaintiffs' Motion to Strike (ECF No. 46)

Pursuant to Federal Rule of Civil Procedure 12(f) and the Court's inherent
authority to control its docket, Plaintiffs request the Court strike Mr. Beall's
declaration, a copy of the complaint filed with the BBO, the notice of alleged
misconduct and intent to seek Rule 11 sanctions, the draft of a civil lawsuit, and
timeline of events, docketed as ECF Nos. 38, 39, 40, 42, and 44. *Pls.' Mot. to Strike*
at 1. Plaintiffs note as an initial matter that, since the May 29, 2025 hearing, Mr.
Beall has sent aggressive communications to Plaintiffs' counsel, especially relating
to the right-to-sue letter issued by the EEOC, personal attacks on Plaintiffs'
counsel, and hostile messages representing his intent to cause Plaintiffs' counsel
professional consequences. *Id.* at 1-3.

Beginning with Mr. Beall's declaration, which Plaintiffs point out was filed
"to document the timeline and intent behind Plaintiffs' litigation strategy and to
clarify how their actions have caused serious personal, procedural, and reputational
harm." *Def.'s Decl.* at 1. Plaintiffs request the Court strike this declaration as "not
a pleading, motion, nor a response or reply to a motion," arguing "it serves no
purpose other than to perpetuate baseless accusations against Plaintiffs and their
counsel." *Id.* at 5.

Plaintiffs turn to the BBO complaint, *see BBO Compl.*, which Plaintiffs aver
"has zero connection to resolving the pending issues in this litigation," and thus

60

constitutes "impertinent and scandalous clutter." *Pls.' Mot. to Strike* at 5-6.
Further, Plaintiffs assert the record does not reflect whether the complaint was
filed with the BBO, that they have not received any communication from the BBO,
and that such complaints "are supposed to remain confidential unless and until the
Board's Review Panel refers a case to a disciplinary hearing." *Id.* at 6 (citing Me.
Bar Rules 1(h)(17), 13(d)(3), and 18(a)). Plaintiffs insist Mr. Beall's filing of the
BBO complaint on the docket violates Maine Bar Rules, serves no purpose than
disparaging Plaintiffs' counsel, and should be stricken. *Id.*

Continuing to Mr. Beall's notice of litigation misconduct and intent to seek
Rule 11 sanctions, *see Rule 11 Notice*, Plaintiffs assert Mr. Beall's notice letter is
untethered to any pleading or motion and merely disparages Plaintiffs' counsel.
*Pls.' Mot. to Strike* at 7. Plaintiffs ask the Court to strike this filing as unnecessary
clutter. *Id.*

Plaintiffs next ask the Court to strike the draft of a civil lawsuit, which is
entitled "Draft of Civil Lawsuit (thus far)." *Id.* (citing *Civ. Compl. Draft*). Plaintiffs
point out that the lawsuit names Plaintiffs, Plaintiffs' counsel and their firm, EJP's
owner, and two employees of EJP. *Id.* However, Plaintiffs assert Mr. Beall's intent
is unclear, as he has already asserted similar counterclaims against Plaintiffs, the
case caption is for the United States District Court for the District of
Massachusetts, and it is styled as a draft. *Id.* Plaintiffs ask the Court to strike this
"draft" filing as making disparaging and false accusations for no purpose against
individuals not parties to this litigation. *Id.*

Finally, Plaintiffs ask the Court to strike Mr. Beall's chronology of key events, *see Key Events*, which they claim is untethered to any pleading or motion, contains salacious accusations and reveals private actions taken by EJP against nonparties, and serves no purpose on the docket. *Id.* Plaintiffs conclude by conceding Plaintiffs' filings may not constitute "pleadings" under Rule 12, but asserting the Court should nonetheless strike them from the docket under Rule 12 or its inherent discretion to control its docket. *Id.* at 8.

### 2. Mr. Beall's Response to Motion to Strike (ECF No. 47)

Mr. Beall opposes the motion to strike, asserting the requested relief is unsupported by Rule 12(f) and further alleging the motion to strike is "a blatant attempt to suppress the record, conceal misconduct, and obstruct this Court's ability to view the full scope of facts." *Def.'s Strike Opp'n* at 1. He asserts his filings are not pleadings, are proper filings in support of his motion to vacate, are "directly relevant to Defendant's claims of improper service, procedural suppression, retaliation, and bad faith conduct," are not scandalous, and are "supported by factual evidence, sworn declarations, and agency communications." *Id.* at 1-2. Specifically, he alleges his declaration is directly relevant to his motion to vacate default judgment, his BBO complaint is relevant to his efforts to address misconduct through legal channels, his Rule 11 notice put the Court on notice of Plaintiffs' counsels' alleged bad faith, the draft of a civil lawsuit "show[s] Defendant's intent to pursue a separate federal action stemming from the same core retaliatory acts," and the key events timeline is a "helpful visual aid for the Court." *Id.* at 2. Finally, Mr. Beall reiterates his arguments that Plaintiffs are seeking to

silence him and requests the Court dismiss the motion to strike and "preserve all contested filings on the public record, where they belong." *Id.* at 2-3.

### 3.    Mr. Beall's Emergency[5] Motion for Sanctions (ECF No. 55)

Mr. Beall requests the Court impose sanctions against Plaintiffs' counsel pursuant to Federal Rule of Civil Procedure 11 and its inherent authority to sanction bad faith conduct, alleging that Plaintiffs' motion to strike is an "attempt[] to erase Defendant's legally admissible filings rather than respond in good faith," "lacked substantive rebuttal," and was "designed to chill speech, delay proceedings, and suppress evidentiary material." *Def.'s Sanctions Mot.* at 1.

Mr. Beall emphasizes that he submitted evidence that a false name was used in a prior state criminal complaint, which he asserts contradicts statements made by Plaintiffs' counsel to this Court and to him. *Id.* at 2.  Mr. Beall alleges the criminal complaint misrepresents the identity of EJP CEO Steven Prescott and asserts the use of false information in official proceedings violates Rule 11(b), "which prohibits presenting pleadings for an improper purpose and making false factual contentions."    *Id.*    He alleges Plaintiffs' counsel has endeavored to "overwhelm a pro se litigant with procedural gamesmanship, identity confusion, and retaliatory filings" in bad faith, and that this misconduct has caused him harm in the forms of "loss of access to his child, homelessness, severe emotional distress, and reputational damage." *Id.*    He thus requests the Court impose monetary

---

[5]    As previously noted, the Court issued a line order on June 27, 2025 dismissing the emergency nature of Mr. Beall's motion as unsubstantiated and informing the parties "[t]he Court will address Mr. Beall's motion for sanctions in the ordinary course, not as an emergency." *Order* (ECF No. 56).

sanctions against Plaintiffs' counsel, strike the motion to strike as procedurally improper and retaliatory, and grant any other relief the Court deems just and appropriate. *Id.*

### 4. Plaintiffs' Reply to Motion to Strike (ECF No. 81)

Plaintiffs respond that Mr. Beall continues to disregard "the only issue currently before this Court – whether to vacate the current default against Beall." *Pls.' Strike Reply* at 1. Nowhere in any of the filings requested to be stricken or in his response to the motion to strike, does he explain how these filings support a defense to the claims against him, as would be relevant to vacatur of default as a meritorious defense. *Id.* Plaintiffs aver that since Mr. Beall filed his motion to vacate default judgment on May 29, 2025, he has filed 37 filings on the docket, sent Plaintiffs' counsel nearly 100 emails, and made dozens of defamatory posts on social media, but has nowhere addressed "how his false social media posts in early 2025 were not defamatory; how ***admitting*** to disparaging EJP to its current clients was not interfering with an advantageous economic relationship," or how his conduct against Mr. Van Savage was not IIED. *Id.* at 1-2 (Plaintiffs' emphasis). Plaintiffs aver the Court should strike these filings under Rule 12(f) and under its inherent authority to control its docket, while also submitting that Mr. Beall's conduct warrants sanctions pursuant to 28 U.S.C. § 1927 as unreasonably and vexatiously multiplying the proceedings, a penalty that may be imposed against pro se parties. *Id.* at 1 n.1 (citing *Wages v. IRS*, 915 F.2d 1230, 1235-36 (9th Cir. 1990); *Alphas Co., Inc. v. Dean Tucker Farms Produce, Inc.*, No. 12-10049-MBB, 2013 U.S. Dist. LEXIS 57823, at *15 (D. Mass. Apr. 23, 2013) (citation corrected)). Plaintiffs further

remark in a footnote that, since their filing of the motion to strike, Mr. Beall has filed twenty-seven more documents on the docket, such that "Plaintiffs' Motion is already out of date as more of Beall's filings should be struck." *Id.* at 2 n.4.

Plaintiffs reiterate their claim that Mr. Beall's declaration is irrelevant to the pending motion to vacate, and add that the declaration contains demonstrably false statements, including Mr. Beall's claim that he "discovered the lawsuit only a short time before a schedule hearing [on May 29, 2025]," which Plaintiffs' argue is directly contradicted by Mr. Beall's response "Sounds good, see you guys in court" to being provided the TRO by email on March 5, 2025. *Id.* at 2-3 (citing *Am. Compl.*, Attach. 3., *Ex. 3 – Email to Beall 3/5/2025* (*3/5/2025 Email to Beall*)). Plaintiffs similarly submit the BBO complaint is irrelevant to the motion to vacate default, and further violates the BBO confidentiality rules. *Id.* at 3. Plaintiffs add that, shortly after Plaintiffs submitted their second motion for civil contempt on July 7, 2025, Mr. Beall made denigrating posts on social media against Attorney Silver, evidencing his lack of good faith contrary to his repeated assertions. *Id.* at 3-4.

Plaintiffs next reiterate that the Rule 11 notice provides no purpose because Mr. Beall could have, and has, moved for sanctions without notice, and continue that Mr. Beall does not even attempt to defend placing his draft of a civil lawsuit on this docket. *Id.* at 4-5. Finally, Plaintiffs assert the chronology of key events is unrelated to any motion or pleading and contains demonstrably false statements, including his claims that he received no direct communication or service in March and April of 2025 and that he learned of the entry of default in May 2025, which

Plaintiffs submit is belied by his communications with Plaintiffs' counsel indicating his awareness of the lawsuit, TRO, preliminary injunction, and motion for default judgment. *Id.* at 5. Plaintiffs aver they sent copies of each docket entry to Mr. Beall, which he responded to with profanity and personal attacks. *Id.*

At bottom, Plaintiffs reiterate their request that the Court strike these five filings, and many more since the filing of their original motion to strike, from the docket as immaterial, irrelevant, impertinent, and inappropriate. *Id.* at 6.

### 5.    Mr. Beall's Sur-Reply (ECF No. 82)

In his sur-reply, Mr. Beall opposes Plaintiffs' motion to strike, arguing Rule 12(f) does not authorize striking his filings and requesting the Court dismiss the Plaintiffs' motion.[6]

### 6.    Plaintiffs' Opposition to Mr. Beall's Emergency Motion for Sanctions (ECF No. 98)

Plaintiffs oppose Mr. Beall's request for sanctions, first pointing out that Mr. Beall misstates the dates of the filings the Plaintiffs have moved to strike, and second, reiterating that the filings implicated by their motion to strike "are misplaced and irrelevant to resolving the only outstanding issue – whether to vacate the current default against [Mr.] Beall." *Pls.' Sanctions Opp'n* at 1-2. Plaintiffs submit their motion to strike gives no grounds for sanctions under Rule 11, responding to Mr. Beall's claim that they have submitted a falsified and

---

[6]    As explained at length in the Court's order to show cause, Mr. Beall's sur-reply to the motion to strike is replete with miscitations and factitious quotations. *See Order to Show Cause.* The Court thus declines to recite Mr. Beall's false citations in this order and, instead, resolves Plaintiffs' motion to strike based on the properly made pleadings and on its own understanding of the state of the law on striking filings.

retaliatory criminal complaint by reiterating that Mr. Van Savage reported Mr. Beall's behavior to the Shrewsbury, Massachusetts Police Department, that an employee at that Police Department drafted the incident report which mistakenly refers to EJP CEO Stephen Prescott as "Scott Prescott," and that the incident reports later clarifies this mistake and disclaims its status as a preliminary draft. *Id.* at 2-3. Plaintiffs also point out that Mr. Beall's July 16, 2025 notice admits that the report disclaims it is a draft prepared by a civilian clerk. *Id.* at 3 n.3 (citing *Def.'s Police Rep. Notice*). Plaintiffs submit that none of these facts give rise to sanctionable conduct against Plaintiffs or their counsel and asks the Court to dismiss Mr. Beall's motion for sanctions. *Id.* at 3-4.

### 7. Mr. Beall's Reply to Emergency Motion for Sanctions (ECF No. 101)

Mr. Beall contends the Plaintiffs' opposition is designed to distract, pointing out that the key issue is that "a police report was filed by Plaintiff Van Savage, citing Defendant by name, based on workplace-related conflict, during the pendency of this litigation. That report, prepared on March 3, 2025, plainly states that Mr. Van Savage filed it at the direction of Littler Mendelson." *Def.'s Sanctions Reply* at 1. Mr. Beall emphasizes again that Plaintiffs' counsel had denied any connection to the police report or knowledge of "Scott Prescott," which "speaks to a larger issue of misrepresentation." *Id.* Mr. Beall further submits he has not communicated with Mr. Van Savage since March of 2025, undermining Plaintiffs' allegations of ongoing harassment or misconduct, and that his July 16, 2025 notice did not admit to any intent to deceive the Court. *Id.* at 1-2. He reiterates the purpose of his motion is "to

shine light on serious contradictions" between the incident report and statements
by Plaintiffs' counsel, and submits these issues "raise Rule 11 concerns about
candor to the tribunal and abuse of process." *Id.* at 2. Mr. Beall requests the Court
"recognize a pattern of misrepresentation and manipulation of narrative" and grant
his motion for sanctions. *Id.* at 2-3.

### 8.    Mr. Beall's Reply to Plaintiffs' Opposition to Emergency Motion for Sanctions (ECF No. 104)[7]

Mr. Beall submits Plaintiffs' opposition to his motion for sanctions "continues
a pattern of misrepresentation and evasion," reiterating his claims that Plaintiffs
have removed timestamps from Facebook posts to mischaracterize his posts, that he
ceased communications with Mr. Van Savage after being made aware of the
restraining order, that Plaintiffs' counsel stated they were unaware of the police
report despite recommending Mr. Van Savage file it with the Shrewsbury,
Massachusetts Police Department, that Plaintiffs did in fact move to strike his
filings even if on dates other than those Mr. Beall previously presented, that he has
appeared in this case pro se, and that all of the aforementioned evidence establishes
"a sustained campaign to distort the record, retaliate against a pro se litigant with
limited resources, and manipulate this Court by omitting context, cropping exhibits,

---

[7]    Mr. Beall submits this filing as a reply to Plaintiffs' opposition to his emergency motion for
sanctions, despite filing a reply in support of his motion at ECF No. 101. *Compare Def.'s Sanctions
Second Reply with Def.'s Sanctions Reply.* A second reply is not permitted under the Federal Rules
of Civil Procedure or the District of Maine Local Rules. In light of Mr. Beall's pro se status, and
because it does not change the Court's analysis or conclusion, the Court recites the contents of his
second reply here. However, the Court puts Mr. Beall on notice that he is authorized only one reply
to each motion and, should he do so again in the future, the Court will not consider his second reply
without granting a motion to allow him to make such a filing.

and contradicting prior sworn statements." *Def.'s Sanctions Second Reply* at 1-2. At bottom, Mr. Beall reiterates that the Court should accept his motion as properly filed and grant its request for sanctions. *Id.* at 2.

### B.    Legal Standard

Rule 12(f) of the Federal Rules of Civil Procedure provides:

> **(f) Motion to Strike.**    The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act:
>
> (1) on its own motion; or
>
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

FED. R. CIV. P. 12(f).  In this context, "redundant" means "needless repetition of other averments." *Zurich Am. Ins. Co. v. Watts Regulator Co.*, 796 F. Supp. 2d 240, 246 (D. Mass. 2011).  "Immaterial" has been interpreted by the courts of this District to mean a matter that "has no essential or important relationship to the claim for relief or the defenses being pleaded." *McGlauflin v. RCC Atl. Inc.*, 269 F.R.D. 56, 58 (D. Me. 2010) (quoting 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1381 (3d ed. 2004) (WRIGHT & MILLER)).  "Impertinent" refers to matters that "consist[] of statements that do not pertain, and are not necessary, to the issues in question." *Burnett v. Ocean Props. Ltd.,* No. 2:16-cv-00359-JAW, 2017 U.S. Dist. LEXIS 55059, at *17 (D. Me. Apr. 11, 2017) (citing *Ashey v. Lily Transp. Corp.*, No. 01-57-B-S, 2001 U.S. Dist. LEXIS 8350, at *2 (D. Me. June 18, 2001) (in turn quoting WRIGHT & MILLER § 1382)).

69

Finally, "scandalous" means a matter that "improperly casts a derogatory light on someone." *Gauthier v. United States*, Civil Action No. 4:10-40116-FDS, 2011 U.S. Dist. LEXIS 99246, at *32-33 (D. Mass. Sep. 2, 2011) (citation omitted).

In the First Circuit, "[a] court has considerable discretion in striking 'any redundant, immaterial, impertinent or scandalous matter.'" *Alvarado-Morales v. Dig. Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988) (quoting FED. R. CIV. P. 12(f)).

Further, with regard to non-pleadings, "[i]t is axiomatic that a federal court has the inherent power to manage the litigation before it 'to achieve the orderly and expeditious disposition of cases.'" *In Spite Telecom LLC v. Rosciti Constr. Co. LLC*, 747 F. Supp. 3d 270, 285 (D. Mass. 2024) (quoting *In re Pet. for Order Directing Release of Recs.*, 27 F.4th 84, 89 (1st Cir. 2022)).

## C.    Discussion

The Court first notes that, as Mr. Beall argues and the Plaintiffs concede, Rule 12(f) applies explicitly to "pleadings," which Federal Rule of Civil Procedure 7(a) defines as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." FED. R. CIV. P. 7(a). District of Maine caselaw has long recognized that Rule 12(f) does not apply to filings other than those included in this enumerated list. *See, e.g.*, *Stow v. Peterson*, 204 F. Supp. 2d 40, 42 n.2 (D. Me. 2002) ("Rule 12(f) applies only to pleadings . . .. Neither the statement in the Grimes Affidavit nor the information from the NEFCO report was made in a pleading. Consequently, Rule 12(f) is inapplicable and Plaintiff[s'] Motion to Strike

70

will be denied") (internal citations omitted). Here, it is beyond dispute that the documents the Plaintiffs move to strike do not constitute pleadings within the relevant meaning of Rules 7(a) and 12(f).

The Court agrees that it has the inherent authority to strike filings pursuant to its power to manage its own docket. *See, e.g.*, *In Spite Telecom LLC*, 747 F. Supp. 3d at 285. However, it strikes the Court that doing so is an extreme remedy not warranted in this case, at least not at this stage, for several reasons. First, despite Plaintiffs' objections to the contrary, the contested filings do contain tangential relevance to Mr. Beall's counterclaims, if not also the Plaintiffs' claims against Mr. Beall. Mr. Beall has alleged retaliation, employment discrimination, and abusive prosecution against Plaintiffs and their counsel, the same subjects discussed by his declaration, *Def.'s Decl.*, the BBO complaint, *BBO Compl.*, his Rule 11 notice, *Rule 11 Notice*, and his draft of a civil lawsuit. *Civ. Compl. Draft.*

Second, Plaintiffs complain of these filings' redundancy but do not acknowledge that this purported redundancy undermines their assertion that these documents should be stricken for containing "disparaging and false accusations," as Mr. Beall's factual allegations against Plaintiffs are contained in other filings in this case which Plaintiffs have not requested be stricken. As such, striking the requested filings does not address the Plaintiffs' allegations of prejudice.

Third, Plaintiffs assert striking such filings is warranted because they serve no purpose other than cluttering the docket. *Pls.' Mot. to Strike* at 7. As a practical matter, the Court notes that, even if the motion to strike is granted, the case docket

will still reflect their existence and will merely include a notation that the filing was subsequently stricken, such that granting the motion would have little effect on the docket's organization.  Further, as the Court has already reviewed the filings for the purpose of evaluating the Plaintiffs' motion, striking the implicated filings at this stage would do nothing to serve the purposes of judicial economy.

Although the Court concludes Plaintiffs have not established their entitlement to the extreme remedy of striking these documents, the Court also observes that their motion comes nowhere near the standard for the Rule 11 sanctions requested by Mr. Beall.  *See Def.'s Sanctions Mot.*  Rule 11 authorizes the imposition of sanctions on parties who, inter alia, submit filings in court "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  FED. R. CIV. P. 11(b)(1).  Plaintiffs' motion to strike does none of the foregoing, and in fact seeks to streamline this litigation by narrowing the issues and filings.  Despite the Court's conclusion that their motion to strike is unavailing at this time, Plaintiffs' motion is neither retaliatory nor suppressive as Mr. Beall claims, and thus does not warrant the imposition of sanctions.

Finally, as the Court explains in greater detail later in the following section, Mr. Beall's litigation strategy deviates significantly from the typical manner of proceeding in federal court and his penchant for filing documents at a nearly daily rate, many untethered to any pending motion and merely seek to "preserve the record" or "inform the Court" of information he thinks important, does not aid in the

Court's attempts to resolve this matter on a timely basis. The Court emphasizes that, while it dismisses the Plaintiffs' motion to strike, it does so without prejudice and may ultimately determine it is necessary to revisit the issue should Mr. Beall continue to inundate the Court with an overwhelming volume of informative filings presenting the same arguments and information.

## VIII. PLAINTIFFS' MOTIONS FOR *COK* ORDER

### A.    The Parties' Positions

In this section, the Court address Plaintiffs' motion for a *Cok* order against Mr. Beall. *See Pls.' Cok Mot.* The Court recognizes that the Plaintiffs' motion for sanctions for use of fictitious cases, as well as its order to show cause and Mr. Beall's response, implicate similar concerns; however, as the Court contemporaneously issues a separate order specifically addressing the motion for sanctions for fictitious case citations and its order to show cause, it does not address the merits of those filings here.

### 1.    Plaintiffs' Motion for *Cok* Order (ECF No. 36)

Plaintiffs move the Court to issue an order pursuant to *Cok v. Family Court of Rhode Island*, 985 F.2d 32 (1st Cir. 1993), restricting Mr. Beall's ability to communicate with Plaintiffs' counsel without the Court's permission. *Pls.'* Cok *Mot.* at 1. Plaintiffs first inform the Court that Mr. Beall posted on Facebook shortly after the May 29, 2025 hearing to state "Damn, it feels good to be a gangsta #TeamTJB," which they interpret as mocking EJP's trademarked slogan, "Team EJP." *Id.* They also inform the Court that Mr. Beall had shared derogatory and aggressive emails with Plaintiffs' counsel after the hearing on May 29, 2025, *id.* at

1-2 (citing *id.*, Attach. 1, *Beall Emails*), and a further twenty-four emails in the three days following the hearing containing "further unfounded accusations of misconduct, threats to file for Rule 11 sanctions, threats to file a civil lawsuit against Plaintiffs and their counsels and employees, emails impugning counsel and their firm's character, and various other forms of harassment." *Id.* at 2 (citing *Beall Emails*). These emails included personal insults against Plaintiffs' counsel, threats of legal action against Plaintiffs' employees and counsel, and drafts of various civil and administrative complaints to be filed in other forums. *Id.* at 2-3. Mr. Beall also commented on the LinkedIn posts of Plaintiffs' counsel Attorney Silver, though the posts have since been deleted and Attorney Silver has blocked Mr. Beall from seeing or viewing his posts. *Id.* at 3.

Plaintiffs aver Mr. Beall's pattern of conduct, despite the Court's admonition at the May 29, 2025 hearing "to resist the temptation to get angry with [Plaintiffs' counsel] on e-mail," *Tr. of Proceedings* at 12:22-23, warrants "an order that (1) restricts Beall to only communicating with Plaintiffs' counsel via the ECF system; and (2) requires the Court's pre-approval of any filings is necessary here." *Id.* at 4. Plaintiffs aver that courts are authorized to impose a wide array of sanctions against inappropriate and vexatious litigants in extreme circumstances, and that this case justifies the use of such sanctions. *Id.* at 4-5 (collecting federal caselaw on the court's authority to restrict litigants for frivolous and repetitive filings). Plaintiffs state, under First Circuit directive, "district courts are free to set whatever restrictions they believe are appropriate given the misconduct by a party"

74

*id.* at 5 (citing *Cok*, 985 F.2d at 36), and collects cases of such restrictions being
imposed in the District of Maine to request the Court to "require[] [Mr. Beall] to
obtain permission before making any additional filings." *Id.* at 5-6. (collecting D.
Me. caselaw imposing *Cok* filing restrictions against abusive and vexatious
litigants).

Plaintiffs insist that a *Cok* restriction limiting Mr. Beall's filings and
communications with Plaintiffs' counsel would not cause unfair prejudice, as Mr.
Beall "c[ould] still file motions and other pleadings; and he can still send necessary
and appropriate communications to Plaintiffs' counsel." *Id.* at 6. However,
Plaintiffs say, requiring use of the ECF system and leave of Court would serve
judicial economy by permitting the Court and Plaintiffs' counsel to "not be bogged
down by Beall's vexatious and incessant harassment." *Id.* Plaintiffs thus "request
this Court's immediate help in stopping Beall's barrage of harassing emails to their
counsel and the promised slew of frivolous filings." *Id.*

> **B.    Legal Standard**

In 1993, the Court of Appeals for the First Circuit addressed the authority of
a federal court to impose filing restrictions on litigants. *See Cok*, 985 F.2d at 34.
The *Cok* Court observed that federal courts "possess discretionary powers to
regulate the conduct of abusive litigants." *Id.*; *accord United States v. Gomez-
Rosario*, 418 F.3d 90, 101 (1st Cir. 2005). Before imposing filing restrictions, a court
must notify the litigants that "filing restrictions may be in the offing." *Cok*, 985
F.2d at 35. Noting that injunctions restricting court access across the board in all
cases are very much "the exception to the general rule of free access to the courts,"

*id.* (quoting *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980)), the First Circuit has written that a court should consider such injunctions "only when abuse is so continuous and widespread as to suggest no reasonable alternative." *Id.*at 36. Furthermore, any court order restricting filings must be "narrowly drawn to counter the specific offending conduct." *Elliott v. Segal*, No. 19-2163, 2021 U.S. App. LEXIS 15996, at *1 (1st Cir. Jan. 26, 2021) (quoting *Cok*, 985 F.2d at 36).

## C.    Discussion

Plaintiffs' motion requests "an order that (1) restricts Beall to only communicating with Plaintiffs' counsel via the ECF system; and (2) requires the Court's pre-approval of any filings." *Pls.'* Cok *Mot.* at 4. The Court considers each requested sanction in turn.

Beginning with the requested restriction on communications with Plaintiffs' counsel, the Court declines to issue the *Cok* restriction requested by the Plaintiffs. Plaintiffs collect robust caselaw supporting the Court's authority to restrict abusive and vexatious litigants from submitting frivolous and repetitive filings in court, *id.,* at 5-6; however, none of these cited cases, from the District of Maine, First Circuit, or elsewhere, supports the proposition that the Court may or, indeed, should, prohibit a litigant from communicating with opposing counsel without the Court's approval. While the Plaintiffs do not acknowledge the distinction between official filings and out-of-court communications between parties, this difference is substantial. To the Court's knowledge, *Cok v. Family Court of Rhode Island*, 985 F.2d 32, has never been used in this Circuit to restrict a litigant from

76

communicating with opposing counsel outside of court or court platforms, and the Court concludes it is an improper avenue for such a restriction in this case.

Further, the Court sees significant practical issues with such a restriction, as Mr. Beall is a pro se party who must be able to communicate with opposing counsel for this case to reach fruition. At the same time, all such communications must be professional and devoid of any abusive, threatening, or insulting language. Further, Plaintiffs' counsel appears in this case on behalf of their clients—EJP and Mr. Van Savage—and they are not obligated to answer Mr. Beall's questions nor to engage with any of his communications other than with the purpose of representing the interests of their clients.

Relatedly, Mr. Beall requests the Court clarify whether Plaintiffs' counsel is obligated to send him a copy of each of their filings by email, as they had done in the beginning of this case. *Def.'s Sanctions Opp'n* at 3. As the Court understands it, Mr. Beall is now a registered ECF filer receiving automated updates of all such filings and he does not allege that he has failed to receive any. Plaintiffs' counsel are not obligated to duplicate these efforts by sending Mr. Beall copies of their filings, even if they may have done so out of courtesy at other times in this case; Federal Rule of Civil Procedure 5, governing service, provides that, for papers filed after the complaint, "[n]o certificate of service is required when a paper is served by filing it with the court's electronic-filing system." FED. R. CIV. P. 5(d)(1)(B).

Turning to the second requested sanction, the Plaintiffs ask the Court to only permit Mr. Beall to make filings on the docket with the Court's prior permission.

*Pls.'* Cok *Mot.* at 4.  Unlike the restriction on out-of-court communications discussed above, this type of restriction is specifically contemplated by *Cok* and its progeny and is the restriction most applicable to Mr. Beall's conduct in this case.  As previewed above, in the six weeks since the default judgment hearing, Mr. Beall has filed documents with the Court at a rate of nearly one-per-day.  Mr. Beall himself seems to recognize the problem his approach to this case has posed, as his filing in response to the show cause order states his intent to "slow down [his] filings and focus only on what matters most." *Def.'s Show Cause Resp.* at 3.

The Court appreciates Mr. Beall's self-reflection but concludes judicial intervention is warranted to stem the unrelenting tide of submissions.  The Court takes substantial time to carefully review each of the filings submitted to it.  On review of Mr. Beall's numerous filings, it is apparent that his filings, however packaged, recite much of the same information and allegations ad nauseum.  His approach belies a fundamental misunderstanding of the legal system.  Many of his filings are submitted, for example, in his own words, "for the limited purpose of preserving relevant information," *Def.'s Ongoing Notice* at 1, or "to preserve a record of concerns." *Def.'s Commc'n Notice.*  The Court's record is not a digital storage device, nor is the Court itself intended or authorized to make snap-judgments based on incomplete or one-sided information.  Rather, the legal system is designed to proceed in several discrete stages (i.e., pleadings, discovery, trial, appeal).  The parties may bring dispositive motions, such as a motion to dismiss or motion for summary judgment, at the times designated by the Federal Rules of Civil Procedure

and can bring motions on discrete legal issues as authorized by the same.  For each
motion, each party has a designated amount of time to respond and reply,
respectively.

This orderly process protects not only the parties' rights to due process and to
be heard, but also the Court's ability to decide motions on a clear and intelligible
record.  Mr. Beall's approach of inundating the Court with near-daily filings—some
merely informative, others intended to supplement earlier filings, and still others
substantive motions for relief—has turned this case's docket into a Gordian knot of
interrelated arguments, interwoven claims, and overlapping deadlines that the
Court cannot unravel without great difficulty and time.  The Court issues this order
not only to cut through the knotted docket but also to take proactive measures to
prevent this proceeding from becoming ensnared in the future in a tangle of docket
entries.

The Court reminds Mr. Beall that it is a forum not just for his case but for
important criminal cases and meritorious civil claims.  The Court expressly cautions
Mr. Beall that the time spent on duplicative and non-essential filings takes away
from the Court's time to rule other important matters, including those within this
case.  Further, Mr. Beall's near-daily filings have placed a substantial burden on
the Court Clerk, who for each of his filings is tasked with managing intake, setting
up the filing on the ECF docket, and monitoring the deadlines of any motion for
relief.  First Circuit caselaw is clear that, pursuant to *Cok*, a court may restrict
litigants, even pro se, for "frivolous filings [that] waste judicial resources and inhibit

the resolution of substantial matters within the Court's jurisdiction." *Est. of Buenaventura v. Exec. Office of the President*, No. 2:23-cv-00325-JDL, 2024 U.S. Dist. LEXIS 2431, at *5 (D. Me. Jan. 5, 2024) (citing *Adams v. Adams*, No. 1:17-cv-00200-GZS, 2019 U.S. Dist. LEXIS 110251, at *1-2 (D. Me. July 2, 2019)).  Mr. Beall's multitude of filings have done exactly that.  Consistent with *Cok* and its requirement to warn litigants of potential filing restrictions, the Court expressly warns Mr. Beall that "filing restrictions may be in the offing."  *Cok*, 985 F.2d at 35.

Specifically, the Court is considering imposing a filing restriction against Mr. Beall that will require him to file a motion for leave to make filings in the court. Before any future filing, the Court is contemplating requiring Mr. Beall to certify in each motion for leave to file that the proffered filing is 1) authorized by the Federal Rules of Civil Procedure, 2) directly relevant to a motion presently pending before the Court, and 3) not entirely duplicative of information already presented to the Court.  If the Court imposes a *Cok* filing restriction on Mr. Beall, it will review the submitted filing to determine whether the filing is authorized by the federal rules, serves a purpose on the docket beyond reiterating previously stated information, and is not intemperate and derogatory.  If so, the Court would grant the motion for leave to file and the filing would be docketed.  If the filing does not comply with the federal rules or serves no purpose on the docket, the Court would not allow its docketing.

The Court further remarks that, while this official *Cok* warning is issued only to Mr. Beall at this time, the Court's word of caution regarding redundant,

80

intertwined, and extremely frequent filings does not apply exclusively to Mr. Beall and that Plaintiffs' counsel would also do well to limit their filings to motions permitted under the federal rules and addressing specific legal issues for discrete resolution.

## IX. PLAINTIFFS' MOTIONS FOR CIVIL CONTEMPT AGAINST MR. BEALL

In this section, the Court address Plaintiffs' motions to hold Mr. Beall in civil contempt, *Pls.' First Contempt Mot.*; *Pls.' Second Contempt Mot.*, as well as the opposition, reply and supplemental response to these motions.

### A.    The Parties' Positions

#### 1.    Plaintiffs' First Motion for Civil Contempt (ECF No. 28)

Plaintiffs move the Court to hold Mr. Beall in civil contempt for violating the terms of the preliminary injunction, emphasizing that Mr. Beall was preliminarily enjoined from communicating with Mr. Van Savage through "any means" on March 27, 2025 and that the Defendant nonetheless emailed Mr. Van Savage directly on April 28, 2025 to insult him with personal attacks and homophobic slurs and threaten him with legal and professional consequences. *Pls.' First Contempt Mot.* at 1.

Plaintiffs first summarize the events that led to the Court's issuance of the preliminary injunction, reporting that, on the day it was issued, "Plaintiffs' counsel sent [Mr.] Beall a copy of the Court's opinion and order via email and first-class mail to all of [Mr.] Beall's known addresses." *Id.* at 2.  Plaintiffs explain that Mr. Beall next sent multiple aggressive emails to Plaintiffs' counsel on April 24, 26, and

28, 2025 and threatening messages on LinkedIn to Kristen Pfefer, an EJP Human
Resources Specialist, on April 26, 2025, before emailing Mr. Van Savage directly on
April 28, 2025 to insult him with profane and homophobic slurs and threaten him
that Mr. Beall was "gonna absolutely fuck you up in court you little rat fuck." *Id.* at
2-5 (citing *id.*, Attach 1, *4/28/2025 Beall Email to Van Savage*).  Mr. Beall then
sent Tamara Casoria, EJP's Marketing Director, direct messages on Facebook with
additional threats and derogatory comments.  *Id.* at 6.

Plaintiffs request the Court impose sanctions to compel Mr. Beall to comply
with the terms of its order and stop harassing Mr. Van Savage, EJP employees, and
EJP's counsel.  *Id.*  They assert the communications with Mr. Van Savage facially
violated the terms of the preliminary injunction, as Mr. Beall had notice of the
injunction, its terms were clear and unambiguous, Mr. Beall had the ability to
comply, and Mr. Beall actually violated the Court's order that he not communicate
with Mr. Van Savage through any means.  *Id.* at 8.

As relief, Plaintiffs request the Court sanction Mr. Beall with monetary
sanctions to coerce Mr. Beall's compliance and compensate Mr. Van Savage for his
additional emotional distress suffered as a result of Mr. Beall's noncompliance.  *Id.*
at 9-10.  Specifically, Plaintiffs request "the imposition of a $5,000 sanction plus a
$100 daily fine until [Mr.] Beall certifies (either in writing or in person) to this
Court that he will comply with the Preliminary Injunction."  *Id.* at 10.  Plaintiffs
also request reasonable costs and attorney's fees incurred in bringing their
contempt motion.  *Id.*

### 2. Plaintiffs' Second Motion for Civil Contempt (ECF No. 75)

Plaintiffs moved again for the Court to hold Mr. Beall in civil contempt, informing the Court of "numerous defamatory public social media posts about Plaintiffs over the July 4th weekend." *Pls.' Second Contempt Mot.* at 1. Plaintiffs recall that the Court preliminarily enjoined Mr. Beall from "[p]osting any defamatory content on public social media sites about either of the Plaintiffs" and that the Court verbally read the terms of the preliminary injunction to Mr. Beall at the May 29, 2025 hearing, to which Mr. Beall confirmed his understanding and promised he would comply. *Id.*

However, Plaintiffs say, Mr. Beall posted on Facebook on July 2, 2025, claiming EJP sued him for "literally no reason other than to try and ruin [his] life" and, in a separate post that same day, posted a cartoon image of himself, depicted as an alligator, communicating with this presiding Judge, who is depicted as a lion apparently drinking alcohol. *Id.* at 1-2. Next, on July 3, 2025, Mr. Beall again posted on Facebook, plainly derogating Plaintiffs' counsel Attorney Silver, though he does not use Attorney Silver's name directly. *Id.* at 3. Also on July 3, 2025, Mr. Beall made another Facebook post to accuse EJP of retaliation, allege EJP's CEO falsified a police report, and claim EJP's CEO is "staring down serious prison time." *Id.* at 3. Plaintiffs submit these public posts harm EJP's business and reputation, and that they directly violated the terms of the Court's preliminary injunction as defamatory statements against EJP. *Id.* at 3-4. Plaintiffs aver Mr. Beall's statements are based on a draft police report from the Shrewsbury, Massachusetts Police Department that mistakenly lists EJP's CEO as "Scott Prescott" instead of

"Steve Prescott," *see Incident Rep.*, but that he did not use a fake name in the police report nor is he facing prison time. *Id.*

Next, also on July 3, 2025, Plaintiffs report Mr. Beall posted another cartoon image of himself depicted as an alligator, this one "defecating EJP's trademarked water drop logo." *Id.* at 4-5. That same day, they report the Defendant publicly posted about Mr. Prescott again, writing "BOLO Scott Prescott DOJ is looking for you to answer a few questions bud." *Id.* at 6. Plaintiffs say Mr. Beall also made another public post against Mr. Prescott, without mentioning him by name, to insult him, accuse him of fraud, and suggest he is facing prison. *Id.* Plaintiffs aver all these posts were made on Mr. Beall's public Facebook page, which has 994 followers. *Id.*

Plaintiffs submit this recent conduct warrants sanctions for violation of the preliminary injunction. *Id.* at 7-8. Despite Mr. Beall representing his understanding and intent to comply with the preliminary injunction orally to this Court during the May 29, 2025 hearing, Plaintiffs say, he has falsely accused EJP's CEO of a crime in direct violation of its terms. *Id.* at 8. Plaintiffs continue that, though Mr. Beall has claimed he has no assets or resources, "he is actively hiring employees for one of his companies and is giving away a $300 prize for a contest related to that business. *Id.* at 9. Plaintiffs submit his ability to hire an employee and give away gift cards, plus his "ownership interests in a pickup truck and a house," evidence Mr. Beall has sufficient resources to pay any monetary sanctions the Court deems appropriate. *Id.*

84

### 3. Mr. Beall's Opposition to Motion for Civil Contempt (ECF No. 78)

Mr. Beall opposes being held in contempt, submitting he has not violated the Court's order because "[n]one of Defendant's posts referenced Everett J. Prescott, Inc. by name, nor did they disclose confidential or prejudicial information." *Def.'s Contempt Opp'n* at 1. He continues that "Plaintiffs also cite Defendant's Facebook profile tagline, 'riding with a full clip,' as evidence of contempt," but responds that this tagline has been on his profile for years and is a lyric from a popular song, not a threat directed at Plaintiffs. *Id.*

Mr. Beall next argues that his "social media posts reflect lawful, protected speech, consisting of personal opinion, rhetorical commentary, and satire," and as such do not constitute harassment, threats, or an attempt to influence these proceedings. *Id.* at 2. Further, he alleges Plaintiffs' motion serves to effectuate their improper purpose of silencing the Defendant, distracting the Court from their own misconduct, and misleading the Court into punishing him for lawful behavior. *Id.* Mr. Beall submits he has acted in good faith throughout the pendency of this litigation by providing Plaintiffs' counsel with facts, offering settlement, and seeking to engage with Plaintiffs' counsel. *Id.* He emphasizes that this Court, at the May 29, 2025 hearing, instructed Plaintiffs' counsel to communicate with the Defendant, but submits Plaintiffs' counsel has failed or declined to do so. *Id.*

At bottom, Mr. Beall asks the Court to deny the Plaintiffs' motion for contempt, clarify the scope of restrictions on his speech, and "[c]onsider Plaintiffs'

ongoing misuse of motions practice and misrepresentation of facts in assessing their conduct." *Id.* at 3.

> ### 4. Plaintiffs' Reply to Second Motion for Civil Contempt (ECF No. 92)[8]

Plaintiffs insist Mr. Beall continues to violate the terms of the preliminary injunction, noting that Mr. Beall posted on Facebook on Jul 7, 2025 in response to the Plaintiffs' second civil contempt motion to denigrate Attorney Silver, depicting his name as "S****r." *Pls.' Second Contempt Mot. Reply* at 1. He then made an additional Facebook post on July 13, 2025, since deleted, accusing Plaintiffs of submitting a false police report and "push[ing] a default without [him] being properly served." *Id.* at 2-3. Plaintiffs reiterate their positions that service was properly made prior to default being entered and that any errors in the Shrewsbury, Massachusetts incident report are purely typographical and the result of the drafting by a Shrewsbury, Massachusetts police department employee, rather than any intentional misrepresentation by Plaintiffs. *Id.* at 3-4. Plaintiffs submit the preliminary injunction extends to all defamatory public posts about EJP or Mr. Van

---

[8]      Here, the convoluted procedural history of this case leaves the Court nonplussed as to the particular nature of this filing because Mr. Beall technically responded only to Plaintiffs' first motion for civil contempt, not the second. *See Def.'s Contempt Opp'n.* Under the District of Maine Local Rule 7(c), a reply is permitted "[n]o later than 14 days of the filing of any objection or response to a motion." D. ME. LOC. R. 7(c). Here, no such response to the Plaintiffs' second contempt motion was technically filed. However, the Court recognizes that Mr. Beall's response to the first motion to civil contempt, filed after Plaintiffs submitted their second motion, addressed arguments made in the Plaintiffs' second motion for civil contempt. *Id.* Mr. Beall titles his filing as a supplemental response to Plaintiffs' reply in support of their second motion for civil contempt. *Def.'s Suppl. Resp. to Pls.' Reply in Support of Second Mot. for Civil Contempt (ECF 92)* (ECF No. 93). The Court thus accepts the Plaintiffs' reply brief in support of its second motion for civil contempt.

Savage, even without including their specific names, and that Mr. Beall's public posts undeniably do so. *Id.* at 4-5.

Plaintiffs also respond to Mr. Beall's arguments in his response, explaining that in no filing have they claimed Mr. Beall's Facebook tagline "riding with a full clip" constitutes a basis for holding in contempt, *id.* at 5-6, and further that his Facebook postings present assertions of fact, despite his unsupported attempts to characterize them as "personal opinion, rhetorical commentary, and satire." *Id.* at 6 (quoting *Def.'s Contempt Opp'n* at 2). Arguing Mr. Beall's actions belie his claims that he has acted in good faith, Plaintiffs ask the Court to impose sanctions. *Id.* at 7.

### 5.    Mr. Beall's Supplemental Response to Second Motion for Civil Contempt (ECF No. 93)[9]

Mr. Beall asserts neither of the Facebook posts described in the Plaintiffs' reply was in defiance of the Court's preliminary injunction or order to show cause, asserting the posts "reflected my mental state at the time—exhausted, overwhelmed, and desperate to explain what was happening in my life." *Def.'s Second Contempt Mot. Suppl. Resp.* at 1. He adds that he did not delete the July 13, 2025 post because it was defamatory but, rather, "to avoid further escalation, confusion, or unintended perception." *Id.* He also asserts the Plaintiffs' have

---

[9]    As explained in the preceding footnote, the procedural propriety of this filing is called into question by the Defendant's failure to file a response to the Plaintiffs' second civil contempt motion prior to the Plaintiffs' submission of a reply. A post-reply filing, often called a sur-reply, is not permitted without the Court's permission. However, the Court notes that, first, Mr. Beall's supplemental response was filed within the twenty-one days after the motion was filed authorized by Local Rule 7(b), D. ME. LOC. R. 7(c), and second, that consideration of his response is equitable in light of its consideration of Plaintiffs' reply, as explained in the preceding footnote.

eliminated the timestamps of his Facebook posts, which would have made "clear that [he] was not attempting to attack or provoke anyone during or after [his Show Cause Order] Response filing." *Id.* at 2. He argues his social media posts have not identified either Plaintiff by name since the Court's preliminary injunction and reasserts that he is pro se and going through difficult personal circumstances.

###    B.    Legal Standard

Federal courts have authority to impose civil contempt sanctions "to coerce compliance with a court order or to compensate a party harmed by non-compliance." *United States v. Puerto Rico*, 642 F.3d 103, 108 (1st Cir. 2011). Due to the "contempt power's virility and damage potential," federal courts use a four-pronged test to cabin judicial discretion and ensure that judges exercise their contempt powers judiciously. *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005) (quoting *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991)). A complaining party must prove civil contempt by clear and convincing evidence. *Project B.A.S.I.C.*, 947 F.2d at 16.

Civil contempt has four elements. *Saccoccia*, 433 F.3d at 27. First, the evidence must show "that the alleged contemnor had notice that he was 'within the order's ambit.'" *Id.* (quoting *Project B.A.S.I.C.*, 947 F.2d at 17). Second, the court's order must have been "clear and unambiguous." *Id.* (quoting *AccuSoft Corp. v. Palo*, 237 F.3d 31, 47 (1st Cir. 2001)). Third, the alleged contemnor must have "had the ability to comply" with the order the contemnor is alleged to have violated. *Id.* (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). Fourth, the alleged

88

contemnor must have actually violated the court order. *Id.* (citing *Project B.A.S.I.C.*, 433 F.2d at 27).

"Since the civil contemnor may absolve [him]self of the sanction by complying with the contempt order, civil contempt sanctions may be imposed with merely notice and an opportunity to be heard." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 426 (1st Cir. 2015) (citing *United States v. Winter*, 70 F.3d 655, 661 (1st Cir. 1995)). When there is no dispute of material fact and the contemnor does not request a hearing, a court may resolve contempt allegations "on the papers" "[if] given the nature and circumstances of the case, . . . the parties ha[d] a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's submissions[.]" *Morales-Feliciano v. Parole Bd. of P.R.*, 887 F.2d 1, 6 (1st Cir. 1989) (extending *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 894 (1st Cir. 1988) to civil contempt proceedings) (alteration in *Morales-Feliciano*).

### C.    Discussion

In light of Mr. Beall's pro se status and assertions that he was unaware of the scope of the preliminary injunction prior to the May 29, 2025 default judgment hearing, the Court will, in its discretion, exercise leniency for his past conduct that may have violated the terms of the preliminary injunction by declining to hold him in civil contempt at this time.

First, the primary subject of the first contempt motion—Mr. Beall's April 28, 2025 email to Mr. Van Savage, *see 4/28/2025 Beall Email to Van Savage*—plainly contravenes the Court's directive in its March 27, 2025 preliminary injunction prohibiting Mr. Beall from "[c]ommunicating with Plaintiff Van Savage through any

means." *Prelim. Inj.* at 2.  Plaintiffs insist they provided Mr. Beall with a copy of
the preliminary injunction that same day.  *Pls.' First Contempt Mot.* at 2.  However,
at the May 29, 2025 default judgment hearing, Mr. Beall expressed some degree of
confusion as to whether it had been received.  *Tr. of Proceedings* at 13:2-7 ("THE
COURT: The other thing is, I've issued an injunction.  You've gotten that injunction.
You know what it is.  I know you do.  MR. BEALL: Yeah, I'm sure I do.  Like I said,
I got bombarded with filings and e-mails.  So I – I'm not a lawyer, so it took me a
while to go through everything").  To be held in civil contempt, the Court must be
sure, based on the evidence, "that the alleged contemnor had notice that he was
'within the order's ambit.'" *Saccoccia*, 433 F.3d at 27 (quoting *Project B.A.S.I.C.*, 947
F.2d at 17).  Based on Mr. Beall's representations and the liberal standard afforded
to pro se litigants, the Court cannot be sure that he had notice of the scope of the
preliminary injunction at the time he sent Mr. Van Savage the offensive emails on
April 28, 2025.

However, at the default judgment hearing, the Court expressly reviewed the
contents of the preliminary injunction orally in court, and Mr. Beall promised he
would comply.  *Id.* at 14:3-5 (after reviewing the terms of the preliminary
injunction, "THE COURT: Okay. So do I have your promise that you'll obey the
injunction?  MR. BEALL: Yes, Your Honor").  To the Court's knowledge, Mr. Beall
has not attempted to communicate with Mr. Van Savage since expressly
acknowledging the scope of the preliminary injunction.  Because Mr. Beall's
violative communication with Mr. Van Savage occurred before the Court discussed

the scope of the injunction with him at the May 29, 2025 hearing, and because he has apparently since complied with this restriction, the Court declines to hold Mr. Beall in civil contempt for his April 28, 2025 email to Mr. Van Savage.

Turning to the second motion for civil contempt, Plaintiffs emphasize numerous social media posts by Mr. Beall that discuss, without mentioning by name, EJP, its employees and counsel, and this case, *see Pls.' Second Contempt Mot.*, which they allege violates the Court's order prohibiting Mr. Beall from "[p]osting any defamatory content on public social media sites about either of the Plaintiffs." *Prelim. Inj.* at 2. Mr. Beall insists in response that "[n]one of Defendant's posts referenced Everett J. Prescott, Inc. by name, nor did they disclose confidential or prejudicial information." *Def.'s Contempt Opp'n* at 1. Mr. Beall's argument implicates the second element of civil contempt, which requires the court's order to have been "clear and unambiguous." *Saccoccia*, 433 F.3d at 27 (quoting *AccuSoft Corp.*, 237 F.3d at 47). Here, a liberal construction of Mr. Beall's argument suggests that he did not understand the order to extend to public statements that do not identify Plaintiffs by name. Precedent in this District has declined to hold individuals in civil contempt for violating the spirit of a preliminary injunction, rather than its precise terms. *See Concordia Partners, LLC v. Pick*, No. 2:14-cv-009-GZS, 2015 U.S. Dist. LEXIS 32353, at *6 n.2 (D. Me. Mar. 17, 2015) ("it is more likely true than not true that Defendants are not complying with the spirit of the Preliminary Injunction, [but] such a showing does not meet the standard for a

motion for contempt, which requires clear and convincing evidence that Defendants have violated the letter of the Preliminary Injunction").

In his opposition, Mr. Beall asks the Court to clarify the scope of the restriction on his speech. *Def.'s Contempt Opp'n* at 3. The Court now explains, unequivocally, that a defamatory statement need not identify an individual by name, *see Lahr v. Adell Chem. Co.*, 300 F.2d 256, 259 (1st Cir. 1962) ("it has never been held in defamation that a plaintiff must be identified by name"); rather "[t]o maintain a defamation action under Maine law, a plaintiff must demonstrate that 'at least one person actually and reasonably interpreted' an allegedly defamatory statement to be 'of and concerning' the plaintiff." *C&M Prop. Mgmt., LLC v. Moark, LLC*, No. 2:15-cv-336-GZS, 2016 U.S. Dist. LEXIS 43082, at *10-11 (D. Me. Mar. 31, 2016) (quoting *Lynch v. Christie*, No. 2:11CV70-DBH, 2012 U.S. Dist. LEXIS 165628, at *11 (D. Me. Nov. 20, 2012)). Here, to his credit, Mr. Beall does not deny that his posts were meant to refer to Plaintiffs. The Court thus places Mr. Beall expressly on clear and unambiguous notice that, even if he does not use their names, defamatory posts on social media about either of the Plaintiffs violate the Court's preliminary injunction.

Mr. Beall also argues his social media postings are "lawful, protected speech, consisting of personal opinion, rhetorical commentary, and satire." *Def.'s Contempt Opp'n* at 2. Mr. Beall is incorrect as a matter of law; robust caselaw from the Supreme Court stands for the principle that defamatory speech is not protected by the First Amendment. *See, e.g.*, *Gertz v. Robert Welch*, 418 U.S. 323, 386 (1974)

("This phrasing [of the First Amendment] did not prevent this Court from concluding that libelous utterances are not within the area of constitutionally protected speech") (citing *Beauharnais v. Illinois*, 343 U.S. 250, 266 (1952)). Further, the Court rejects Mr. Beall's assertions that his posts did not disclose any "prejudicial information"; Mr. Beall's Facebook posts accuse EJP's CEO of facing criminal charges and of "staring down serious prison time." *Pls.' Second Contempt Mot.* at 3. Such allegations, should they be seen by EJP's customers or potential customers, plainly affects their ability to conduct business and are thus prejudicial to EJP.

As explained above, the Court will accept Mr. Beall's representations that he did not understand the scope of the preliminary injunction and exercise leniency by declining to hold Mr. Beall in civil contempt at this time. However, leniency must have a limit. The Court stresses to Mr. Beall in the strongest terms that this is his final opportunity to comply with the terms of the preliminary injunction, as he promised he would on May 29, 2025. *See Tr. of Proceedings* at 14:3-5. The Court further emphasizes that this exercise of leniency is not an invitation for Mr. Beall to tempt fate by seeking to find a loophole or way around the preliminary injunction by, for example, not referring to Plaintiffs by name. While the Court dismisses Plaintiffs' motion for civil contempt, it does so without prejudice, and Plaintiffs may bring another motion for civil contempt should Mr. Beall continue to act in contravention of the preliminary injunction.

## X.    MR. BEALL'S REQUEST FOR CLARIFICATION

### A.    The Parties' Positions

#### 1.    Mr. Beall's Request for Clarification (ECF No. 64)

Mr. Beall notifies the Court that he has received letters to sue from the Massachusetts Attorney General's Office and EEOC which relate to his alleged civil rights violations by EJP and include specific deadlines by which civil action must be filed in the appropriate venue, which Mr. Beall posits is state or federal court in Massachusetts. *Def.'s Clarification Req.* at 1.  Mr Beall asks for the Court to clarify how to proceed in light of the potential filing of a civil rights action in Massachusetts, which he seeks to do "without conflicting with or compromising the present matter before this Court." *Id.*  He states his intent to neither interfere with nor duplicate proceedings in this Court, but that he wishes to comply with legal deadlines in order to preserve his rights in the District of Massachusetts.  *Id.*

Mr. Beall requests the Court to clarify whether "1. The Court recommends or authorizes Defendant to proceed with filing the Massachusetts civil rights action in parallel; or 2. Defendant should seek formal leave or clarification before doing so." *Id.* at 2.

#### 2.    Plaintiffs' Opposition (ECF No. 117)

Plaintiffs aver the Court cannot and should not advise Mr. Beall on how to proceed in a separate civil action, submitting a core tenet of the American judicial system prohibits courts from issuing advisory opinions and, further, that Mr. Beall has repeatedly suggested that he has or is in the process of obtaining counsel.  *Pls.' Clarification Opp'n* at 1-2.  Plaintiffs contend the Court should thus deny Mr.

Beall's request for advice and clarification on how to bring his civil rights claims. *Id.* at 3-4.

### 3.    Mr. Beall's Reply (ECF No. 118)

Mr. Beall replies that he does not seek legal advice, but merely "to clarify [his] position in light of Plaintiffs' retaliatory litigation strategy, sealed filings, and now their own written admission that they expect future civil rights litigation tied to this same core of facts." *Def.'s Clarification Reply* at 1. He emphasizes that Plaintiffs' opposition does not contest the facts asserted in his filing and that their opposition constitutes further obstruction and retaliation. *Id.* at 1-2. He reiterates his claims regarding the facts underlying his termination and allegations of retaliation and procedural manipulation. *Id.* at 2-4.

### B.    Discussion

In his reply, Mr. Beall disclaims that he is seeking legal advice; however, under the plain terms of his filing, he asks the Court for clarification on how to proceed with his civil case, *Def.'s Clarification Req.*, which the Court understands as a request for the Court to provide information on his legal rights. As adjudicator of this matter, the Court cannot also serve as counsel to Mr. Beall and give him legal advice. The Supreme Court plainly stated that a court's role is not to represent a party's interest, even if the litigant appears pro se. *See Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("Explaining the details of federal [] procedure and calculating statutes of limitations are tasks normally and properly performed by trained counsel as a matter of course. Requiring district courts to advise a *pro se* litigant in such a manner would undermine district judges' role as impartial decisionmakers"). The

federal courts have unanimously enforced the Supreme Court's mandate. *See, e.g.*, *Russo v. Sherman*, No. 5:18-cv-02623-JGB (SHK), 2019 U.S. Dist. LEXIS 221069, at *9 (C.D. Cal. Oct. 25, 2019) ("For a judge to give advice to a pro se litigant on the legal process 'would entail the district court's becoming a player in the adversary process rather than remaining its referee'") (quoting *Jacobsen v. Filler*, 790 F.2d 1362, 1365-66 (9th Cir. 1986)); *Odion v. Google Inc.*, 628 F. App'x 635, 637 (11th Cir. 2015) (courts must show leniency to pro se litigants, but "this leniency does not give a court license to serve as de facto counsel for a party"); *Hammond v. Strickland*, No. 1:24-cv-395-ECM-JTA, 2025 U.S. Dist. LEXIS 13859, at *5 (M.D. Ala. Jan. 27, 2025) ("Plaintiffs elected to proceed pro se in this litigation. The court is not their attorney and cannot provide legal advice").

Further, Article III of the United States Constitution prohibits a court from issuing an advisory opinion on a dispute not presently before it. *See, e.g.*, *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378-79 (2024) ("As this Court explained to President George Washington in 1793 in response to his request for a legal opinion, federal courts do not issue advisory opinions about the law—even when requested by the President"); *accord Law v. Ernst & Young*, 956 F.2d 364, 368 (1st Cir. 1992) (federal courts forbidden by Article III to render advisory opinions) (citing *Boston Chapter, NAACP v. Beecher*, 716 F.2d 931, 933 (1st Cir. 1983)). The Court will not, and indeed cannot, break from this well-established jurisprudence to advise Mr. Beall on how to proceed with his contemplated civil case.

96

## XI.     MR. BEALL'S MOTION FOR IN CAMERA REVIEW

### A.     The Parties' Positions

#### 1.     Mr. Beall's Motion for In Camera Review (ECF No. 68)

Mr. Beall moves the Court for an in camera review of "a piece of recorded evidence that contains highly sensitive material directly corroborating multiple claims made in this matter." *Def.'s In Camera Mot.* at 1.  He asserts the "audio evidence includes statements made by a current or former EJP employee" and that the statements:

- Affirms the truth of Defendant's previous assertions about workplace retaliation;

- Describes internal discussions where Defendant's unemployment benefits were deliberately denied as punishment, quoting a senior manager as saying, "Because Tim's being a little bitch about me getting rid of him, we're denying his unemployment—hah."[;]

- Confirms inappropriate post-termination relationships and potential cover-up involving key individuals in the matter;

- Indicates that familial relationships within EJP may have played a role in shielding improper conduct.

*Id.*  He asserts his desire to keep the individual speaking in the recording anonymous "to avoid retaliation or reputational harm." *Id.* at 2.  He requests the Court permit private submission of the audio recording for in camera review, preserve the confidentiality of the source and content until appropriate, and provide Mr. Beall with further instructions regarding handling or disclosure of the recording." *Id.*

97

### 2. Plaintiffs' Opposition (ECF No. 120)

Plaintiffs oppose Mr. Beall's request for in camera review of evidence, asserting that Mr. Beall has provided no statutory basis for his request, that the proffered purposes of the recording have no bearing on Plaintiffs' claims against Mr. Beall, and that the situations in which the First Circuit has permitted in camera review of evidence—disputes over privilege claims, the applicability of the crime-fraud exception, and constitutional due process rights in relation to privilege claims—are not implicated here. *Pls.' In Camera Opp'n* at 1-2. Plaintiffs continue that Mr. Beall's motion for in camera review is improperly filed as he remains subject to the entry of default, and further that, should this case proceed to discovery, Mr. Beall is not permitted to present evidence anonymously and under seal pursuant to Federal Rule of Civil Procedure 26. *Id.* at 3. At bottom, Plaintiffs ask the Court to dismiss Mr. Beall's motion for in camera review.

### 3. Mr. Beall's Reply (ECF No. 121)

Mr. Beall emphasizes that Plaintiffs object to in camera review of an audio recording they have not heard and thus do not know the contents of, which he insists demonstrate "[t]hey are objecting because the possibility of what it might contain threatens them," a concern which Mr. Beall characterizes as "not legal; it is strategic and self-interested." *Def.'s In Camera Reply* at 1. Mr. Beall continues that this is not a discovery dispute, but that he "seeks only for the Court to privately review a recording to determine its relevance and probative value," which he claims is routinely done by federal courts. *Id.*

98

Mr. Beall submits that the reason for his request is "witness protection and truth preservation," alleging Plaintiffs have shown a pattern of retaliation and that "only the Court[] is in a position to ensure this material is reviewed without political, professional, or retaliatory distortion." *Id.* at 2. He claims Plaintiffs do not oppose in camera review as unavailable under the law, instead making legal arguments about his defaulted status and the propriety of in camera review in the context of discovery, which Mr. Beall insists his motion is not. *Id.* Finally, Mr. Beall describes and attaches emails between himself and Plaintiffs' counsel, which he submits "demonstrate the tone and dismissiveness [he has] encountered when attempting to engage in good faith," which he argues is necessary in light of excerpted emails provided by Plaintiffs' counsel and their pattern of "retaliatory behavior and open hostility toward protected conduct." *Id.* at 3.

## B.    Discussion

In camera review is typically requested in light of an assertion of legal privilege over a proffered piece of evidence. In this context, "the decision whether to engage in in camera review rests in the sound discretion of the district court." *United States v. Zolin*, 491 U.S. 554, 572 (1989). If it appears that the basis for the documents asserted privilege "is subject to legitimate dispute, the desirability of in camera review is heightened." *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d at 70.

As the Court previously explained to Mr. Beall in this order, the legal system does not provide for piecemeal review of evidence, untethered to any motion. At the motion to dismiss stage, a complainant's allegations of fact are taken as true. *See Iqbal*, 556 U.S. at 678 (a complaint must contain "sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face'") (quoting *Twombly*, 550 U.S. at 570).  Should this case proceed to discovery and beyond, evidentiary disputes may become relevant.  But, at this time, Mr. Beall's request "to preserve this evidence directly with the Court for future consideration under seal" serves no purpose in furthering the resolution of this case. *Def.'s In Camera Mot.* at 2.  Mr. Beall may present this evidence if and when appropriate under the Federal Rules of Civil Procedure and, if he remains concerned for the source's confidentiality and risk of retaliation, move to file the evidence under seal at that time.

The Court reiterates that it cannot serve as Mr. Beall's counsel and thus cannot "preserve the confidentiality of the source and content until such time as it deems appropriate," nor can it issue an advisory opinion by "direct[ing] further instructions as necessary regarding handling or disclosure of the recording" as he requests.  *Def.'s In Camera Mot.* at 2; *see also Pliler*, 542 U.S. at 231; *All. for Hippocratic Med.*, 602 U.S. at 378-79.

## XII.    MR. BEALL'S MOTION TO COMPEL DISCOVERY

### A.    The Parties' Positions

#### 1.    Mr. Beall's First Motion to Compel (ECF No. 108)

Mr. Beall moves to compel discovery pursuant to Federal Rule of Civil Procedure 37, requesting the Court compel the Plaintiffs to produce 1) phone records and text messages from the work and personal devices of numerous EJP officers and employees for the period of June 1, 2024 through present, and 2) email communications from the same individuals that reference the Defendant, his employment or termination, and his public posts and legal filings; sexual

100

harassment, discrimination, or hostile workplace at EJP; and litigation strategy involving choice of venue, service attempts, and involvement of local law enforcement. *Def.'s First Compel Mot.* at 1-2.

Mr. Beall posits Plaintiffs and their counsel have manipulated this litigation "into a tool for defamation, intimidation, and suppression of protected activity" and that his requested discovery is crucial to demonstrating the proof of his claims. *Id.* at 3. Averring Plaintiffs' counsel has refused to engage with his direct communications, he asks the Court to compel production of the requested discovery materials within fourteen days, order preservation of all such records, award costs and fees pursuant to Rule 37(a)(5), and set a hearing if necessary. *Id.* at 3-4.

### 2.    Mr. Beall's Second Motion to Compel (ECF No. 119)

Mr. Beall moves for the Court to order the Plaintiffs "to produce and file, on the docket of this matter, a complete and unaltered copy of my personnel file, including all employment-related documents and termination communications, so that the Court and the public can accurately assess the context and motives surrounding [his] dismissal." *Def.'s Second Compel Mot.* at 1. After reciting the facts presented on the record, Mr. Beall argues the Plaintiffs should be compelled to produce his complete personnel file, any internal communications between Mr. Peterson and EJP's Human Resources department surrounding his termination, and present this information "on the docket" for judicial and public assessment. *Id.* at 2-3. The Defendant contends Plaintiffs have posited that he was terminated for attendance-related issues and that the Plaintiffs should be required to substantiate their claims with evidence on the record. *Id.* at 3.

101

### 3. Mr. Beall's Notice and Preservation Demand (ECF No. 123)

Mr. Beall informs the Court and parties of his intent to pursue civil rights claims against EJP, its employees, and its counsel "based on retaliation, discrimination, ADA violations, procedural abuse, and coordinated misconduct." *Def.'s Evid. Notice* at 1. He submits a formal demand for preservation of documents and communication for a list of EJP employees and their counsel and a list of subjects and topics. *Id.* at 1-3.

### 4. Mr. Beall's Supplemental Notice Regarding Preservation of Personal Device (ECF No. 124)

Mr. Beall supplements his submissions regarding preservation of evidence with specific allegations that Mr. Peterson "provided his personal mobile phone to Taylor Bourgeois, a subordinate and former EJP employee, for the purpose of maintaining informal communications between them" and that this device likely contains communications regarding "[a]lleged sexual harassment," "[i]nternal knowledge of misconduct," "[r]etaliatory animus," "[a]ttempts to silence or discredit employees," and other communications relevant to Mr. Beall's anticipated civil rights claim. *Def.'s Suppl. Preservation Notice* at 1-2. Mr. Beall thus requests confirmation that all communications contained on Ms. Bourgeois's personal device are being preserved. *Id.* at 2.

### B. Discussion

Federal Rule of Civil Procedure 26, which governs discovery, requires initial discovery be made "at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects

during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan." FED. R. CIV. P. 26(a)(1)(C). Here, the parties have not held a Rule 26(f) conference and, further, multiple motions remain pending, including Defendant's motion for leave to file counterclaims and Plaintiffs' motion to dismiss counterclaims, that would have a direct effect on the scope of this case and the corresponding bounds of discovery. In fact, in light of the entry of default against Mr. Beall, the Court has not yet issued a scheduling order, such that the discovery period has technically not yet begun. *See* D. ME. LOC. R. 16.2(b)(2) ("In Standard Track cases, **the proposed scheduling order will set deadlines to: serve initial disclosures under Federal Rule of Civil Procedure 26(a)(1)**; join other parties and amend the pleadings; file motions; disclose experts and complete discovery; and complete other pretrial preparation") (emphasis supplied).

As Mr. Beall's requested discovery will be addressed at the Rule 26(f) conference, and consistent with a robust body of federal caselaw, the Court concludes Mr. Beall's motions to compel are brought prematurely and thus dismisses his motions without prejudice. *See, e.g.*, *O'Neill v. NYU Langone Med. Ctr.*, No. 1:22-CV-0011-SEG, 2023 U.S. Dist. LEXIS 68106, at *38-39 (N.D. Ga. Mar. 14, 2023) ("Motions to compel that are filed before the start of discovery are generally considered premature. Discovery has not started, and Plaintiff has not provided a sufficient reason why the requested documents are needed imminently" (citing *Robinson v. Johnson*, No. 6:19-cv-53, 2020 U.S. Dist. LEXIS 164439, at *1

(S.D. Ga. Sept. 9, 2020) (denying the plaintiff's motion to compel as premature and
noting that the plaintiff can request production of documents and evidence after
discovery starts); *Zambuto v. County of Broward*, No. 08-61561-CIV, 2009 U.S. Dist.
LEXIS 20930, at *2 (S.D. Fla. Mar. 4, 2009) (same).

Mr. Beall insists that the Court should compel Plaintiffs to put all his
requested information on the record, *Def.'s Second Compel Mot.*; however, this
fundamentally misunderstands the purpose of discovery and the manner of
proceeding in federal court. The Court's docket is not a repository for all discovery
materials, to be reviewed ad hoc by the Court and the public. Rather, the federal
rules provide for discovery between opposing parties directly, the relevant portions
of which may then be submitted as exhibits in support of specific motions
contemplated by the federal rules. *See* FED. R. CIV. P. 26. The Court further notes
that when Mr. Beall elected to proceed pro se in this case, the Court Clerk provided
him with notice of resources for self-represented parties, *see Notice* (ECF No. 32).
The Court strongly encourages Mr. Beall to consult those materials for detailed
information on how to properly proceed in this matter.

Finally, with regard to Mr. Beall's notice of anticipated litigation and demand
for evidence preservation, the Court sees no basis for this document to be filed on
the docket. Under Federal Rule of Civil Procedure 37(e), a court may impose
sanctions if a party fails to take reasonable steps to preserve information that
should have been preserved in anticipation of litigation. Fed. R. Civ. P. 37(e).
However, this case has not yet reached the discovery stage, the anticipated lawsuit

described by Mr. Beall is contemplated being filed in Massachusetts, and, as
explained here, discovery is a matter handled between the parties directly until a
cognizable legal dispute requiring adjudication arises. The Court again urges Mr.
Beall to consult the resources provided by the Court Clerk detailing how self-
represented parties should proceed in federal court.

## XIII. MR. BEALL'S MOTIONS TO STRIKE REFERENCES TO THIRD PARTY AND TO SEAL, AND PLAINTIFFS' MOTION TO SEAL

### A.    The Parties' Positions

#### 1.    Mr. Beall's Motion to Strike (ECF No. 61)

Mr. Beall moves the Court to strike from the public record all references to
the name of a non-party family member "previously mentioned by the Defendant in
good faith," asserting concerns for the individual's privacy and safety. *Def.'s Mot. to
Strike* at 1. He submits the referenced person is a private citizen, uninvolved in the
present litigation, "whose historical associations—if examined or disseminated—
may expose matters of a highly sensitive nature, beyond the awareness or
comprehension of opposing counsel." *Id.* Mr. Beall explains he originally included
this information "as a contextual element intended to illustrate background and
credibility," but now recognizes its potential for harm if made public. *Id.* He
asserts the information is immaterial to the legal questions presented in this case,
and thus the Court is authorized to strike the material pursuant to Federal Rule of
Civil Procedure 12(f). *Id.* at 1-2.

As relief, Mr. Beall requests the Court strike from the docket any reference to
the individual previously identified as Defendant's grandfather, permit Defendant

to file a redacted version of any affected submission, and grant any other relief the Court deems just. *Id.* at 2.

## 2. Plaintiffs' Motion to Seal (ECF No. 76)

Plaintiffs aver that one of Mr. Beall's filings, the incident report authored by the Shrewsbury, Massachusetts Police Department, *see Incident Rep.*, contains PII that should have been redacted pursuant to Federal Rule of Civil Procedure 5.2 and District of Maine Local Rule 5.2. *Pls.' Seal Mot.* at 1. Specifically, Plaintiffs say this filing contains Mr. Van Savage's date of birth and home address, as well as Mr. Beall's home address. Plaintiffs emphasize that, after Mr. Beall filed the incident report, the Clerk of Court entered a notice on the docket, explaining the filing "contains personal identifiers in violation of Fed. R. Civ. P. 5.2," giving instructions on how to redact the confidential information, and cautioning Mr. Beall that the confidential information will remain publicly available without affirmative action. *Id.* Plaintiffs insist the information remaining available "is highly prejudicial to Plaintiff Van Savage," as his PII should neither be publicly available nor should its accessibility depend on Mr. Beall's action, highlighting that Mr. Beall has failed to take the action necessary to remedy the violation. *Id.* at 1-2.

After recognizing the public interest in accessible judicial proceedings, Plaintiffs assert there is nonetheless good cause to seal or redact this individual document containing Mr. Van Savage's PII pursuant to Federal Rule 5.2 and Local Rule 5.2. *Id.* at 2.

### 3.    Mr. Beall's Opposition to Motion to Seal (ECF No. 77)

Mr. Beall's filing in response, which he entitles "Defendant's Response in Opposition to Plaintiffs' Motion to Seal and Notice of Misrepresentation Regarding Shrewsbury Police Report," does not engage with the substantive request of Plaintiffs' filing but opposes granting the seal. *See Def.'s Seal Opp'n.* Instead, Mr. Beall first informs the Court that Plaintiffs' counsel told him "they 'had no idea'" about the Shrewsbury Police Department incident and that, when he appeared at the Westborough District Court to defend himself against the allegations, he was informed that the complaint had been filed at the recommendation of Plaintiffs' counsel, which he asserts is further confirmed by the incident report.[10]  *Id.*

Next, Mr. Beall argues the motion to seal is improper, as he claims it "is not motivated by any legitimate privacy or procedural interest, but rather by an attempt to suppress evidence of their counsel's misrepresentation, their litigation tactics, and the fact that Steven Prescott apparently used a false name in connection with this incident."  *Id.* at 2.  He next reiterates his claims that Plaintiffs and their counsel have demonstrated a pattern of bad faith and misrepresentation, and that granting the motion to seal would undermine the integrity of this case.  *Id.* Mr. Beall requests the Court deny the motion to seal, take notice of the contradiction between Attorney Silver's alleged representations and the incident report, and consider the broader alleged pattern of bad faith litigation.  *Id.* at 2-3.

---

[10]    Mr. Beall then appears to intend to quote the incident report; however, no text appears after the colon indicating a potential quotation.  *Def.'s Seal Opp'n* at 1-2 ("The police report at ECF 48 states unequivocally:" followed by no text).

### 4.      Plaintiffs' Reply to Plaintiffs' Motion to Seal (ECF No. 109)

Plaintiffs aver Mr. Van Savage's birth date and home address should have been redacted pursuant to Rule 5.2 and that, despite the Court's instruction, Mr. Beall has failed to do so.  *Pls.' Seal Reply* at 1.  Plaintiffs add that, in direct communications with Mr. Beall on July 7, 2025, Plaintiffs offered to stipulate to keeping the implicated incident report publicly available on the docket if Mr. Beall re-filed a version with Mr. Van Savage's birthdate and home address redacted, and that Mr. Beall purported to agree to do so; however, to date, he has not filed any such redacted version.  *Id.* at 1-2.

### 5.      Plaintiffs' Opposition to Mr. Beall's to Motion to Strike (ECF No. 110)

Plaintiffs oppose Mr. Beall's request to strike references to his grandfather from the record, arguing that Mr. Beall "inserted him into this litigation by repeatedly referencing his grandfather to seemingly intimidate and threaten Plaintiffs and their counsel."  *Pls.' Strike Opp'n* at 1.  They recite the numerous emails and text messages to Plaintiffs, spanning from February 27, 2025 to July 18, 2025, in which Mr. Beall has included descriptions of Mr. Beall's grandfather's background in law enforcement and argue Mr. Beall has provided no legitimate reason for the Court to strike such information from the docket.  *Id.* at 2-3.

### 6.      Mr. Beall's Motion to Seal (ECF No. 111)

Mr. Beall moves to seal "portions of the docket that reference or exploit private details regarding a non-party family member, specifically Sgt. James Murray, [his grandfather]."  *Def.'s Seal Mot.* at 1.  He argues Sgt. Murray has been

108

"dragged into this case by a Plaintiff that has consistently twisted and mischaracterized every protected fact [he has] shared to justify their retaliatory campaign." *Id.* Mr. Beall asserts he has referenced Sgt. Murray's law enforcement background "not to intimidate – but to explain the foundation of [his] own character: one built on truth, discipline, and accountability." *Id.* He argues "[i]n ECF 110, Plaintiffs make Sgt. Murray the focus of a multi-page filing." *Id.* at 2. Mr. Beall asserts "[t]he First Circuit has long held that courts may seal information to protect non-parties from undue harm, embarrassment, or misuse of private details that are not materially relevant to adjudication" and argues such precedent should apply to his request to seal references to Sgt. Murray in this case. *Id.*

Mr. Beall argues Plaintiffs' filings are hypocritical by referencing his grandfather's public service history while they simultaneously seek to seal the Shrewsbury, Massachusetts incident report, and requests the Court seal or redact all filings that refer to Sgt. Murray, bar the Plaintiffs from further referencing non-party family members unless relevant to a specific factual dispute, and to strike any language from the record suggesting criminal intimidation based on family background. *Id.* at 2-3.

### 7.    Mr. Beall's Motion to Unseal (ECF No. 112) and Reply in Support of his Motion to Unseal (ECF No. 113)[11]

Mr. Beall moves to unseal Plaintiffs' reply to their motion to seal, docketed as ECF 109, arguing that he did not request this filing to be sealed and that "Plaintiffs filed Document 109 under seal — making it appear as though [Mr. Beall] had requested the information be hidden from the public and the press.  That is false." *Def.'s Unseal Mot.* at 1.  Mr. Beall asserts this "is yet another example of how Plaintiffs and their counsel are using this Court not as a tool for justice, but as a shield for public embarrassment and procedural abuse," and argues there is "no protective order or compelling privacy interest that justifies keeping Document 109 sealed."  *Id.* at 2-3.  Mr. Beall thus argues the Plaintiffs' reply in support of their motion to seal, and its attachments, should be unsealed, Plaintiffs should be ordered to respond to Mr. Beall's questions regarding the incident report, and Plaintiffs should be prohibited from submitting further filings under seal unless Mr. Beall consents or the filing is accompanied by "a specific and verifiable confidentiality claim."  *Id.*

Mr. Beall further submits a reply in support of his motion to unseal, submitting that he never requested sealing, that Plaintiffs filed their reply under

---

[11]    The Court once again informs Mr. Beall that, under District of Maine Local Rule 7, "[n]o later than 14 days of the filing of any objection or response to a motion, the moving party may file a reply memorandum confined to replying to new matter raised in the objection or response." D. ME. LOC. R. 7(c).  Here, Mr. Beall filed his reply mere minutes after his motion to unseal and prior to any response from the Plaintiffs.  The Court reminds Mr. Beall of the impropriety of such a filing sequence and, though it considers the contents of his reply in this order, that in the future Mr. Beall will be held to strict compliance with the Local Rules and the Court will not review any filings made in contravention of the procedures and timelines provided by the same.

seal while falsely representing his consent, and that both this filing and
communications with Plaintiffs' counsel demonstrate a pattern of intimidation and
procedural suppression. *Def.'s Unseal Reply* at 1-2. Mr. Beall states he consents to
redaction of birthdates and home addresses but insists his communications with
Plaintiffs' counsel inquired as to the identity of "Scott Prescott" in the incident
report and that he "will not allow [his] inquiry – or [his] identity – to be co-opted as
justification to hid a potentially fraudulent or misleading document." *Id.* at 2. He
thus again asks the Court to unseal the Plaintiffs' reply and to "[d]irect Plaintiffs
to formally identify the origin and author of the name 'Scott Prescott' as it appeared in
the police incident report submitted by or on behalf of Everett J. Prescott, Inc." *Id.*
at 3.

**B.    Legal Standard**

The First Circuit extensively discussed the right of public access in *United
States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013), reiterating that "[c]ourts have long
recognized 'that public monitoring of the judicial system fosters the important
values of quality, honest and respect for our legal system.'" *Kravetz*, 706 F.3d at 52
(quoting *In re Providence J.*, 293 at 9) (in turn quoting *Siedle v. Putnam Invs.*, 147
F.3d 7, 10 (1st Cir. 1998))). To uphold these values, once it is determined that the
document is a so-called "judicial record," a presumption that it is public applies. *Id.*

The First Circuit explained that a "judicial record" is a document that is
"submitted by parties to aid in the adjudication of" an issue before the court and
that is "meant to impact the court's disposition of substantive rights." *Id.*; *accord
United States ex rel. Nargol v. Deputy Orthopaedics, Inc.*, 69 F.4th 1, 15 (1st Cir.

111

2023) (stating judicial records are "those 'materials on which a court relies in determining the litigants' substantive rights'") (quoting *Kravetz*, 706 F.3d at 54). The *Kravetz* Court rejected the argument that a judicial record need be disclosed only if it actually influenced a judge's decision. *Id.* at 58-59.

However, "[t]hough the public's right of access is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." *Id.* at 59 (quoting *Siedle*, 147 F.3d at 10). In other words, while the presumption is broad, the *Kravetz* Court recognized that exceptional circumstances may counter it. This notwithstanding, the First Circuit cautioned "'only the most compelling reasons can justify non-disclosure of judicial records' that come within the scope of the common-law right of access." *Id.* (quoting *In re Providence J.*, 293 F.3d at 10 (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).

In balancing the competing interests in cases where the presumption of public access applies, the First Circuit instructed district courts to consider whether the "personal privacy interests of third parties" are at stake. *Id.* at 61. "[P]rivacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records." *Id.* at 62 (quoting *Standard Fin. Mgmt. Corp.*, 830 F.2d at 411) (quotation marks omitted). The First Circuit directed district courts to "weigh heavily" the privacy interests of third parties in the court's balancing analysis.

In addition, the First Circuit directed the district courts to "consider the degree to which the subject matter is traditionally considered private rather than public." *Id.* (quoting *United States v. Connolly (In re Boston Herald, Inc.)*, 321 F.3d 174, 190 (1st Cir. 2003)).  "Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)).  In the context of sentencing letters, the First Circuit wrote that "discussion of the ill health of members of the authors' families, incidents of domestic violence, and other domestic relations matters" involves "highly personal" information and "appears to have no direct bearing on the public's assessment of the sentences imposed." *Id.* at 62.  Discussing medical information, the *Kravetz* Court quoted the Second Circuit in saying that "[c]ourts have long declined to allow public access simply to cater to a morbid craving for that which is sensational and impure." *Id.* (quoting *Amodeo*, 71 F.3d at 1051).

Finally, the *Kravetz* Court spoke not only to the substance of what is presumptively publicly accessible, but also to scope.  *Id.* at 62-63 ("where the public's right of access competes with privacy rights, 'it is proper for a district court, after weighing competing interests, to edit and redact a judicial document in order to allow access to appropriate portions of the document'") (quoting *Amodeo*, 44 F.3d at 147; and citing *In re Providence Journal*, 293 F.3d at 15 (in context of documents to which First Amendment right of access attaches,  "[r]edaction constitutes a time-

tested means of minimizing any intrusion on that right"). The *Kravetz* Court concluded that the determination of whether the balance of interests justifies redacting only specific information or withholding the entire content of the relevant document "is a matter to be decided by the district court." *Id.* at 62.

Also relevant to the parties' pending motions are the rules of civil procedure governing PII. Federal Rule of Civil Procedure 5.2 provides that filings involving private information should include only, as relevant, "(1) the last four digits of the social-security number and taxpayer-identification number; (2) the year of the individual's birth; (3) the minor's initials; and (4) the last four digits of the financial-account number." FED. R. CIV. P. 5.2(a). Similarly, District of Maine Local Rule 5.2 provides material may be filed under seal only with the Court's permission, with a relevant exception that "[n]o motion or order is required for the filing of a document that has been redacted solely to remove personal identifiers under Federal Rule of Civil Procedure 5.2 or that is included within a category of pleadings and documents deemed sealed or authorized to be filed ex parte under a federal statute or rule. Any filing of a redacted document should reference the authority for such redaction." D. ME. LOC. R. 5.2(e)(1).

## C.    Discussion

### 1.    Mr. Beall's Motion to Strike (ECF No. 61) and Motion to Seal (ECF No. 111)

The Court first addresses Mr. Beall's self-titled motion to strike from the record all references of a non-party family member. *Def.'s Mot. to Strike* at 1. As an initial matter, the Court notes that Mr. Beall describes his request as a motion to

strike, but, as previously discussed, a motion to strike pursuant to Rule 12(f)
implicates the Court's authority to "strike from a pleading an insufficient defense or
any redundant, immaterial, impertinent, or scandalous matter." *See* FED. R. CIV. P.
12(f).  Based on Mr. Beall's request to protect the privacy of a person described in
previous filings, the Court recharacterizes Mr. Beall's motion as a motion for
privacy protection pursuant to Federal Rule of Civil Procedure 5.2, which governs
the redaction and sealing of filings with the court.

Once a document is "submitted by parties to aid in the adjudication of" an
issue before the court, it is a judicial record and thus presumptively publicly
accessible. *Kravetz*, 706 F.3d at 52.  While there are exceptions to this rule for
privacy concerns, such exceptions apply to "embarrassing conduct," medical
information, or other "highly personal" information. *Id.*  For both lack of specificity
and lack of support, Mr. Beall has failed to establish the "exceptional
circumstances" necessary to overcome the public's presumptive right of access to
judicial records.

Further, insofar as Federal Rule of Civil Procedure governs the redaction of
personally identifiable information, Mr. Beall has not identified any personal
identifiers that were disclosed on the record; indeed, Mr. Beall indicates neither
what specific references he wishes to redact, nor in which filings such references
appear.  Further, while Mr. Beall alludes a vague safety concern, he provides no
explanation for his concern.

The same analysis applies to Mr. Beall's motion to seal, which he submits for the identical purpose of removing references to Sgt. Murray from the public docket. *See Def.'s Seal Mot.* Mr. Beall complains that Plaintiffs are involving his family members in this case out of context; however, Plaintiffs have submitted no personally identifiable information, nor have they placed any information regarding Sgt. Murray on the record beyond that which Mr. Beall himself shared in his direct communications with the Plaintiffs. While Mr. Beall submits his repeated references to his grandfather's law enforcement background were meant as context, not as threats, Plaintiffs interpreted such messages differently and presents these references as intended to harass and intimidate. The Court does not rule on this dispute today, nor must it do so to resolve the motion to seal. As explained above, once a document is "submitted by parties to aid in the adjudication of" an issue before the court, it is a judicial record and thus presumptively publicly accessible. *Kravetz*, 706 F.3d at 52. Mr. Beall has presented no basis for legally recognized privacy concerns that would justify sealing or redacting references to his grandfather and, thus, the Court dismisses Mr. Beall's motion to seal.

### 2.    Plaintiffs' Motion to Seal (ECF No. 76)

Plaintiffs move to seal or redact the Shrewsbury, Massachusetts Police Department's incident report, explaining that the incident report lists Mr. Van Savage's date of birth and home address, as well as Mr. Beall's home address, and emphasizing that Mr. Beall has taken no action in response to the Clerk's admonition for the filing's violation of Rule 5.2. *Pls.' Seal Mot.* at 1.

116

On review, the Court concludes Plaintiffs' correctly note that the inclusion of
Mr. Van Savage's date of birth violates Rule 5.2, which directs parties to redact an
individual's birth date beyond "the year of the individual's birth." FED. R. CIV. P.
5.2(a)(2). The Court is further persuaded by Plaintiffs' argument that Mr. Van
Savage should not be prejudiced by having his PII remain on the public docket as a
result of Mr. Beall's failure to respond to the Clerk's notice. *Pls.' Seal Mot.* at 1-2.

However, while Plaintiffs have established a strong basis for the privacy of
Mr. Van Savage's date of birth, neither Federal Rule 5.2 nor Local Rule 5.2 includes
a home address in the list of personal identifiers that should be presumptively
redacted. Further, Plaintiffs largely bring their motion as one to seal the document
in its entirety. *Cf. id.* at 2 ("good cause exists here for sealing (or redacting) this
individual document containing Plaintiff Van Savage's PII"). As explained, a party
seeking to seal a judicial record must overcome a presumption of public access.
*Kravetz*, 706 F.3d at 52. The Plaintiffs do not explain why redaction is inadequate
to protect Mr. Van Savage's date of birth while "minimizing any intrusion on that
right." *In re Providence Journal*, 293 F.3d at 15.

Based on the foregoing, the Court dismisses the Plaintiffs' motion insofar as
it requests the Court seal the incident report, *see Incident Rep.*, in its entirety. The
Court grants the motion insofar as Plaintiffs request the Court redact Mr. Van
Savage's date of birth, with the exception of "the year of the individual's birth,"
pursuant to Rule 5.2(a)(2).

117

### 3.    Mr. Beall's Motion to Unseal (ECF No. 112)

Finally, the Court also addresses Mr. Beall's motion to unseal the Plaintiffs'
reply in support of their motion to seal, docketed as ECF 109, which Mr. Beall
argues misrepresents that he has consented to this filing being sealed and further
represents a pattern of suppression and intimidation by Plaintiffs' counsel. *Def.'s
Unseal Mot.* at 1-2. The Court dismisses Mr. Beall's motion as both legally and
factually unavailing.

First, while Mr. Beall argues Plaintiffs misrepresented that he consented to
their filing of their reply under seal, on the Court's review of the filing, the
Plaintiffs did no such thing. Plaintiffs described communications between their
counsel and Mr. Beall discussing the potential for filing a redacted version of the
police report; at no point do they represent Mr. Beall's consent to file their reply
under seal. *See generally Pls.' Seal Reply*.

Second, Mr. Beall's argument that Plaintiffs filing their reply under seal
evidences their intent to obstruct and suppress the truth mistakes the law. Local
Rule 5.2, which governs material filed under seal, unequivocally states that "[a]ny
response or reply to a motion to seal or motion filed under seal must be filed
electronically under seal and in accordance with Local Rule 7." D. ME. LOC. R.
5.2(b). Thus, the Plaintiffs filing their reply in support of their motion to seal under
seal simply complied with the terms of the Local Rules.

Local Rule 5.2 continues to state that "[i]f the Court denies the motion to
seal, the motion to seal and any supporting documents will remain in the ECF

system, sealed unless the Court orders otherwise." D. ME. LOC. R. 5.2(c). The Court has denied the motion to seal in part, while granting the motion insofar as it requests redaction of birthdates as expressly contemplated by Federal Rule of Civil Procedure 5.2. The Court has not otherwise ordered the motion to seal, or its corresponding response and reply, to be unsealed. For the foregoing reasons, the Court dismisses Mr. Beall's motion to unseal.

## XIV.  MR. BEALL'S MOTIONS FOR STATUS CONFERENCE

### A.    The Parties' Positions

#### 1.    Mr. Beall's Notice of Material Misrepresentations and Request for Status Conference (ECF No. 83)

Mr. Beall informs the Court of alleged factual discrepancies in Plaintiffs' filings and asks the Court to convene a status conference "to clarify the record, streamline the issues, and discuss next procedural steps." *Def.'s First Status Conf. Mot.* at 1.

First, Mr. Beall alleges "Plaintiffs told the Massachusetts Department of Unemployment Assistance that Defendant 'signed multiple attendance warnings,'" despite Mr. Beall's position that no such warning was given prior to his termination and Branch Manager James Peterson allegedly admitted EJP denied Mr. Beall's unemployment application "out of spite." *Id.* at 1 (citing *Def.'s Suppl. Decl.*). Second, Mr. Beall alleges the Shrewsbury, Massachusetts Police Department's incident report states Plaintiffs' counsel recommended Mr. Van Savage file a report, despite Plaintiffs' counsel representing to Defendant that "they had 'no idea' about the report" and Plaintiffs subsequent motion to seal the incident report on this

119

case's docket.  *Id.* at 2.  Third, Mr. Beall notes Plaintiffs state he had notice of the
suit in March 2025, but insists he had only viewed the relevant emails on a mobile
device with the messages collapsed, and thus did not see the full content of the
messages until May 27, 2025.  *Id.*  Fourth, Mr. Beall responds to Plaintiffs' second
motion for civil contempt, which notes Mr. Beall's company's recent job posting, to
inform the Court that his supplemental declaration explains that this posting was
exploratory and contingent on future investment in his company.  *Id.* (citing *Def.'s
Suppl. Decl.*).  Mr. Beall emphasizes that Plaintiffs' reply to their motion to strike
"does not acknowledge this correction."  *Id.*

At bottom, Plaintiff requests the Court hold "a telephonic or video status
conference at the Court's earliest convenience" and proposes the following agenda
items: "1. Scope and timing of any necessary discovery (e.g., unemployment records,
police-report communications)[;] 2. Whether Plaintiffs still rely on the 'active hiring'
allegation after ECF 80[;] Whether further briefing is required on the Motion to
Vacate Default and the two pending contempt motions[;] 4. Possibility of referral to
the District's ADR program."  *Id.* at 3-4.

## 2.    Plaintiffs' Response (ECF No. 86)

Plaintiffs state they have no objection to the request for a status conference,
agreeing a status conference could be productive in determining how the parties
should communicate in light of Mr. Beall's proceeding in this case pro se, the
Court's directive that the parties communicate and that Mr. Beall refrain from
inflammatory communications, and what Plaintiffs describe as Mr. Beall's
continued penchant for hostile communications.  *Pls.' Status Conf. Resp.* at 1.  To

this final point, Plaintiffs point out that immediately following their motion for sanctions for fictitious case citations, Mr. Beall sent multiple aggressive emails to Plaintiffs' counsel to personally insult them, disparage their ability to practice law, and threaten them with legal consequences for their involvement in this case. *Id.* at 1-2.

Plaintiffs continue to address particular factual assertions in Mr. Beall's notice. First, they disavow responsibility for Mr. Beall being denied unemployment benefits by the Massachusetts Department of Unemployed Assistance (MDUA), explaining that he was denied benefits for his failure to appear for a hearing before MDUA or to submit good cause for failing to do so within ten days, as required. *Id.* at 2 (citing *id.*, Attach. 2, *Notice: Appeal Dismissed – Appellant did not go to hearing*). Second, they state neither Plaintiffs nor their counsel drafted the Shrewsbury, Massachusetts Police Department incident report and that they had not seen it until Mr. Beall provided it, that the document is merely a draft written by a Shrewsbury Police Department employee, and that the reference to "Scott Prescott" is a mistake evidenced by the same report's subsequent reference to "Stephen Prescott (CEO)." *Id.* (citing *id.*, *Incident Rep.* (citation revised)). Plaintiffs emphasize that the incident reports disclaims that it is a draft that had not been reviewed for accuracy, that it is a simple error of an undisputed fact—that Steve Prescott is CEO of EJP—and that Mr. Beall's allegations that Plaintiffs or their counsel falsified a police report is "pure sophistry." *Id.* at 3.

Third, Plaintiffs reassert their argument that Mr. Beall had notice of the lawsuit and TRO in March, again directing the Court to Mr. Beall's responsive email stating "[s]ounds good, see you guys in court" on March 5, 2025 and effected service on March 12, 2025, *id.* (citing *3/5/2025 Email to Beall*; *Proof of Service*; as well as the entry of default based on his response to Plaintiffs' counsel sending him a copy of the motion for default judgment. *Id.* (citing *Pls.' First Contempt Mot.*, Attach. 5, *Beall Resp. to Default J. Email*). Fourth and finally, "Plaintiffs accept [Mr.] Beall's representations" regarding his job posting being aspirational, explaining that all they did was rely on Mr. Beall's public social media postings.

### 3.    Mr. Beall's Declaration (ECF No. 87)

Mr. Beall submits a declaration once again reasserting his claims that Plaintiffs case against him is based on retaliation and procedural manipulation, reiterating the events preceding his termination by EJP and again insisting he was not given proper notice or opportunity to respond to this proceeding. *Def.'s Status Conf. Decl.* at 1. He responds that he "did not ignore the DUA hearing," maintaining that he "was never informed that the appeal would be dismissed and [he] had no notice that would have allowed [him] to cure or contest that dismissal." *Id.* He next states the LinkedIn banner Plaintiffs have cited as misappropriation of a trademark was simply the background he used while employed at EJP and that updating his LinkedIn was not his priority in light of tumultuous life events surrounding his termination by EJP. *Id.* at 2. Next, he submits "Plaintiffs continue to quote my most emotional moments and pretend those reactions define this case," explaining that his emotions were a response to Plaintiffs' and Plaintiffs' counsel's

treatment of him and averring Plaintiffs' counsel has refused to communicate with him despite Court directives. *Id.* He again alleges this litigation is in bad faith. *Id.*

He next asserts Mr. Peterson posted a public video delivering a burner phone to a female employee while openly joking about harassing women and that, when Mr. Beall reported the video, EJP did nothing, evidencing their own misconduct. *Id.* He also states the incident report states Plaintiffs' counsel instructed EJP to file a criminal complaint against him, which he states is retaliation. *Id.* Finally, he emphasizes his pro se status, claims he has been truthful despite suffering hardship during the pendency of this proceeding, and requests a status conference with the Court "without being silenced by technicalities or mischaracterizations." *Id.*

### 4. Mr. Beall's Request for Status Conference (ECF No. 116)

Mr. Beall requests a status conference "to evaluate the current state of this case and the ongoing procedural imbalance, evasive conduct, and harm resulting from Plaintiffs' litigation strategy." *Def.'s Second Status Conf. Mot.* at 1. He reiterates his allegations that Plaintiffs have filed a false police report, that their filing documents under seal is designed to suppress facts, and respond to direct communications with "passive-aggressive 'reminders'" and "with mockery." *Id.* at 2. He further reiterates his claims of retaliation, which he claims have resulted in financial harm, and asks the Court to hold a status conference to address the pending motions and establish a clear path forward in this proceeding. *Id.* at 2-3.

### B. Legal Standard

In general, "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of

cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016); *see also Rivera-Aponte v. Gomez Bus Line, Inc.*, 62 F.4th 1, 3 (1st Cir. 2023) ("To ensure the fair and prompt adjudication of cases, a district court must be able to manage its docket effectively and efficiently.  To this end, we afford district courts a wide margin of discretion in the performance of their case-management functions"); *In re Atl. Pipe Corp.*, 304 F.3d 135, 143 (1st Cir. 2002) ("[D]istrict courts have substantial inherent power to manage and control their calendars").

### C.    Discussion

First, the Court reiterates once again that does not resolve disputes of fact on an incomplete or one-sided record, nor without a substantive motion, such that Mr. Beall's request that the Court take notice of alleged factual discrepancies is inappropriately presented in this standalone filing.

However, the Court agrees with Mr. Beall that a status conference between the parties would be helpful in clarifying the state of the record and determining the appropriate manner of proceeding in this case.  *Def.'s First Status Conf. Mot.*; *Def.'s Second Status Conf. Mot.* Moreover, while Plaintiffs object to the facts presented by Mr. Beall in his first motion for a status conference, they do not object to his requested status conference.  *Pls.' Status Conf. Resp.* at 1.  The Court undisputably holds "the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."  *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).  To this end, the Court grants Mr. Beall's motions for a status conference insofar as they request a status conference be scheduled and directs the Court Clerk to arrange such a conference at the earliest mutual

convenience of the Court and the parties.  However, the Court notes that, while Mr. Beall requests a conference be held by telephone or video, in the Court's experience such conferences are a poor substitute for in-person appearances in court.  The Court will thus hold a status conference in person and, when scheduled, expects both Plaintiffs' counsel and Mr. Beall to be present at the United States District Court for the District of Maine in Portland, Maine to discuss the status of this case and establish clear guidelines on how this case will proceed.

## XV.  MR. BEALL'S MOTIONS FOR ORDER TO SHOW CAUSE AND HEARING

### A.    The Parties' Positions

#### 1.    Mr. Beall's Motion for Order to Plaintiffs to Show Cause (ECF No. 134)

Mr. Beall moves the Court to order Plaintiffs to show cause, repeating his allegations of prosecutorial misconduct by Plaintiffs and their counsel, and insisting that the Court should order the Plaintiffs to show cause as to why they have failed to respond to filings, ignored court orders, should not be sanctioned for filing a false police report, sealed critical evidence, and should be permitted to continue prosecuting this case.  *Def.'s Mot. for Order to Show Cause* at 1-2.  He asks the Court to order the Plaintiffs "to provide full and documented answers to all claims and concerns now submitted into the record.  *Id.* at 3.

#### 2.    Mr. Beall's Motion for In-Person Hearing on Motion for Order to Show Cause (ECF No. 135)

Mr. Beall separately moves for an in-person hearing on his motion to show cause, reiterating the allegations giving rise to his motion and asking the Court to

125

"[s]chedule an in-person hearing at its earliest convenience; [r]equire the presence of Plaintiffs' counsel, including Mr. Silver and Ms. Caterine; [and p]ermit live questioning and oral examination regarding the growing record of misconduct, manipulation, and suppression of facts. *Def.'s Hr'g Mot.* at 1-2.

###    B.    Discussion

Mr. Beall's motions for a show cause order and hearing on the same, both filed mere minutes before this Court planned to docket this order, demonstrate the need for this order to be issued immediately.  He reiterates his allegations and seeks to have the Court rule on substantive issues in a manner unsupported by the federal rules of civil procedure.  The Court declines to do so.  It will reach the merits of Mr. Beall's allegations in due course, after a discovery period and motion sequence in accordance with the federal rules.  The Court has plainly stated already in this order that the courts do not make snap-judgments based on incomplete or one-sided information but proceed in an organized fashion.  Further, the Defendant's request for a hearing to present evidence on his allegations has been mooted by the Court resolution to hold a status conference with the parties to discuss the state of this proceeding and set clear boundaries for how it will proceed. The Court thus dismisses without prejudice Mr. Beall's motion for an order to show cause and for a hearing on the same.

## XVI.  SUMMARY

The Court restates that it issues this order to regain control of this case and wipe the slate clean.

The Court first resolves to set aside the entry of default against Mr. Beall. *See Def.'s Mot. to Vacate Default.* In light of this decision, the Court concludes it is appropriate to dismiss without prejudice the Plaintiffs' motion for default judgment. *Pls.' Default J. Mot.* Further, after setting aside the entry of default against him, being of a practical bent, the Court holds in abeyance Mr. Beall's motion for leave to file counterclaims, *Def.'s Countercls. Mot.*, which the Court recharacterizes as a motion to amend counterclaims, and allows him seven days to submit a copy of his proposed amended counterclaims to aid the Court's adjudication of his motion for leave to file. As a result of the imminent amendment of counterclaims, the Court dismisses without prejudice the Plaintiffs' motion to dismiss counterclaims, *Pls.' Mot. to Dismiss Countercls*, as mooted by the anticipated amended counterclaims.

The Court further dismisses Mr. Beall's motion for judicial notice and supplement to motion to amend, *Def.'s Jud. Notice Mot.*; *Def.'s Suppl. to Mot. to Amend*, concluding the information submitted by Mr. Beall does not fit within the types of facts eligible for judicial notice pursuant to Federal Rule of Evidence 201, and further that the communication between Plaintiffs' counsel and the Court Clerk does not violate the prohibition on ex parte communications contemplated by Canon Three of the Code of Conduct for United States Judges.

Next, the Court dismisses the Plaintiffs' motion to strike several of Mr. Beall's filings from the docket, *Pls.' Mot. to Strike*, concluding that these filings are not pleadings within the meaning of Rule 12(f) and declining to exercise its inherent authority to strike Mr. Beall's filings. However, the Court dismisses Mr. Beall's

request for sanctions against the Plaintiffs on the basis of their motion to strike, *Def.'s Sanctions Mot.*, as an unnecessary and disproportionate response to this motion.

Continuing, the Court dismisses Plaintiffs' motion for a *Cok* filing restriction against Mr. Beall to limit his ability to file on the docket or communicate with Plaintiffs' counsel without the Court's prior permission, *Pls.'* Cok *Mot.*, concluding that such an extreme sanction is not yet warranted and *Cok* does not contemplate restricting out-of-court communications. However, the Court expressly cautions Mr. Beall that filing restrictions may be in the offing should he continue to submit filings, untethered to any motion for relief, that present duplicative information and serve no substantive purpose.

The Court also dismisses without prejudice Plaintiffs' two motions for civil contempt, *Pls.' First Contempt Mot.*; *Pls.' Second Contempt Mot.*, exercising leniency in light of Mr. Beall's pro se status, his representations of confusion regarding the scope of the preliminary injunction, and his apparent subsequent efforts to comply with its terms. However, the Court expressly remarks that it dismisses the motions without prejudice and that the Plaintiffs may file motions to hold Mr. Beall in contempt in the future, should his conduct persist.

The Court further clarifies that it cannot serve as the adjudicator in this case and simultaneously as Mr. Beall's counsel, and for this reasons dismisses his request for clarification on how he should proceed with his proposed civil claims. *See Def.'s Clarification Req.* For the same reason, and further because it is

128

inappropriate and irrelevant at the present stage of the proceeding, the Court also dismisses Mr. Beall's motion for in camera review, *Def.'s In Camera Mot.* The Court further dismisses Mr. Beall's motion to compel discovery, concluding the parties have not yet held a Rule 26(f) conference and multiple pending motions implicate the scope of this dispute and necessary discovery, such that Mr. Beall's motion is premature.

The Court next dismisses Mr. Beall's motion to strike, *Def.'s Mot. to Strike*, which it recharacterizes as a motion to seal under Rule 5.2, explaining he has presented no confidential or privileged information, nor has he directed the Court to particular filings that he wishes to be struck. However, the Court grants in part Plaintiffs' motion to seal, *Pls.' Seal Mot.*, and orders the Court Clerk to redact the day and month from Mr. Van Savage's date of birth, as listed in the incident report docketed as ECF No. 48.

The Court further dismisses Mr. Beall's motion for an order to show cause against the Plaintiffs, *Def.'s Mot. for Order to Show Cause*, and a hearing on the same, *Def.'s Hr'g Mot.*, as an inappropriate request outside the orderly legal process contemplated by the federal rules.

Finally, the Court grants Mr. Beall's respective motions for status conference and directs the Court Clerk to schedule a conference at the earliest convenience of the parties and the Court. In light of the immense and onerous burden the parties' approach to this proceeding have placed on the Court thus far, the Court identifies an urgent need to regain control over its docket and set clear expectations for how

this case will proceed. To stem the unrelenting tide of filings, the Court in its discretion orders this case stayed pending the status conference and instructs the parties to cease submitting further filings unless absolutely necessary until the status conference is held.

## XVII. CONCLUSION

The Court DISMISSES without prejudice Plaintiffs' Motion for Default Judgment (ECF No. 27) and GRANTS Timothy J. Beall's Motion to Vacate Default[12] (ECF No. 31) and Motion for Leave to File Counterclaims and Request for Scheduling Order (ECF No. 52). The Court ORDERS Timothy J. Beall to file his amended counterclaims within 21 days of the date of this order. The Court further DISMISSES without prejudice Plaintiffs' Motion to Dismiss Defendant's Counterclaims (ECF No. 71) as mooted by the forthcoming amended counterclaims.

The Court further DISMISSES without prejudice the Plaintiffs' Motion for Civil Contempt (ECF No. 28) and Second Motion for Civil Contempt (ECF No. 75).

The Court further DISMISSES without prejudice the Plaintiffs' Emergency Motion for *Cok* Order Barring Defendant Beall's Communications Without Prior Court Approval (ECF No. 36), though the Court expressly warns Mr. Beall that filing restrictions may be in the offing pursuant to *Cok v. Family Court of Rhode Island*, 985 F.2d 32 (1st Cir. 1993), should he persist in inundating the Court with redundant and non-purposeful filings.

---

[12] As explained in this order, Mr. Beall moves to vacate default judgment, despite default judgment not having been entered against him. *Def.'s Mot. to Vacate Default.* As such, the Court recharacterizes Mr. Beall's motion as a motion to set aside the entry of default against him.

The Court further DISMISSES without prejudice Plaintiffs' Motion to Strike Docket Numbers 38, 39, 40, 42, and 44 (ECF No. 46).

The Court DISMISSES without prejudice Timothy J. Beall's Motion for Judicial Notice and Preservation of Record (ECF No. 51), Supplement to Motion to Amend – Evidence of Coordinated Retaliation Across Jurisdictions (ECF No. 54), Emergency Motion for Sanctions (ECF No. 55), Motion to Strike Reference to a Non-Party Family Member from the Record (ECF No. 61), Notice and Request for Clarification Regarding Concurrent Civil Rights Litigation Deadline (ECF No. 64), and Motion for In Camera Review of Evidence (ECF No. 68), and Motion to Seal Reference to Non-Party Family Member (Sgt. James Murray) (ECF No. 111).

The Court GRANTS in part and DISMISSES in part Plaintiffs' Motion to Seal ECF 48 Due to Personally Identifiable Information that Defendant Failed to Redact (ECF No. 76). The Court dismisses the motion insofar as Plaintiffs' request that the incident report, filed at ECF No. 48, be sealed in its entirety, but grants the motion insofar as it requests the redaction of Mr. Van Savage's date of birth, with the exception of the year of his birth, in accordance with Federal Rule of Civil Procedure 5.2. The Court further DISMISSES without prejudice Mr. Beall's Motion to Unseal Document 109 and Clarify Misrepresentation of Consent (ECF No. 112).

The Court further DISMISSES Timothy J. Beall's Motion to Compel Discovery of Communications and Electronic Records (ECF No. 108) and Motion to Compel Release and Filing of Full Personnel Record and Termination Documentation (ECF No. 119) as premature.

The Court further GRANTS in part and DISMISSES in part Timothy J. Beall's Notice of Material Misrepresentations and Request for Status Conference (ECF No. 83).  The Court grants this motion insofar as it requests a status conference and directs the Court Clerk to schedule a conference of the parties at the earliest mutual convenience of all parties and the Court.  The Court dismisses the motion insofar as it requests the Court take judicial notice of alleged misrepresentations.

The Court further DISMISSES without prejudice Timothy J. Beall's Motion to Order Plaintiffs to Show Cause (ECF No. 134) and Request for In-Person Hearing on Motion to Show Cause and Plaintiffs' Conduct (ECF No. 135).

Finally, the Court GRANTS Timothy J. Beall's Request for Status Conference or Hearing on Plaintiffs' Conduct and Case Progression (ECF No. 116) and DIRECTS the Court Clerk to schedule a status conference to be held at the Edward T. Gignoux Courthouse in Portland, Maine at the earliest mutual convenience of the Court and the parties.  The Court ORDERS the case stayed pending the to-be-scheduled status conference and further order of the Court.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 24th day of July, 2025