UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| EVERETT J. PRESCOTT, INC., et al.<br><br>      Plaintiffs,<br><br>    v.<br><br>TIMOTHY J. BEALL,<br><br>      Defendant. | No. 1:25-cv-00071-JAW |

**ORDER ON PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS**

A former employer moves to dismiss its former employee's counterclaim. Because the former employee did not plausibly plead his entitlement to relief as required by Federal Rule of Civil Procedure 12(b)(6), the court grants the company's motion to dismiss the former employee's counterclaims.

**I.   BACKGROUND**[1]

On March 3, 2025, Everett J. Prescott, Inc. (EJP) filed a civil complaint alleging defamation per se, tortious interference with advantageous economic relations, and intentional infliction of emotional distress against former employee Timothy J. Beall for harassing EJP and its employees with threatening messages and defamatory statements on social media. *Verified Compl. for TRO and Other Relief* ¶¶ 1-3, 12-13, 16 (ECF No. 1). On March 10, 2025, EJP filed an amended complaint, adding Paul Van Savage as a co-plaintiff (collectively, Plaintiffs). *Verified Am. Compl.* (ECF No.

---

[1]   The Court limits this section to the procedural history relevant to this order. The July 24, 2025 Omnibus Order recounts in greater detail the events in this case. *See Omnibus Order and Order Staying Case* (ECF No. 139) (*Omnibus Order*).

12). On June 12, 2025, Mr. Beall filed his answer to Plaintiffs' amended complaint, which included five counterclaims against Plaintiffs.[2] *Def.'s Answer to Compl. and Countercls.* (ECF No. 41). On July 3, 2025, Plaintiffs moved to dismiss the counterclaims raised in Mr. Beall's answer. *Pls.' Mot. to Dismiss Def.'s Countercls.* (ECF No. 71). That same day, Mr. Beall filed his response. *Def.'s Opp'n to Pls.' Mot. to Dismiss Def.'s Countercls.* (ECF No. 73). One week later, on July 11, 2025, Plaintiffs filed their reply, *Pls.' Reply in Support of Mot. to Dismiss Def.'s Countercls.* (ECF No. 88), and the Court took Plaintiffs' motion to dismiss Mr. Beall's counterclaims under advisement.

Meanwhile, on June 27, 2025, despite already listing counterclaims in his answer, Mr. Beall moved for the Court's permission to file counterclaims, although he did not attach his proposed counterclaims. *Mot. for Leave to File Countercls.* (ECF No. 52). Plaintiffs opposed Mr. Beall's motion for leave to file counterclaims on July 18, 2025. *Pls.' Resp. in Opp'n to Def.'s Mot. for Leave to File Countercls. And Request for Scheduling Order* (ECF No. 95). That same day, Mr. Beall filed his reply, *Def.'s Reply to Pls.' Opp'n to Mot. for Leave to File Countercls. and Request for Scheduling Order (ECF No. 95)* (ECF No. 99) (*Def.'s Countercls. Reply*), and the Court took Mr. Beall's motion for leave to file counterclaims under advisement.

Consistent with the First Circuit's directive to liberally construe a pro se litigant's filings, the Court recharacterized Mr. Beall's motion for leave to file

---

[2]   Although Mr. Beall's deadline to file his answer to Plaintiffs' complaint was April 2, 2025, because of several procedural developments and Mr. Beall's pro se status, the Court permitted him to file his answer late.

2

counterclaims as a motion to amend his original counterclaims. *Omnibus Order* at 44-45. Because Mr. Beall did not attach his proposed amended counterclaims to his motion, the Court gave Mr. Beall seven days to file his proposed amended counterclaims before it would rule on his motion to amend. *Id.* at 45. On the following day, July 25, 2025, Mr. Beall filed his proposed amended counterclaims, which the Court accepted. *Def.'s Countercls.* (ECF No. 143) (*Am. Countercls.*). With their initial motion to dismiss mooted by Mr. Beall's amended counterclaims, Plaintiffs filed a new motion seeking dismissal of Mr. Beall's amended counterclaims on August 28, 2025. *Pls.' Mot. to Dismiss Countercls. Pursuant to Fed. R. Civ. P. 12(b)(6) with Incorporated Memo. Of Law* (ECF No. 188) (*Mot. to Dismiss*). On September 19, 2025, the Court took Plaintiffs' motion to dismiss Mr. Beall's amended counterclaims under advisement. Mr. Beall did not file a response to Plaintiffs' motion to dismiss.

## II. THE PARTIES' POSITIONS

### A. Mr. Beall's Amended Counterclaims

Mr. Beall raises ten counterclaims "based on mounting evidence of misconduct by EJP and its officers, managers, and counsel." *Am. Countercls.* at 1. Mr. Beall alleges several violations of state and federal labor laws (Counts One, Two, Three, Five, and Six), including wrongful termination and retaliation against himself and other former employees, as well as a conspiracy by "EJP and its agents . . . to suppress whistleblowing, retaliate against lawful conduct, and obstruct ongoing civil rights inquiries." *Id.* at 1-2. Mr. Beall also alleges tortious conduct, including defamation and business interference (Count Four) and abuse of process and malicious

3

prosecution (Count Seven). *Id.* at 2-3. Finally, Mr. Beall raises counterclaims for loss of economic opportunity (Count Eight), alleges Plaintiffs "operate[] as a coordinated syndicate," which he claims constitutes potential RICO predicate conduct (Count Nine), and he avers Plaintiffs' counsel violated legal ethics and oversight expectations (Count Ten). *Id.* at 3-4. In closing, Mr. Beall asks the Court to "[r]efer relevant conduct to appropriate federal and state authorities" and to "[a]ward damages for reputational, professional, emotional, and financial harm." *Id.* at 4.

### B. The Plaintiffs' Motion to Dismiss

Plaintiffs move to dismiss Mr. Beall's counterclaims in their entirety under Federal Rule of Civil Procedure 12(b)(6). *Mot. to Dismiss* at 1. According to Plaintiffs, even under the First Circuit's more generous standard of review for pro se pleadings, each counterclaim fails Rule 12(b)(6) scrutiny, either because (1) his counterclaim does not exist as a cause of action; (2) he failed to state a plausible claim for relief; or (3) he lacks standing to raise certain counterclaims on behalf of third parties. *Id.*

### C. Timothy J. Beall's Response

The deadline for Mr. Beall to file his response to Plaintiffs' motion to dismiss was September 19, 2025. To date, Mr. Beall has not filed a response. Consequently, Mr. Beall waived his response, and Plaintiffs were not required to file a reply.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the "legal sufficiency" of a pleading. *Maine Educ. Ass'n Benefits Trust v. Cioppa*, 842 F. Supp. 2d 373, 376 (D.

Me. 2012). The general rules of pleading require a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). That "short and plain statement" need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and alterations omitted).

For a counterclaim to survive a motion to dismiss under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausible means "something more than merely possible" or "merely consistent with a defendant's liability." *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (quotation marks and citations omitted) (first quoting *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012); and then quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)). Although this does not require "detailed factual allegations," the facts pleaded must at least "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, a counterclaim is facially plausible when the counterclaimant "pleads factual content that allows the court to draw the reasonable inference that the [counter]defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, dismissal is appropriate if a counterclaimant's well-pleaded facts do not "possess enough heft to 'sho[w] that [the counterclaimant] is entitled to relief." *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008) (first alteration in original) (quoting *Twombly*, 550 U.S. at 557).

5

Assessing a counterclaim's plausibility is a context-specific task that requires "the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In the First Circuit, district courts apply a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the [counterclaim's] factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

### B.     Reviewing a Pro Se Litigant's Pleadings

"Our judicial system zealously guards the attempts of pro se litigants on their own behalf," *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997), which includes liberally construing pro se pleadings. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75 (1st Cir. 2014); FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice"). This generous standard, however, is not boundless; "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed*, 118 F.3d at 890. Rather, like a party represented by counsel, "even a pro se [litigant] is

required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Adams v. Stephenson*, 116 F.3d 464 (1st Cir. 1997) (unpublished table decision) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)).  Moreover, a district court's duty to liberally construe a pro se litigant's pleadings does not permit the court "to conjure up unpled allegations."  *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979); *accord Vieira v. De Souza*, 22 F.4th 304, 311 (1st Cir. 2022) (citing *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999) ("a district court should not assume the role of advocate for the pro litigant, and may not rewrite a petition to include claims that were never presented") (citations omitted)).  As the First Circuit explains, holding all litigants to this minimum standard is necessary to ensure every defendant is "afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense."  *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 123 (1st Cir. 2004) (internal quotations omitted).

## IV.     DISCUSSION

Because Mr. Beall's counterclaims do not withstand Rule 12(b)(6) scrutiny, the Court dismisses each of his counterclaims.  The Court does so for one of two reasons.  First, several of his counterclaims are not actionable, either because they do not exist as causes of action or because Mr. Beall may not invoke them.  Second, for his counterclaims that are actionable, even when liberally construed by the Court, none of them sets forth the minimum facts necessary to survive Rule 12(b)(6) scrutiny.

Accordingly, Mr. Beall has not pleaded sufficient facts that plausibly entitle him to relief, and the Court must dismiss his counterclaims.

### A. Timothy J. Beall's Employment Law Claims

Mr. Beall claims EJP wrongfully terminated him and other former employees, as well as discriminated and retaliated against them. The Court dismisses Mr. Beall's employment law claim on behalf of third parties (Count Six) because Mr. Beall is not a lawyer and cannot make claims on behalf of other individuals. As for the counterclaims raised on his own behalf, Mr. Beall does not present facts "sufficient to support 'the reasonable inference that [Plaintiffs are] liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley*, 657 F.3d at 46).

#### 1. Wrongful Termination – Count One

In Count One, Mr. Beall argues EJP violated Massachusetts public policy when they "terminated him after he disclosed a required court appearance in a custody matter," which, according to Mr. Beall, is a "direct violation of established Massachusetts public policy protecting workers who comply with legal obligations." *Am. Countercls.* at 1. Plaintiffs argue Count One is deficient because missing work to attend a custody hearing does not fall into any of the limited public policy exceptions to Massachusetts' general rule of employment-at-will.[3] *Mot.* at 7-8.

Count One fails to state a plausible claim for relief. First, Count One merely provides a conclusory statement, unsupported by any factual content, that EJP fired Mr. Beall after he told them that he was required to attend a custody hearing. Mr.

---

[3] EJP also categorically denies Mr. Beall's accusation that they fired him for attending a custody hearing, however, for the purposes of Rule 12(b)(6), the Court considers Mr. Beall's allegation as true.

8

Beall's counterclaim does not state when he was terminated, when in relation to the custody hearing he informed EJP that he was required to attend, nor whether he actually attended the custody hearing. In fact, he does not even expressly allege that he was terminated as a result of telling EJP that he had to go to a custody hearing. The Court discards this conclusory statement. *See Schatz*, 669 F.3d at 55. Absent this cryptic statement, Mr. Beall present presents no evidence for the Court to draw "the reasonable inference that [EJP] is liable for" wrongful termination. *Haley*, 657 F.3d at 46.

Second, even if he had pleaded sufficient facts, while Massachusetts law provides a public policy exception to at-will-employment "for doing what the law requires," *Mehan v. Medical Information Technology, Inc.*, 488 Mass. 730, 733, 177 N.E.3d 917 (2021), compliance with "legal *obligations*," such as attending a custody hearing, *Am. Countercls.* at 1 (emphasis supplied), while important, are not mandatory and do not fall inside the "narrowly construed" exception for "doing what the law requires," such as "serving on a jury." *Meehan*, 488 Mass. at 733. The Massachusetts Supreme Judicial Court emphasized in *Meehan* that "the public policy exception should be narrowly construed to avoid converting the general at-will rule into 'a rule that requires just cause to terminate an at-will employee.'" *Id.* at 733 (citing *King v. Driscoll*, 418 Mass. 576, 582, 638 N.E.2d 488 (1994), *S.C.*, 424 Mass. 1, 673 N.E.2d 859 (1996), quoting *Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 150, 533 N.E.2d 1368 (1989)). In *Meehan*, the Massachusetts Supreme Judicial Court wrote that the public policy exceptions apply

9

"for *asserting a legally guaranteed right* (e.g., filing a worker's compensation claim), for doing what the law requires (e.g. serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." *Id.* (quoting *Smith-Pfeffer*, 404 Mass. At 149-50) (emphasis in *Meehan*). Later the Massachusetts Supreme Judicial Court added a fourth category, those "performing important public deeds, even though the law does not absolutely require the performance of such a deed." *Id.* An example would be "cooperating with an ongoing criminal investigation." *Id.* Mr. Beall has presented no authority for the proposition that attending a custody hearing fits within any of these narrow recognized exceptions.

### 2. Retaliation – Counts Two and Three

In Count Two, Mr. Beall alleges Plaintiffs' retaliatory conduct, such as "mocking conduct, internal ridicule, and documented attempts to provoke relapse" related to his status as a recovering alcoholic, violates the Americans with Disabilities Act (ADA). *Id.* at 2. In Count Three, Mr. Beall claims Plaintiffs violated the Massachusetts Paid Family Leave Act (PFMLA) when they "failed to notify Defendant of his rights under the PFMLA and terminated him in retaliation for time needed for medical and legal obligations." *Id.* Plaintiffs move to dismiss Counts Two and Three, arguing Mr. Beall failed to sufficiently plead a prime facie case for ADA and PFLMA retaliation. *Mot.* at 8-10.

While Mr. Beall is not required to prove his prima facie claim at the pleading stage, Rule 12(b)(6) still requires that his factual allegations "nudge[] [his] [counter]claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at

570. For both his ADA and PFMLA retaliation claims to survive 12(b)(6) scrutiny, Mr. Beall must plausibly plead at minimum that he availed himself of a protected right under the statute and that EJP took adverse action against him because of that protected activity. *See Johnson v. Whole Foods Markets Group, Inc.*, 657 F. Supp. 3d 158, 181 (D. Me. 2023) (applying framework to ADA); *Tardiff v. Laborers Int'l Union of N. Am. Loc. Union 609*, No. 23-cv-40115, 2025 U.S. Dist. LEXIS 158535, at *30-37 (D. Mass. Aug. 15, 2025) (applying framework to PFMLA).

Counts Two and Three fail because Mr. Beall makes no allegation that he engaged in ADA or PFMLA protected activity, such as taking PFMLA leave. Nor does he develop a causal connection between EJP's alleged adverse actions and his exercise of ADA or PFMLA rights. In *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 720 (1st Cir. 2014), the First Circuit affirmed a district court's dismissal of a similarly bare retaliation claim under the federal Family and Medical Leave Act (FMLA).[4] In that case, the First Circuit held that the claimant's allegation that she was terminated "during the effectiveness" of her FMLA leave failed under Rule 12(b)(6) because that allegation alone could not plausibly show that her former employer "took her FMLA requests or leave status into account when deciding to discharge her." *Id.*

---

[4] Given the similar language and objectives of the PFMLA and the FMLA, district courts in the First Circuit apply the case precedent developed in the Circuit for FMLA claims to determine the sufficiency of PFMLA claims under Rule 12(b)(6). *Tardiff*, 2025 U.S. Dist. LEXIS 158535 at * 32-33; *see also McKeon v. Robert Reiser & Co.*, 770 F. Supp. 3d 351, 376 (D. Mass. 2025); *Rousseau v. Clark Univ.*, No. 22-cv-40118-DJC, 2023 U.S. Dist. LEXIS 83599, at *2 (D. Mass. May 12, 2023).

Again, Mr. Beall only provides a brief conclusory statement for Counts Two and Three. He fails to offer any details concerning how he availed himself of an ADA or PFMLA protected right. Nor does he plead any details to plausibly demonstrate Plaintiffs' alleged retaliation is causally connected to any such protected action.

### 3. Third Party Retaliation and Discrimination – Count Six

Next, Mr. Beall alleges a series of firings at EJP "demonstrate systemic retaliation and potential Title VII and ADA violations." *Countercls.* at 2. Count Six fails because Mr. Beall cannot represent a third party in federal court. "By law an individual may appear in federal courts only pro se or through legal counsel." *Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41, 42 (1st Cir. 1982) (citing 28 U.S.C. § 1654). In other words, a non-lawyer cannot provide third-party lay representation. *Id*. Although Mr. Beall is free to represent himself, because he is not an attorney, he cannot bring claims for someone else.

### B. Timothy J. Beall's Tort Claims

Next, Mr. Beall alleges various tortious conduct by Plaintiffs, each of which fails to plausibly plead any entitlement to relief. Specifically, in Count Four, Mr. Beall alleges Plaintiffs defamed him and interfered with his businesses, and, in Count Five, Mr. Beall accuses Plaintiffs of abusing judicial process and malicious prosecution. Each count alleges two separate torts. The Court addresses each, and. each fails under Rule 12(b)(6).

### 1. Defamation and Business Interference – Count Four

In Count Four, Mr. Beall alleges Plaintiffs "engag[ed] in a coordinated smear campaign[,]" which led to many of his business ventures suffering "measurable harm." Specifically, Mr. Beall claims "[i]nvestment pitches were abandoned, business acquisition opportunities withdrawn (including Beautiful LandEscapes), and critical equipment investments for The Thread Shed were halted." *Id.* The Court understands Mr. Beall to allege two separate torts in Count Four: (1) defamation and (2) tortious interference with advantageous economic relations. The Court reviews each separately under Rule 12(b)(6).

#### a. Defamation

Mr. Beall fails to sufficiently plead defamation. To properly allege defamation, Mr. Beall must allege (1) a false and defamatory statement; (2) that statement's unprivileged publication to a third party; (3) the publisher's fault amounting at least to negligence; and (4) actual harm or damages. *Garey v. Stanford Management, LLC*, 319 A.3d 1022, 1027 (Me. 2024). Mr. Beall does none of this; he does not identify any specific false or defamatory statements, the speaker, or the audience. His bare allegation of a "smear campaign" without more is therefore not a plausible defamation claim under Rule 12(b)(6).

#### b. Tortious interference with advantageous economic relations

Mr. Beall also fails to sufficiently plead tortious interference with advantageous business relations, which requires Mr. Beall to plausibly plead "the existence of a valid contract or prospective economic advantage, interference with

13

that contract or advantage through fraud or intimidation, and damages proximately caused by the interference." *Mangan v. Rumo*, 226 F. Supp. 2d 250, 252 (D. Me. 2002). Although he maintains "[i]nvestment pitches were abandoned" and "business acquisition opportunities withdrawn," Mr. Beall does not mention a single third party with whom he had contracted or maintained business relations. *Am. Countercls.* at 2. Moreover, the Court cannot discern from the counterclaim whether it was Mr. Beall himself who withdrew from these alleged pitches and acquisitions as opposed to an unnamed third party induced by Plaintiffs' alleged smear campaign. *Id.*

### 2. Abuse of Process and Malicious Prosecution – Count Seven

In Count Seven, Mr. Beall combines claims for abuse of process and malicious prosecution, neither of which survives Rule 12(b)(6) scrutiny. First, Mr. Beall alleges that Plaintiffs "filed a criminal complaint using a false name," which he avers constitutes malicious prosecution. *Id.* at 2-3. Second, he claims that Plaintiffs' committed abuse of process when they "attempted [service] at unsafe or prohibited locations." *Id.* at 2.

#### a. Malicious Prosecution

A claim of malicious prosecution requires Mr. Beall to plead that he defeated an improper criminal prosecution. *Gray v. State*, 624 A.2d 479, 483 (Me. 1983); *Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused"); REST. 2d TORTS § 654(1) (defining "criminal proceedings" as "any proceeding in which a government seeks to prosecute a person for an offense and

14

to impose upon him a penalty of a criminal character"). Although, Mr. Beall points to a Shrewsbury, Massachusetts Police report that EJP filed against him for harassment, his counterclaim does not state he has been criminally prosecuted for any crime. Mr. Beall therefore has not plausibly plead his entitlement to relief under a theory of malicious prosecution. *Mangan*, 226 F. Supp. 2d at 252 (dismissing a claim for malicious prosecution where the defendant filed a police complaint, but no criminal case had been prosecuted).

### b.    Abuse of Process

Mr. Beall's abuse of process claim similarly fails. A claim for abuse of process requires "an ulterior motive and an improper use of process in a civil lawsuit that has otherwise been filed properly." *Mangan*, 226 F. Supp. 2d at 252 (citing *Pepperell Trust Co. v. Mountain Heir Fin. Corp.*, 708 A.2d 651, 655, n.8 (Me. 1998)). Mr. Beall alleges Plaintiffs attempted service "at unsafe or prohibited locations," but that is not enough to plausibly plead a claim for abuse of process. Mr. Beall does not argue that service of Plaintiffs' complaint was improper itself but that merely the manner Plaintiffs effected service was somehow improper. Mr. Beall also fails to explain how Plaintiffs' service attempt was dangerous and thus amounted to an abuse of process.

### C.    Timothy J. Beall's Remaining Claims – Counts Five, Eight, Nine and Ten

The Court dismisses the remainder of Mr. Beall's counterclaims – Counts Five, Eight, Nine, and Ten – because they are not actionable. His remaining claims are not actionable because no such cause of action exists, and thus cannot serve as the basis for a counterclaim. Civil conspiracy (Count Five) is a theory of liability, not a

cause of action. In *Finamore v. Miglionico*, 15 F.4th 52 (1st Cir. 2021), the First Circuit noted that a claimant may "bring a civil conspiracy claim under a concerted action theory;" however, "such a claim demands proof of an 'underlying tort,' and '[t]he conspiracy consists in agreeing to, or assisting in, [that] underlying tort.'" *Id.* at 62 (quoting *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 25 (1st Cir. 2009)). The standard is the same under Maine law. *McNally v. Mokarzel*, 386 A.2d 744, 748 (Me. 1978) ("In Maine, conspiracy is not a separate tort but rather a rule of vicarious liability"). Mr. Beall's counterclaim proposes no cognizable underlying tort as required for a valid claim of civil conspiracy.

Loss of economic opportunity (Count Eight) is a theory of damages, not a cause of action, and Mr. Beall's allegations in Count Eight merely recite his missed economic opportunities without anchoring those asserted losses to any underlying tort. *See Am. Countercl.* at 3 ("Defendant was in the final stages of : A licensing deal with Merican Mule for Birdie Bombs . . ., A $250,000-$350,000 equity pitch for Home course LLC; A $20M pre-seed funding opportunity under Recovery BIAAnket . . . ,").

Next, Mr. Beall's potential RICO predicate conduct Claim (Count Nine) simply is not a cognizable cause of action. To plead sufficient facts to allege a RICO violation, the First Circuit has held that the RICO plaintiff "must allege a pattern of racketeering activity involving at least two predicate acts, the second of which must occur within 10 years of the first." *Ahmed v. Rosenblatt*, 118 F.3d 886, 888 (1st Cir. 1997). "Predicate acts under this statute are acts indictable under any one or more of certain specified laws, including the mail and wire fraud statutes." *Id.* at 888-89.

16

Finally, a RICO plaintiff must allege "the existence of an enterprise." *Id.* at 889. Count Nine fails to identify the indictable offenses, making only vague assertions of potential misconduct. *Am. Countercl.* at 3-4. Moreover, the counterclaim fails to correlate his assertions of misconduct to the statutory list of RICO predicate crimes. *See* 18 U.S.C. § 1961.

Finally, the Court firmly rejects Mr. Beall's allegations of attorney misconduct in Count Ten. First, Mr. Beall's allegations are grossly insufficient to sustain his claims against Attorneys Silver and Caterine. *See Cool Light Co. v. GTE Prods. Corp.*, 832 F. Supp. 449, 462 (D. Mass. 1993) (declining to hold a hearing on "vague and wholly unsupported accusations of attorney misconduct"). Next, Mr. Beall asks that the Maine Board of Overseers of the Bar and equivalent federal licensing authorities, not this Court, scrutinize the actions of Attorneys Silver and Caterine. *Am. Countercl.* at 4. Third, the Court reminds Mr. Beall that "falsely accusing opposing counsel of misconduct is sanctionable under [Federal Rule of Civil Procedure] 11." *See Xiao Wei Catering Linkage in Inner Mong. Co., Ltd. v. Inner Mon. Xiao Wei Yang USA, Inc.*, No. 15-10114-DJC, 2018 U.S. Dist. LEXIS 54488, at *17 (D. Mass. March 30, 2018).

## V.    CONCLUSION

The Court GRANTS Everett J. Prescott, Inc. and Paul S. Van Savage's Motion to Dismiss Counterclaims Pursuant to Federal Rule Civil Procedure 12(b)(6) with Incorporated Memorandum of Law (ECF No. 188). Accordingly, the Court DISMISSES Timothy J. Beall's Defendant's Counterclaims (ECF No. 143).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of October, 2025